*ORIGINAL*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**EDAR ROGLER**                                    :
Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland  21403
(443) 852-6555

**v.**                                             Case: 1:07-cv-02308
                                                   Assigned To : Collyer, Rosemary M.
                                                   Assign. Date : 12/21/2007
**WILLIAM BIGLOW,**                                :  Description: Civil Rights - Non. Employ.
In his personal capacity,
OGC/GLD
200 Independence Avenue                            *JURY ACTION*
Washington, D.C.  20201

**JULIE LU,**                                      :
In her personal capacity,
5831 Westwater Court
Centreville, VA.  20121

**JOHN I. GALLIN, M.D.**                           :
In his personal capacity,                          **JURY TRIAL REQUESTED**
7313 Brookstone Court
Potomac, MD.  20854

**MAUREEN GORMLEY, R.N.,**                         :
In her personal capacity,
10 Center Drive
Bethesda, MD.  20892

**WALTER L. JONES,**                               :
In his personal capacity,
10 Center Drive
Bethesda, MD.

**HILLARY FITILIS,**                               :
In her personal capacity,
8503 Hempstead Avenue
Bethesda, MD.  20817

**REV. OWEN RAY FITZGERALD,**                      :

1

In his personal capacity,
6606 Greywood Drive
Bethesda, MD. 20817-1537

REV. DOMINICK ASHKAR,                    :
In his personal capacity,
Rectory
7164 Alaska Ave, N.W.
Washington, D.C. 20012

ANN M. BERGER, MSN, MD,                  :
In her personal capacity,
10 Center Drive
Bethesda, MD. 20892

NYNA KONISHI,                            :
In her personal capacity,
10 Center Drive
Bethesda, MD. 20892

DEBORAH BRITTON,                         :
In her personal capacity,
Two Democracy Plaza, Room 106L
Bethesda, MD.

LAWRENCE SELF,                           :
In his personal capacity,
10 Center Drive
Bethesda, MD. 20892

MICHAEL CHEW,                            :
In his personal capacity
10 Center Drive
Bethesda, MD. 20892

DOES 1 TO 25                             :
In their personal capacities

DEFENDANTS.
_____oOo_____

## COMPLAINT

1. This is an action to redress violation of the First Amendment, Fourth Amendment, and

Fifth Amendment to the U.S. CONSTIUTION and 42 U.S.C. §1985(1), 1985(2), and

1985(3) and other causes deemed just and fair. Plaintiff was a witness in the federal proceeding, entitled, *Rev. Henry Heffernan v. Michael Leavitt, Secretary. US DHHS,* EEOC Case No. 120-2005-00226X; and *Rev. Henry Heffernan v. Michael Leavitt, Secretary. US DHHS,* MSPB No. DC-0752-04-0756-I-1. Federal proceedings were occurring in Washington, D.C. at the Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO), 1801 L Street, N.W., Washington, DC. 20507 and the Merit System Protection Board (MSPB), 1615 M Street, NW, Washington, DC 20419, as well as the EEOC's Baltimore Field Office. Plaintiff was a witness in the federal proceeding, entitled *Dr. Reeve Robert Brenner v. Michael Leavitt, Secretary. US DHHS,* MSpb No. DC-0752-07-0414-I-1 before the MSPB in the regional office located in Alexandria, VA. Plaintiff has her own actions and rights to access to courts, including the instant one.

### PARTIES

2. Plaintiff Edar Y. Rogler, is a citizen of the State of Maryland and resides at 915 Boucher Avenue, Annapolis, Maryland 21403.

3. Defendant William A. Biglow (Biglow) is an attorney in the General Law Division, Office of General Counsel, Department of Health and Human Services (DHHS and the Agency) for the United States of America (USA). He is being sued in his personal capacity, while acting under the color of federal authority and within a private conspiracy. His address is 200 Independence Avenue, Room 4749, D.C. 20201.

4. Defendant Julie Lu is an attorney in the General Law Division of the Office of the General Counsel. She is being sued in sued in her personal capacity, while acting under the color of federal authority and with a private conspiracy. Her address is c/o General

Law Division, Office of the General Counsel, DHHS, 330 Independence Avenue, S.W., Room 4760, Washington, DC 20201.

5.  Defendant John I. Gallin, M.D. ("Gallin") at all pertinent times was and is the Director of The National Institute of Health ("NIH") Warren Grant Magnuson Clinical Center ("CC"), DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, MSC 1504, Bethesda, Maryland 20892.

6.  Defendant Maureen Gormley, R.N. ("Gormley") at all pertinent times was and is the Chief Operating Officer ("COO") at NIH CC, DHHS. She is being sued in his personal capacity, while acting under the color of federal authority. Her address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, Bethesda, Maryland 20892.

7.  Defendant Walter L. Jones ("Jones") was and is at all pertinent times the Deputy Director for Management Operations in the Office of the Deputy Director for Management Operations ("CC ODDMO") for NIH CC, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o NIH CC, Building 10 Magnuson CC, Room 2C135, MSC 1504, 10 Center Drive, Bethesda, Maryland 20892.

8.  Defendant Attorney Hilary Fitilis, J.D. ("Fitilis") is known as a "staff attorney" employed by the Department of Health and Human Services at the National Institutes of Health Clinical Center in what is called "the legal department." It is unknown if Defendant Fitilis is a licensed attorney to practice law in the State of Maryland and/or whether there is a "legal department" officially in NIH. The State Bar of Maryland

3

denies that she is licensed to practice law in Maryland. Her official capacity is Special

Assistant to the Chief Operating Officer ("CCO"), Defendant Maureen Gormley. She is

being sued in her personal capacity, while acting under color of federal authority. Her

address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-3521, MSC

1504, 10 Center Drive, Bethesda, Maryland 20892.

9. Defendant Rev. O. Ray Fitzgerald, Ph.D. ("Fitzgerald") at all pertinent times was the

Chief of the Spiritual Ministry Department ("SMD"). He is now a Special Assistant to

Defendant Jones. He is being sued in his personal capacity, while acting under the color

of federal authority. His address is c/o NIH CC, Building 10-CRC-Hatfield Research

Center, Room 7-2525, 10 Center Drive, Bethesda, Maryland 20892.

10. Defendant Dominic Ashkar ("Ashkar") is a Lebanese Maronite Catholic priest, who

was a contract chaplain at NIH CC and then was given the permanent chaplain position

that was made available when NIH CC wrongfully terminated Heffernan. Ashkar's

present status is unknown, but on information and belief he is still employed at NIH CC

in the same capacity in the permanent federal civil service position made vacant by the

wrongful termination of Heffernan. His address is c/o NIH CC, Building 10, Magnuson

CC, Room 14S231, 10 Center Drive, Mail Stop 1952, Bethesda, Maryland 20892.

11. Defendant Ann M. Berger, MSN, MD ("Berger") at all pertinent times was and is the

Chief of the Pain and Palliative Care Clinic ("PPCC"). She is being sued in her personal

capacity, while acting under the color of federal authority. Her address is c/o 10-CRC-

Hatfield CRC, Room 2-1733, 10 Center Drive, Bethesda, Maryland 20892.

12. Defendant Nyna Konishi ("Konishi") at all pertinent times was and is the

Administrative Officer ("AO") for Defendants Gallin and Gormley. She was not the

4

Administrative Officer for the SMD. She is being sued in her personal capacity, while acting under color of federal authority. Her address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-3581, 10 Center Drive, MSC 1504, Bethesda, Maryland 20892.

13. Defendant Deborah Britton ("Britton") at all pertinent times was and is the Chief of Simplified Acquisitions, Office of Purchasing and Contracts, at NIH CC. She is being sued in her personal capacity, while acting under color of federal authority. Her address is c/o NIH CC, Building 2DEM-Two Democracy Plaza, Room 106L, 6707 Democracy Blvd, MSC 5480, Bethesda, Maryland.

14. Defendant Lawrence N. Self ("Self") at all pertinent times was and is the Director of the Office of Equal Opportunity and Diversity Management (OEO DM) at NIH, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o OEO DM, 6011 Executive Boulevard, Suite 216, MSC 7653, Rockville, Maryland 20852-7653.

15. Defendant Michael Chew ("Chew") is a Complaint's Officer in the Office of Equal Opportunity and Diversity Management (OEO DM) at NIH, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o OEO DM, 6011 Executive Boulevard, Suite 216, MSC 7653, Rockville, Maryland 20852-7653.

16. Defendants Does 1 to 25 are people being sued in their personal capacity, while acting under color of federal authority, which will be named after discovery.

5

## JURISDICTION AND VENUE

17. Jurisdiction over this matter is proper under 28 U.S.C. §1331, as Plaintiff asserts

    claims arising under the laws of the United States and 28 U.S.C.S. §1343(a), as

    Plaintiff asserts claims arising under the civil rights laws of the United States.

18. Venue is proper in this district pursuant to the provisions of 28 U.S.C.

    §1391(b)(2) because a substantial part of the events or omissions giving rise to

    the claims herein occurred in the District of Columbia, some of the Defendants

    reside and/or work in the District of Columbia, and some of the Defendants are

    licensed to practice law in the District of Columbia and/or practice law in the

    District of Columbia.

## STATEMENT OF FACTS

19. From August of 2005 to January of 2006 Plaintiff worked as an associate chaplain
for the United States Department of Health and Human Services ("DHHS") at The
National Institute of Health Clinical Center ("NIH CC") located at 9000 Rockville Pike,
Bethesda, Maryland 20892.

20. NIH is a component of the Public Health Service in DHHS. 42 U.S.C. §§201(a),
202, 203.

21. NIH CC is a federal research hospital housed in two adjacent buildings on the NIH
campus:

a.) One building is the 14-story Warren Grant Magnuson Clinical Center, Building 10;
and

b.) The other building is the 7-story Mark O. Hatfield Clinical Research Center ("CRC"),
which is also called Building 10. (Collectively the two buildings together are called
Building 10.)

22. The Mark O. Hatfield CRC has an atrium in the lobby that reaches to the ceiling of
the building and comprises an opening rising seven floors.

23. On information and belief Defendants Gallin, Gormley, and Jones authorized, approved, and supervised the architectural design and construction of the Mark O. Hatfield Clinical Research Center ("CRC"), in particular the seven story atrium with open, unimpeded spaces off of each floor which created a seven floor opening.

24. On information and belief Defendants Gallin, Gormley, and Jones authorized and instructed that the psychiatric units of NIH CC be located on the seventh floor of the CRC with the psychiatric patients walking by the open atrium to a seven floor space without proper safeguards to a patient jumping off the seventh floor.

25. On information and belief Defendants Gallin, Gormley, and Jones ordered that the psychiatric units be placed on the seventh floor over the objections of many of the psychiatrists and psychiatric staff.

26. On information and belief Defendants Gallin, Gormley, and Jones believed that the ascetics and looks of the physical premises were more important than the physical welfare of the psychiatric patients hospitalized at NIH CC.

27. Defendants assert that the Plaintiff was an independent contractor not protected by *Title VII of the Civil Rights Act of 1964*, as amended ("Title VII").

28. Defendants assert that the Plaintiff was an independent contractor not protected by the *Whistleblower Protection Act*, (5 U.S.C §1221(e)).

29. Defendants assert that the Plaintiff is not a civil servant employee under 5 U.S.C. §1221(a) meeting the definition of an employee under 5 U.S.C. §2105.

30. Defendants assert that the Plaintiff does not have a statutory remedy for damages Plaintiff incurred by the conduct, activities, and omissions of the Defendants.

7

31. Defendants assert that Plaintiff has no legal rights and no legal recourse against the adverse personnel and other actions they have take against her.

32. Defendants assert that the United States CONSTITUTION does not apply to Plaintiff, because she was employed in a contractual relationship with NIH.

33. Defendant Jones asserts that Jones can do whatever he pleases to Plaintiff without legal recourse.

34. Plaintiff provided chaplaincy services to NIH CC as a part-time associate chaplain in the SMD under the direct supervision of Fitzgerald.

35. Defendant Fitzgerald is under the direct supervision of Defendant Jones, Deputy Director for Management and Diversity.

36. Defendant Jones is under the direct supervision of Defendant Gallin, Director, NIH CC.

37. Dr. Reeve Robert Brenner ("Brenner"), a Jewish Rabbi, was employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Defendant Fitzgerald.

38. Rev. Gary Johnston ("Johnston") at the pertinent time was a chaplain at NIH CC assigned to SMD, but was on military leave being deployed to the Pentagon until February, 2007. On information and belief Johnston retired in February, 2007.

39. Rev. Henry Heffernan ("Heffernan"), a Jesuit Roman Catholic priest, was and is employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Defendant Fitzgerald, as Chief of the Department.

40. Heffernan was and is represented at all pertinent times by Attorneys Irving Kator ("Kator") and Cathy A. Harris ("Harris") of Kator, Parks & Weiser, PLLC.

8

41. Heffernan filed petitions with the Merit System Protection Board ("MSPB"), MSPB No. DC-0752-04-0756-I-1; and the Equal Employment Opportunity Commission ("EEOC"), EEOC Case No. 120-2005-00226X.

42. DHHS, by and through Defendants Gallin, Gormley, Jones, Fitilis, Fitzgerald, and Ashkar, discriminated and retaliated against Heffernan and wrongfully terminated Heffernan in violation of Title VII.

43. In February of 2007 both federal panels (the EEOC and MSPB) found that the Agency discriminated against Heffernan and ordered his reinstatement to NIH CC.

44. In March of 2007 Heffernan was reinstated to NIH CC.

45. During August through December of 2005 Defendant Fitzgerald made statements to Plaintiff regarding Defendant Fitzgerald's and NIH CC's reasons for suspending and ultimately terminating Heffernan and discriminatory remarks about Heffernan's being Roman Catholic, and other statements evidencing a motive and intent to violate Heffernan's Title VII protection.

46. Plaintiff never met or spoke directly to Heffernan prior to December 23, 2005.

47. Plaintiff's first contact with Heffernan was a telephone message for Heffernan by and through Rabbi Brenner on or before December 21, 2005.

48. Plaintiff alleges that Defendants have and continue to intimidate and retaliate against her witnesses to the cause of actions contained in the instant complaint.

49. Brenner is represented by Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, PLLC.

50. Brenner by and through his attorneys has filed petitions with the MSPB, entitled *Reeve Brenner v. Mike Leavitt*, case no. DC-0752-07-0414-1-1, and the EEO formal complaint, entitled *Reeve Brenner v. Mike Leavitt*, case no. NIHCC-06-0009.

51. Rev. Kathryn Snyder ("Snyder") was a contract chaplain at NIH CC assigned to the SMD until on or about December 1, 2005.

52. The Defendants had renewed Snyder's contract for another year of services from December 1, 2005 to November 30, 2006.

53. The Defendants revoked Snyder's contract for the second year of service from December 1, 2005 to November 30, 2006.

54. Plaintiff alleges that the Agency's revocation of Snyder's contract for services from December 1, 2005 to November 30, 2006 violated Title VII and Snyder's constitutionally protected rights.

55. Plaintiff asserts that Defendant Fitzgerald stated to Plaintiff that Defendant Fitzgerald requested Snyder's contract be terminated, because Defendant Ashkar was moving Snyder's Protestant Bible in the Chapel and not returning it, and Defendant Ashkar objected to Defendant Fitzgerald when Snyder left a note in her Bible that to whom ever was moving her Bible to please put it back when they were done and that Defendant Fitzgerald and Ashkar in a derogatory manner confronted Snyder about said note which is alleged herein to violate Title VII and the U.S. CONSTITUTION.

56. On information and belief Defendant Ashkar wanted his religion's Bible to be the only Bible in the Chapel at NIH CC.

57. Plaintiff alleges on information and belief that Defendant Ashkar conspired with the Defendants to deprive Heffernan of his Title VII protection to have Heffernan wrongfully

10

terminated to enable Defendant Ashkar to obtain Heffernan's civil service position with the Agency.

58. On information and belief Defendant Fitzgerald exhibited an exceptional interest in Byzantine and Eastern Orthodox Christian religions and could be described as a "groupie" regarding said religions.

   a.) Defendant Fitzgerald attends the Antiochian Orthodox Church Study Program and obtains a certificate;

   b.) If Defendant Fitzgerald takes more classes at the University of Balamaand, Lebanon (an Orthodox graduate school) he can obtain a Masters of Art degree;

   c.) Defendant Fitzgerald utilizes the services of a Greek Orthodox priest in Los Angeles, California. Defendant Fitzgerald calls said priest his "spiritual father."

59. Defendant Fitzgerald stated to Plaintiff that he was going to have his "Byzantine dream team" with Defendant Ashkar and the Plaintiff being hired in the SMD.

60. However to hire Defendant Ashkar, Defendant Fitzgerald and defendants had to bring about the termination of Rev. Heffernan's permanent civil service employment.

61. The plan involved with this illegal process to remove Heffernan from his permanent civil service position and replace him with Defendant Ashkar has been coined "the dream team scheme."

62. The plaintiff was a witness and had relevant and material testimony for two federal petitions filed by Rev. Henry Heffernan.

63. The plaintiff at all pertinent times was a witness and had relevant and material testimony concerning discrimination and retaliation animus by the Agency against Brenner.

11

64. Brenner was and is a material witness to Plaintiff's causes of action herein.

65. During July of 2005 Heffernan had lost his MSPB complaint and dispositive motions were being heard at the EEOC or its dismissal was being considered.

66. In the summer of 2005 Defendant Fitzgerald finds Plaintiff's email address.

67. Defendant Fitzgerald emails Plaintiff and states that he is interest in Plaintiff becoming a student in the clinical pastoral educational program at NIH CC, approved and certified by The Association for Clinical Pastoral Education, Inc. (ACPE).

68. In the summer of 2005 Plaintiff emails Defendant Fitzgerald in response stating she has been accepted into another Clinical Pastoral Education ("CPE") program.

69. Plaintiff asserts that in August of 2005 Defendant Fitzgerald invited Plaintiff out to dinner at a restaurant, The American Grill, in a hotel, The Bethesda Marriot Hotel near NIH CC allegedly to interview her for employment at NIH CC to work a week or two in August of 2005.

70. Defendant Fitzgerald and Plaintiff met and had dinner, wherein:

    a.) Fitzgerald offered her a job performing substitute work at NIH CC;

    b.) Plaintiff accepted said offer;

    c.) No written contract was written or executed; and

    d.) An oral contract was established.

71. On or about August 16 to 19, 2005 Plaintiff works at NIH CC. During this time Defendant Fitzgerald makes remarks about his unlawfully disciplining and terminating Heffernan. Defendant Fitzgerald additionally makes anti-Semitic remarks about Brenner and discloses adverse employment action Defendant Fitzgerald has taken against Brenner because he is a Jew.

12

72. From late August to mid-November of 2005 Plaintiff was a federal employee at the Dayton Veteran's Administration Medical Center (VAMC).

73. In the fall of 2005 Defendant Fitzgerald made arrangements for Plaintiff to substitute on her Christmas vacation.

74. In the fall of 2005 Defendant Fitzgerald then recruited Plaintiff to resign from her job at VAMC and take a job with NIH CC as a part-time associate chaplain.

75. In the fall of 2005 Defendant Fitzgerald insisted that Plaintiff had to meet him in Boston, Massachusetts for an interview for said job.

76. On or about October 28 to 29, 2005 Plaintiff met Defendant Fitzgerald in Boston and attended an Orthodox Christian Association of Medicine, Psychology, and Religion (OCAMPR) conference, but now Defendant Fitzgerald stated to Plaintiff that no interview was necessary because Plaintiff already had the job.

77. On or about November 16, 2005 Plaintiff returns to work at NIH CC working part-time as an associate chaplain for at least twenty (20) hours per week.

78. No contract was ever written or executed by the plaintiff and the Agency, DHHS. NIH CC deposited Plaintiff's paycheck into her personal checking account by direct-deposit.

79. Plaintiff was given keys to the Spiritual Ministry Department ("SMD"), which was located in Room 14S231, on the 14th floor of the Warren Grant Magnuson Clinical Center.

80. Defendant Fitzgerald assigned Plaintiff to video storage closet, Room 7-254, at all pertinent times was then called "Copier Room" on the seventh floor Mark O. Hatfield

13

Clinical Research Center, instead of in the SMD in Room 14S231 in the South Tower,

called by Warren Grant Magnuson Clinical Center.

    a.) Room 7-254 did not have a desk, chairs, or a computer in it.

    b.) It had a large video storage unit stored in it, which took up most of the room.

    c.) The ceiling panels were hanging down with electrical wires hanging down
        from the exposed area.

    d.) The room has been changed since Plaintiff's termination.

81. Defendant Fitzgerald telephones Plaintiff repeatedly when she is off duty and gives

her work assignments.

82. Defendant Fitzgerald micro-manages Plaintiff's work.

83. Defendant Fitzgerald controls substantially all aspects of Plaintiff's work.

84. In December of 2006 Defendant Ashkar delivered a monologue to Plaintiff that the

rabbi's position at NIH CC should be eliminated and other anti-Semitic statements.

85. On information and belief Defendant Ashkar openly prays during public services for

the conversion of the Jews to his religion.

86. On information and belief from on or about December 06, 2005 to December 12,

2005 Defendant Fitzgerald is on leave and for some of the time is attending a conference

in California. Defendant Fitzgerald instructs Defendant Ashkar to be in charge of the

SMD during Defendant Fitzgerald's absence and for Defendant Ashkar to carry the

Protestant pager.

87. On or about December 9, 2005 Defendant Ashkar is in charge of the SMD, NIH CC,

DHHS due to the absence of Defendant Fitzgerald and Fitzgerald's appointment of

Askhar as being in charge of the SMD.

88. On or about December 9, 2005 Defendant Ashkar came to work late, left work early, and worked less than three hours.

89. On or about December 9, 2005 Defendant Ashkar left work early to perform a Mass Ceremony at a church in Virginia, while he was designated to be on call for emergencies at NIH CC.

90. A patient committed suicide by climbing over the retaining wall and jumping off seventh floor and falling through the Atrium of the CRC in Building 10 at NIH CC on or about December 9, 2005.

91. On or about December 9, 2005 the Plaintiff telephoned Defendant Ashkar that his presence was urgently needed at NIH CC due to the death of a patient, and other patients and staff being upset.

      a.) Plaintiff stated to Defendant Ashkar that all Heads of Departments were being called to the seventh floor beside the Atrium of the CRC.

      b.) Defendant Ashkar refused to return to NIH CC stating that he was in Virginia and going to perform a mass.

92. On December 9, 2005 after the patient committed suicide and Defendant Ashkar refused to return to NIH CC, Plaintiff Rogler telephoned Defendant Fitzgerald who was at a conference in California. In response Defendant Fitzgerald stated that he had to attend the conference and hung up on her.

93. Plaintiff was a witness to the aftermath of a patient suicide at NIH CC on or about December 9, 2005, to the alleged improper handling of the incident by Defendants Fitzgerald and Ashkar, and Defendant Ashkar's appearance of working two different jobs concurrently.

15

94. On information and belief Defendant Ashkar was working concurrently at NIH CC and a Maronite Church in Virginia during the time period that he had a written contract to work as a chaplain for NIH CC.

95. On information and belief Defendant Ashkar would submit monthly time sheets alleging to have worked at NIH CC, when in fact Defendant Ashkar was not on the NIH CC premises.

96. On or about December 12, 2005 Plaintiff met with Laura Chisholm ("Chisholm"), Service Chief, NIH CC. Chisholm helps Plaintiff prepare a memorandum for Defendant Fitzgerald and sends Plaintiff to be seen by a counselor in the Employee Assistance Program ("EAP").

97. Plaintiff objected to alleged discrimination to Laura Chisholm (Chisholm), Service Chief, Defendants Gormley, and Jones.

98. In December of 2005 Defendant Fitzgerald states to Plaintiff that there is a plan called "clean sweep" that had been approved by all his chain of command "all the way up" to retaliate against all witnesses in the *Heffernan* matter who cooperated with the complainant.

    a. The plan was to terminate Kelley and Brenner one at a time.

    b. Chaplain Johnston was going to be pressured into retiring in February of 2006.

99. On or about December 18, 2005 (Sunday) Defendant Fitzgerald telephones the Plaintiff.

    a. Plaintiff returns Fitzgerald's call the same day.

16

b. Defendant Fitzgerald threatens Plaintiff with termination if she does not become his CPE student.

100. On or about December 18, 2005 Plaintiff emails Defendant Gormley.

101. On or about December 19, 2005 at 7:45 a.m. Defendant Gormley emails Defendant Jones with a copy to Defendant Gallin, stating: "Walter, See below. Follow up needed here. Maureen and forwards Plaintiff's email to Defendant Gormley to Defendant Jones.

102. On information and belief on or about December 20, 2005 Defendant Fitzgerald instructs Dana Kelley to give Plaintiff an office in the SMD in the Tower.

103. On or about December 20, 2005 Dana Kelley gives Plaintiff an office with a computer in the SMD in the South Tower.

104. On or about December 21, 2005 Plaintiff meets with Brenner and discusses that she is a witness to statements made by Defendant Fitzgerald that are relevant to the *Heffernan* EEOC hearing. Brenner has a telephone conversation with Rev. Heffernan in Plaintiff's presence.

105. On or about December 22, 2005 at 11:22 a.m. Defendant Jones emails Plaintiff at the wrong email address. Defendant Jones' email states: "Hello Deborah, I am have received a copy of your email to Maureen Gormley. Please contact me at your to schedule a time to discuss your concerns. My number is 301-496-327. Thanks. Walter."

106. On information and belief on December 22, 2005 Defendant Jones asks Kelley to have Plaintiff telephone Defendant Jones.

107. On December 22, 2005 Kelley instruct Plaintiff to telephone Defendant Jones to schedule a meeting between Plaintiff and Defendant Jones.

17

108. On December 22, 2005 Defendant Jones and Plaintiff meet.

    a.   Defendant Jones encourages Plaintiff to discuss her concerns with Defendant Jones during said meeting.

    b.   Plaintiff discusses Fitzgerald's communications to Plaintiff that the EEOC found to violated Title VII, her concerns about Defendant Ashkar working to jobs at the same time, her own problems with Fitzgerald's discrimination against plaintiff, Fitzgerald's discrimination against Brenner that she would testify for Heffernan, and other concerns. Plaintiff's speech was constitutionally protected speech.

    c.   Defendant Jones states to Plaintiff that Defendant Fitzgerald's conduct is "wrong" and states that Defendant Jones will schedule a meeting with Defendant Fitzgerald the next day (December 23, 2005) and that Plaintiff is not to talk with Defendant Fitzgerald until after Defendant Jones meets with Defendant Fitzgerald.

109. On information and belief on December 23, 2005 Defendants Jones and Fitzgerald meet to discuss Plaintiff's concerns.

110. On December 23, 2005 Defendant Jones has Defendant Fitzgerald and Plaintiff meet with Defendant Jones.

    a.   Defendant Jones states to Plaintiff that Defendant Jones "has good news and bad news" for Plaintiff. Defendant Jones states to Plaintiff that NIH is a big family and they have worked with each other for years and that he will not take the time to sort out the confusion.

18

b. Defendant Jones states to Plaintiff that Defendant Jones is terminating Plaintiff's alleged "contract without cause."

c. Defendant Jones states to Plaintiff that Plaintiff has no legal rights and that Defendant Jones can do "whatever he wants" to Plaintiff.

d. Defendant Jones states to Plaintiff that NIH and Defendant Jones personally will give Plaintiff a "good reference" if Plaintiff "lets by-gones be by-gones" and "not tell anyone what [Plaintiff] has seen and heard at NIH."

e. Plaintiff considered this to be a threat and an attempt to intimidate her as a witness to discrimination and retaliation.

f. Plaintiff stated to Defendants Jones and Fitzgerald that she is still going to contact Heffernan's attorneys.

111. On December 28, 2005 Plaintiff telephoned Angela Kinney ("Kinney"), the Administrative Officer for SMD and explains that Defendant Jones had stated to her that she was terminated.

g. Kinney stated to Plaintiff that Defendant Jones did not have the power or authority to terminate Plaintiff's service without Kinney conducting an investigation and agreeing with the termination.

h. Kinney promised Plaintiff that she was going to conduct an investigation of said matter and to call back later and come to her office.

112. On information and belief the Defendants participated in a conspiracy to deprive the Plaintiff of property interest in her job and good reputation by removing Plaintiff's

19

Administrative Officer Kinney from investigating Defendants Jones' and Fitzgerald's actions and omissions.

113. Later on December 28, 2005 Plaintiff telephoned Kinney, wherein Kinney stated to Plaintiff that Defendant Gallin had removed her from investigating said matter and had replaced Kinney with Gallin's Administrative Officer, Defendant Nyna Konishi and for Plaintiff to come to Kinney's office to meet with Defendant Konishi.

114. On information and belief the Defendants participated in a conspiracy to what is commonly known as rubber-stamping the decisions of Defendants Jones' and Fitzgerald.

115. Later on December 28, 2005 before 4:16 p.m. Plaintiff went to Kinney's office. Kinney was in her office and Defendant Konishi came to the outer office.

     a.   Plaintiff and Defendant Konishi met in the outer office.

     b.   Defendant Konishi stated to Plaintiff that there would be no investigation of her termination and that Defendant Konishi was going to just sign off on it.

     c.   Defendant Konishi stated to Plaintiff that Plaintiff was terminated for the convenience of the government without cause and would get a neutral reference.

     d.   Defendant Konishi provided Plaintiff with a copy of the "Order For Supplies Or Services" ("PO") and Konishi underlined "52.249-1 Termination for Convenience of the Government (Fixed Price) (Short Form) (Apri 1984).

     e.   Plaintiff never executed said contract.

    f.  Defendant Konishi states to Plaintiff that Plaintiff has no legal rights.

        Plaintiff states to Defendant Konishi that Plaintiff has already contacted

        Heffernan.

    g.  Defendant Konishi instructs Plaintiff to give to Konishi the badge and

        keys that were assigned to Plaintiff and in her possession.

    h.  Plaintiff turns over her badge and keys to Konishi.

116. On December 28, 2005 at 4:16 p.m. Defendant Konishi emailed Defendant Jones

that "Ms. Rogler visited Angela and I just a moment ago and I was able to pull the terms

and conditions of her Purchase Order that states under FAR 52.249-2 that the

Government can Terminate for the Convenience of the Government (dated Apr 1984)."

This is the clause of the contract, which does not require a reason to terminate a

contractor.

117. On information and belief Defendant Konishi failed to conduct an adequate

investigation into the grounds for the Plaintiff's termination, participated in a conspiracy

to deprive the Plaintiff of her position, and signed Plaintiff's termination papers to

retaliate against plaintiff in violation of the US CONSTITUTION.

118. On December 30, 2005 at 12:47 p.m. Defendant Konishi emails Defendant Jones

referring to the Plaintiff, stating: "Good Afternoon- I need ASAP the reason for her

termination. It needs to go into the termination letter and into the records. Thanks"

119. Plaintiff was named and called as a witness in *Rev. Henry Heffernan v. Mike

Leavitt, DHHS (NIH CC)*, EEOC Case No. 120-2005-00226X ("*Heffernan*").

120. On information and belief on January 4, 2006 Heffernan's counsel, Attorney Cathy

A. Harris, contacted the Agency's counsel, Defendant Lu, and informed her that

21

Heffernan was filing his "Complainant's Motion to Call Edar Rogler as a Witness" and "to ascertain her position on this motion." Complainant filed said motion moving to call Rogler as "a potential impeachment witness to the expected testimony of Defendant Fitzgerald. On information and belief Attorney Harris served Defendant Lu a copy by facsimile on January 4, 2006.

121. On information and belief in violation of Plaintiff's constitutional rights and privacy rights, the defendants in conspiracy falsely created a letter to Plaintiff from Defendant Britton regarding "Purchase Order 269-MM-602634 entitled 'Pastoral Care/Consulting Counseling Services to Patients and Families'" dated January 5, 2005. Said letter falsely stated that the Plaintiff's alleged "contract" was terminated, because "concerns were raised by Pain and Palliative Care Leadership based on the performance by the contractor in the services being provided to their patients. Plaintiff asserts that said letter is false. The factual basis for this allegation is as follows:

    a.)    The timing of letter of termination in relationship to Plaintiff's email to Defendant Gormley, communications with Defendant Jones and Fitzgerald, and Heffernan's Motion submitted to the EEOC naming Plaintiff as a witness;

    b.)    Plaintiff was not assigned to perform services in the Pain and Palliative Care Clinic (PPCC);

    c.)    Plaintiff had been to the PPCC twice briefly in mid-November to temporarily substitute until Defendant Fitzgerald arrived late;

    d.)    for six weeks there was no mention of concern regarding Plaintiff extremely brief substitute service in PPCC;

e.)    no one wrote a written complaint or completed a point of contact form with a patient complaint alleging inadequate services;

f.)    said letter is the first mention of concerns regarding Plaintiff's brief, temporary visit to PPCC;

g.)    the Plaintiff has never met the PPCC leadership;

h.)    Administrative Officer Kinney was prohibited from investigating Defendant Jones' request to terminate Plaintiff;

i.)    Defendant Konishi failed to perform any investigation into the Plaintiff's termination before Defendant Konishi approved it;

j.)    Defendant Britton failed to perform any investigation into the Plaintiff's termination before Defendant Britton approve it;

k.)    Defendant Fitilis removed the Plaintiff's records from Defendant Britton's office and instructed Defendant Britton not to conduct an investigation into the Plaintiff's termination;

l.)    Defendants had a planned called "Operation Clean Sweep" to retaliate against witnesses to Heffernan's allegations of discrimination and reprisal by wrongfully terminating the witnesses or pressuring them into retiring and

m.)    other reasons that will be investigated during discovery.

Plaintiff's testimony in the *Heffernan* matter was constitutionally and federally protected speech.

122. Plaintiff is a witness in two matters pending in *Rabbi Reeve Brenner v. Mike Leavitt, DHHS (NIH CC)*, MSPB, case no. DC-0752-07-0414-1-1 and EEO formal

23

complaint entitled *Reeve Brenner v. Mike Leavitt*, case no. NIH CC-06-0009

("*Brenner*"). Plaintiff's testimony in the *Brenner* matter is constitutionally and federally

protected speech.

123. Said complaint in the *Rogler* matter was dismissed for lack of jurisdiction and was

not decided on the merits of the complaint. Plaintiff's communications were

constitutionally protected speech.

124. Plaintiff alleges that said letter of January 5, 2005 was falsely created to be

unlawfully presented in the EEOC matter of *Heffernan* (Case No. 120-2005-002226X) to

adversely influencing the decision of Administrative Judge David Norken ("AJ Norken")

in his decision on whether to accept the addition of the Plaintiff as a witness.

125. Plaintiff alleges said letter was created with malicious intent to intimidate Plaintiff

from being a witness and to unlawfully retaliate against the Plaintiff by publicly

humiliating her for coming forward as a witness in said matter.

126. Plaintiff alleges said letter was created without an adequate investigation and was

written with the intent to deprive the Plaintiff of future employment opportunities.

127. Plaintiff alleges said letter was created without an adequate investigation and was

written with the intent to deprive the Plaintiff of future employment opportunities in

furtherance of Operation Clean Sweep.

128. The Defendants, by and through Defendant Lu, filed said letter with the EEOC,

Baltimore District Office before Plaintiff had received said letter, thereby, denying her

the opportunity to object to the unlawful disclosure of the falsely created document.

Said letter was then mailed by overnight express to the Plaintiff.

24

129. On January 5, 2006 the Agency filed its *Opposition to Complainant's Motion to Call Edar Rogler as a Witness*. Said opposition stated, "[t]he Agency offered Ms. Rogler two weeks severance pay and a neutral reference."

130. On January 6, 2006 the Agency wrote to Heffernan's counsel a letter dated January 6, 2006 proposing that the Agency's termination letter dated January 5, 2005 to Rogler would be used as evidence in the Heffernan hearing and attached a copy of the Plaintiff's termination letter. The Agency's letter of termination of Plaintiff's services was falsely created and delivered to the EEOC before it was delivered to the Plaintiff. Plaintiff was not given an opportunity to object to said letter's publication and release to the EEOC.

131. The EEOC ruled that said letter was irrelevant, immaterial and inadmissible in the EEOC matter. This disclosure of said letter violated Plaintiff's right to privacy pursuant to the Privacy Act, 5 U.S.C. § 552a *et seq.*.

132. In January of 2006 Brenner was called to testify at the Heffernan matter. Brenner's testimony was constitutionally protected speech and protected by *Title VII of the Civil Rights Act of 1964*, as amended, ("Title VII").

133. At the time Brenner testified in the *Heffernan* matter, he had a clean personnel record and satisfactory work performance.

134. After Brenner testified in the *Heffernan* matter, he was allegedly unlawfully suspended and wrongfully terminated from employment at NIH CC.

135. Additionally Brenner is a witness to discrimination and retaliation and constitutional violations committed by the Defendants against the Plaintiff.

25

136. Plaintiff filed her own EEOC complaint entitled *Edar Rogler v. Mike Leavitt, DHHS (NIH CC)*, Request No. 0520070128, Appeal No. 01A63657, Agency No. NIHCC-06-0008 ("*Rogler*").

137. On or about  Defendant Britton stated to Plaintiff that she was going to conduct a thorough investigation into the termination of Plaintiff's alleged "contract."

138. On information and belief Defendant Fitilis obstructed the investigation that Defendant Britton was going to conduct by asserting that she was staff attorney for NIH CC and to turn all of Plaintiff's records over to Defendant Fitilis and the NIH "Legal Department." Defendant Britton stated to Plaintiff that the NIH CC "legal department" had instructed her to turn over all of her records on Plaintiff and not to conduct an independent investigation into the termination of Plaintiff's services.

139. On or about Plaintiff emailed Defendant Britton and asked Defendant to give Plaintiff the name of the relevant "TOC" and "auditor."

140. On or about Defendant Britton emailed Defendant Fitilis to get instructions on whether or not Defendant Britton should give Plaintiff the name of the relevant "TOC" and "auditor."

141. On information and belief Defendants Fitilis and Biglow obstructed and intervened by instructing Defendant Britton not to provide the Plaintiff with the requested information.

142. On or about Defendant Britton emailed the Plaintiff writing for Plaintiff to contact Defendant Biglow.

26

143. On information and belief Defendant Gallin ordered Defendant Fitilis to settle the discrimination informal complaints filed by Plaintiff and Rabbi Brenner with the OEO DM.

144. On or about June 5, 2006 Rabbi Brenner filed his formal complaint alleging discrimination and retaliation under Title VII with the OEO DM.

145. On or about June 6, 2006 Defendants Biglow and Fitilis were in an agreement, a so-called "in the loop" to conspire against Rabbi Brenner's and the Plaintiff's constitutionally protected rights.

146. On or about June 6, 2006 Defendant Fitilis emailed Defendant Biglow to keep him in "the loop" on Plaintiff's activities.

147. On information and belief all of the defendants are in the loop to conspire against Rev. Heffernan, Rabbi Brenner, and the Plaintiff to deprive them of their constitutionally protected rights.

148. During the week of June 6, 2006 Defendants Biglow and Fitilis were in communication with Victor Canino ("Canino"), Complaints Officer, OEO DM who was managing the informal complaints of Plaintiff and Rabbi Brenner.

149. Defendants Biglow and Fitilis were schedule to meet with Canino on or about June 7, 2006.

150. On or about June 7, 2006 on information and belief Defendant Fitilis asked Canino to find out "how low" Rabbi Brenner "will go" to settle his complaint and resign from his position at NIH CC.

27

151. On information and belief Rabbi Brenner's counsel, Attorney Kator telephoned Defendant Biglow and stated that it would take a lot of money to settle Rabbi Brenner's complaint and that Rabbi Brenner was unwilling to resign.

152. On information and belief the Agency was unwilling and remains unwilling to settle Rabbi Brenner's discrimination complaint.

153. On information and belief during the week of Yon Kippur about October 2nd to 4th, of 2006, Defendant Fitilis confronted Rabbi Brenner in the Chapel of the CRC on the 7th Floor in Building 10 and falsely alleged that she was a Jew as defined by the Jewish religion and seeking spiritual communication with the rabbi. Plaintiff alleges that the conversation that ensued between Defendant Fitilis and Rabbi Brenner that was protected speech under the U.S. CONSTITUTION and Title VII.

154. On or about October 4th, 2006 Defendant Jones brought Rabbi Brenner up on disciplinary charges resulting in Rabbi Brenner being on administrative leave for approximately five (5) months.

155. One major charge against Rabbi Brenner concerned the conversation between Defendant Fitilis and Rabbi Brenner in the Chapel on Yon Kippur when Defendant Fitilis alleged that she was a Jew as defined by the Jewish religion.

156. On information and belief Defendant Fitilis is not a Jew as defined by the Jewish religion and rabbinical law.

157. Additionally Defendant Fitilis was working in a secular job on Yon Kippur in violation of the tenets of the Jewish religion.

158. Plaintiff alleges that Defendant Fitilis deliberately and/or incompetently confront Rabbi Brenner on or about Yon Kippur in the NIH CC's chapel to provoke an argument

28

to support false disciplinary charges against Rabbi Brenner to procure the rabbi's

wrongful termination in violation of Title VII.

159.  Plaintiff alleges that Defendant Fitilis was acting in concert with the other

defendants to bring to completion Operation Clean Sweep in regards to Rabbi Brenner's

employment at NIH CC in violation of Title VII.

160.  In January/February of 2007 the EEOC issued its decision and order in the

*Heffernan* matter ordering that the Agency had discriminated and retaliated against Rev.

Heffernan and ordered the Agency to reinstated Rev. Heffernan.


### COUNT I
(First Amendment Violations)
(Freedom of Speech)

161.  Plaintiffs realleges paragraphs 1 through  160 as if fully set forth herein.

162.  Plaintiff enjoys the rights of freedom of expression as guaranteed by the First
Amendment to the United States Constitution.

163.  The First Amendment guarantees Plaintiff of her right to speak freely, including the
right to testify at an EEOC hearing on a discrimination matter, to criticize NIH CC and its
governmental officials and employees and to file her own discrimination complaint with
the OEO DM.

164.  Plaintiff's speech was protected speech.

165.  Defendants, acting under color of federal authority, violated Plaintiff's First
Amendment rights by retaliating against Plaintiff for coming forward as a witness in the
*Heffernan* matter and by attempting to prevent Plaintiff from continuing to exercise her
First Amendment rights.

166.  The Defendants' retaliatory action adversely affected Plaintiff's constitutionally
protected speech.

167.  A causal relationship existed between Plaintiff's speech and the Defendants'
retaliatory action.

168.  Defendants were not performing a discretionary function.

29

169. Defendants' conduct violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

170. A reasonably competent public official knows or should know that intimidation of a witness is clearly a prohibited unlawful activity.

171. Retaliation against speech on issues of public concern is clearly prohibited.

172. The Defendants' conduct was plainly incompetent and/or knowingly violating Plaintiff's constitutional rights.

173. Examples of facts supporting improper motive are as following (but not limited to the following):

    a.) Plaintiff presence and existence was concealed from Revs. Heffernan and Brenner by Defendant Fitzgerald by such actions as designating Plaintiff's office to be in a video storage closet, Room 7-254, called "Copier Room" on the seventh floor CRC instead of in the SMD in the South Tower, Warren Grant Magnuson Clinical Center, in Building 10. Said room 7-254 has been changed since Plaintiff's termination;

    b.) Plaintiff was prohibited from going into the SMD, Room 14s231, 14th floor in the South Tower, Warren Grant Magnuson Clinical Center, Building 10 when Rabbi Brenner was present in the SMD and/or on duty at the NIH CC;

    c.) Defendant Fitzgerald's dissertation to Plaintiff on the Defendants' operation clean sweep was an intimidation speech to intimidate Plaintiff from coming forward as a witness to discrimination and retaliation by the Defendants against Revs. Heffernan and Brenner;

    d.) Defendant Fitzgerald asked Plaintiff not to tell anyone what he had told her;

    e.) On information and belief Defendant Fitzgerald instructed Rabbi Reeve Brenner to falsely state under oath at the *Heffernan* hearing that he had no recollection when he clearly remembered;

    f.) Defendant Fitzgerald's offer to Plaintiff of a position as an ACPE CPE student with a level II promotion;

    g.) The timing of the events raises an inference of retaliatory motive. Defendant Jones commenced termination procedure within twenty-four (24) hours of learning that Plaintiff had come forward as a witness in the *Heffernan* matter and had other protected speech to Defendant Gormley;

    h.) Lack of evidence of poor work performance;

    i.) Lack of evidence of anyone objecting to Plaintiff's work performance prior to Plaintiff's protected speech;

    j.) Defendant Jones offered Plaintiff a good recommendation if she did not tell anyone anything that she had seen or heard at NIH;

    k.) Management officials removed Administrative Officer Angela Kinney when she stated that she would conduct a thorough investigation of Defendant Jones' desire to terminate Plaintiff;

30

180. Plaintiff enjoys the rights of freedom of religion as guaranteed by the First Amendment to the United States Constitution.

181. Defendants, acting under color of federal authority, violated Plaintiff's First Amendment tights by retaliating against the Plaintiff for testifying at federal proceedings and objecting to violations of Title VII and First Amendment violations and by attempting to prevent Plaintiff from continuing to exercise his First Amendment rights. Defendants retaliated against Plaintiff and attempted to prevent him from exercising his First Amendment rights by making false statements and accusations against the Plaintiff and terminating her employment and/or contract.

182. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of her constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

183. As a direct and proximate result of the violation of her constitutional rights, Plaintiff suffered substantial damages.

## COUNT II
(First Amendment Violations)
(Freedom of Speech)

184. Plaintiff reallege paragraph 1 through 177 as if fully set forth herein.

185. Plaintiff enjoys the rights of freedom of expression as guaranteed by the First Amendment to the United States Constitution.

186. Defendants, acting under color of federal authority, violated Plaintiff's First Amendment tights by retaliating against the Plaintiff for testifying at federal proceedings and objecting to violations of Title VII and First Amendment violations and by attempting to prevent Plaintiff from continuing to exercise his First

Amendment rights. Defendants retaliated against Plaintiff and attempted to prevent him from exercising his First Amendment rights by making false statements and accusations against the Plaintiff and terminating her employment and/or contract.

187.  Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of her constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

188.  As a direct and proximate result of the violation of her constitutional rights, Plaintiff suffered substantial damages.

**COUNT IV**
**[42 U.S.C. §1985(1)]**

189.  Plaintiff re-alleges paragraph 1 through 177 as if fully set forth herein.

190.  This is an action to recover damages for injury to person or property or because of the deprivation of rights and/or privileges of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in §1985(1) of Title 42 of the U.S. Code.

191.  Defendants' acted in a private conspiracy.

**COUNT V**
**[42 U.S.C. §1985(2)]**

192.  Plaintiff re-alleges paragraph 1 through 177 as if fully set forth herein.

193.  This is an action to recover damages for injury to person or property or because of the deprivation of rights and/or privileges of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in §1985(2) of Title 42 of the U.S. Code.

194.  Defendants' acted in a private conspiracy.

## COUNT VI
### [42 U.S.C. §1985(3)]

195. Plaintiff re-alleges paragraph 1 through 177 as if fully set forth herein.

196. This is an action to recover damages for injury to person or property or because of the deprivation of rights and/or privileges of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in §1985(3) of Title 42 of the U.S. Code.

197. Defendants' possessed the necessary class-based invidiously discriminatory animus.

198. Defendants' acted in a private conspiracy.

## COUNT VII
### [Fourth Amendment]

199. Plaintiff re-alleges paragraph 1 through 177 as if fully set forth herein.

**200.** Plaintiff was served with an unconstitutional summons to appear at a deposition in Washington, D.C..

**201.** Defendants' acted in concert to deny the Plaintiff her Fourth Amendment rights.

## COUNT VII
### [Fifth Amendment]

202. Plaintiff re-alleges paragraph 1 through 177 as if fully set forth herein.

203. Defendants' acted in concert to denied the plaintiff her due process rights.

**WHEREFORE,** Plaintiff demands judgment be entered against Defendants, jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs and such other relief as the Court deems just and proper.

**Plaintiff demands trial by jury on all issues so triable.**

DATED:  December 21, 2007

Edar Rogler, Plaintiff, *pro se*

915 Boucher Avenue

Annapolis, MD.  21403

(443)852-6555

07cv 2308
RMC

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I. (a) PLAINTIFFS

Edar Rogler

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

Anne Arundel, Md

**DEFENDANTS** William Bislow etal

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Unknown
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

pro se

Case: 1:07-cv-02308
Assigned To : Collyer, Rosemary
Assign. Date : 12/21/2007
Description: Civil Rights - Non. Employ

JURY ACTION

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant
□ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**□ A. Antitrust**

□ 410 Antitrust

☒ Bivens

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

Social Security:
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

Other Statutes
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**□ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**□ E. General Civil (Other)  OR  □ F. Pro Se General Civil**  Constutional tort

Real Property
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

Personal Property
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

Bankruptcy
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

Prisoner Petitions
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

Property Rights
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

Federal Tax Suits
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

Other Statutes
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General | □ 442 Civil Rights-Employment | □ 895 Freedom of Information Act | □ 152 Recovery of Defaulted Student |
| □ 510 Motion/Vacate Sentence | (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) | □ 890 Other Statutory Actions (if Privacy Act) | Loans (excluding veterans) |
| | *(If pro se, select this deck)* | *(If pro se, select this deck)* | |

| □ K. *Labor/ERISA (non-employment)* | ☑ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act | □ 441 Voting (if not Voting Rights Act) | □ 110 Insurance | □ 441 Civil Rights-Voting (if Voting Rights Act) |
| □ 720 Labor/Mgmt. Relations | □ 443 Housing/Accommodations | □ 120 Marine | |
| □ 730 Labor/Mgmt. Reporting & Disclosure Act | □ 444 Welfare | □ 130 Miller Act | |
| □ 740 Labor Railway Act | □ 440 Other Civil Rights | □ 140 Negotiable Instrument | |
| □ 790 Other Labor Litigation | □ 445 American w/Disabilities-Employment | □ 150 Recovery of Overpayment & Enforcement of Judgment | |
| □ 791 Empl. Ret. Inc. Security Act | □ 446 Americans w/Disabilities-Other | □ 153 Recovery of Overpayment of Veteran's Benefits | |
| | | □ 160 Stockholder's Suits | |
| | | □ 190 Other Contracts | |
| | Const. Tort | □ 195 Contract Product Liability | |
| | | □ 196 Franchise | |

**V. ORIGIN**

☑ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

42 USC 8/985  #8 USC §§ 1343(a)     Civil Rights

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Bivens   28 USC §1331   Violation of Const. rights

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23 | **DEMAND $** $1,000,000.00 | Check YES only if demanded in complaint **JURY DEMAND:** ☑ YES   □ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   ☑ NO   If yes, please complete related case form.   *Not Appl*

DATE 12/20/2007   SIGNATURE OF ATTORNEY OF RECORD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.