UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| EDAR ROGLER, | ) | |
| | ) | |
| Plaintiff *pro se*, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 07-2308 (RMC) |
| | ) | |
| | ) | |
| WILLIAM BIGLOW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY,
TO STRIKE CERTAIN ALLEGATIONS AND DISMISS
DOE DEFENDANTS 1 THROUGH 25

Defendants,[1] by and through undersigned counsel, hereby move this Court,

pursuant to Fed. R. Civ. P. 12(b)(1)-(6) to dismiss the complaint filed herein and all

claims for damages on the grounds that Plaintiff has failed to establish that this Court has

jurisdiction in this action, and because Plaintiff has failed to state a claim upon which

relief can be granted.  Defendants also move, pursuant to Fed. R. Civ. P. 10 and 12(f) to

dismiss the "Doe" Defendants in Plaintiff's complaint, and to strike certain allegations

from Plaintiff's complaint.  In support of this motion, the Court is respectfully referred to

the accompanying Memorandum of Points and Authorities in Support.  A proposed Order

---

[1] According to Plaintiff's complaint, Defendants are sued in their personal capacity
as follows: William Biglow, Julie Lu, John I. Gallin, M.D., Maureen Gormley, R.N.,
Walter L. Jones, Hillary Fitilis, Rev. Owen Ray Fitzgerald, Rev. Dominick Ashkar, Ann
M. Berger, MSN, MD., Nyna Konishi, Deborah Britton, Lawrence Self, Michael Chew,
and Does 1 to 25.  All of the named Defendants are federal employees.

granting Defendants the relief requested is also attached.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

2

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDAR ROGLER, | ) | |
| | ) | |
| Plaintiff *pro se*, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 07-2308 (RMC) |
| | ) | |
| WILLIAM BIGLOW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | )_ | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I.    INTRODUCTION

Plaintiff *pro se*, Edar Rogler, a resident of Maryland, filed this action[1] on

December 21, 2007, after having voluntarily dismissed an almost identical complaint in

Maryland, naming the same Defendants in their personal capacities.[2]  *See* Defendants'

---

[1] Plaintiff's complaint consists of  34 pages, containing over 200 allegations, some of which are brought on behalf of other individuals.  However, paragraphs 174 through 179 are missing from the complaint.

[2] Plaintiff's complaint alleges that Defendants were acting under the color of federal authority.  In the event that Plaintiff is deemed to be suing these individuals in their official capacities, Defendants reserve the right to assert other defenses to this action, including the defense of sovereign immunity.  *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).  Additionally, in light of Plaintiff's voluntary dismissal of her suit in the District of Maryland, Defendants reserve the right to seek costs and attorney fees against Plaintiff pursuant to Rule 41(d) of the Federal Rules of Civil Procedure.

Exhibit ("Def. Exh.") A.[3]   Plaintiff was an independent contractor with the National

Institute of Health ("NIH"), U.S. Department of Health and Human Services.  Complaint

("Compl.") ¶¶ 19, 27.  According to the complaint, Plaintiff's services were terminated on

December 23, 2005.  *Id.* at 110.

Plaintiff's primary argument is that Defendants violated her constitutional rights

by retaliating against her for agreeing to testify as a witness in an administrative

proceeding before the Equal Employment Opportunity Commission ("EEOC").[4]  Plaintiff,

alleging constitutional violations under the First, Fourth and Fifth Amendments to the

U.S. Constitution,[5] and citing violations of 42 U.S.C. §§ 1985(1), (2) and (3), seeks, *inter*

*alia*, unspecified monetary damages against Defendants "jointly and severally."

As explained in detail below, all claims against Defendants should be dismissed

because:  (1) the District of Columbia is an improper venue for Plaintiff's action; (2) this

Court lacks personal jurisdiction over Defendants because Plaintiff has failed to effect

proper service of process and this Court cannot exercise jurisdiction over the non-resident

---

[3] Plaintiff still has a Title VII action pending in the District of Maryland against the U.S. Department of Health and Human Services based on the same events alleged in this complaint.  She voluntarily dismissed a Privacy Act suit based on the same events. These actions in the District of Maryland are designated as Civil Action Nos. 07-0726 and 07-1676, respectively.

[4] Plaintiff alleges that her employment was terminated and that a false document concerning her performance was created in order to retaliate against her.

[5] Plaintiff appears to be alleging a cause of action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Defendants in this matter; (3) Plaintiff does not have standing to bring certain claims;

(4) Plaintiff's claims are barred by the doctrine of incorporate conspiracy; (5) Plaintiff has

failed to state a claim under the provisions of 42 U.S.C. §§ 1985 (1)-(3); (6) Plaintiff has

failed to state a claim for any implied violation of constitutional rights pursuant to *Bivens*

*v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971);

and (7) Defendants enjoy qualified immunity from suit.

## ARGUMENT

## II.  THE DISTRICT OF COLUMBIA IS AN IMPROPER VENUE FOR PLAINTIFF'S ACTION

Venue in a *Bivens* action is governed by 28 U.S.C. § 1391(b).  *See Stafford v.*

*Briggs*, 444 U.S. 527, 544 (1980).  This statute provides that a cause of action may "be

brought only in: (1) a judicial district where any defendant resides, if all defendants live

in the same State; (2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the

subject of the action is situated; or (3) a judicial district in which any defendant may be

found, if there is no district in which the action may otherwise be brought."  28 U.S.C.

§ 1391(b).  Plaintiff alleges that venue is proper in this judicial district pursuant to 28

U.S.C. § 1391(b)(2), "because a substantial part of the events or omissions giving rise to

her claims occurred in the District of Columbia, some of the Defendants reside and/or

work in the District of Columbia, and some of the Defendants are licensed to practice in

the District of Columbia and/or practice law in the District of Columbia."  *See* Compl.

¶ 18.

Of course, this averment is contradicted by the complaint filed by Plaintiff in

Maryland, wherein she alleged that "a substantial part of the events or omissions giving

rise to the claims herein occurred in the District of Maryland." *See* Def. Exh. A, ¶ 18.

Moreover, this averment is contradicted by Plaintiff's averments in this action, because

she alleges that she was a witness in a proceeding before the MSPB in Alexandria,

Virginia, and she worked at the National Institute of Health Clinical Center ("NIH CC")

in Bethesda, Maryland. *See* Complaint ¶¶ 1, 19. Additionally, almost all of Plaintiff's

allegations concern events that occurred at the NIH CC in Maryland. *See* Compl.

¶¶ 20-26, 32, 34-39, 43-47, 51-56, 67, 69-71, 74, 77-80, 84, 87-96, 102-103, 110-117.

Similarly, since there is no special venue provision for non-Title VII civil rights

claims, 28 U.S.C. § 1391(b) governs actions brought under 42 U.S.C. § 1985. *Lozano v.*

*Civiletti*, 89 F.R.D. 475 (D.C. Cir. 1980); *Jones v. Bales*, 58 F.R.D. 453, 458 (N.D. Ga.

1972) *aff'd* 480 F.2d 805 (5th Cir. 1973). Because the complaint clearly indicates that the

alleged conspiracies of which she complains occurred in Maryland, her claims pursuant

to 42 U.S.C. § 1985 should also be dismissed for lack of venue in this judicial district.

As cautioned by the Court in *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C.

Cir. 1993), "[C]ourts in this circuit must examine challenges to personal jurisdiction and

venue carefully to guard against the danger that a plaintiff might manufacture venue in

the District of Columbia." Accordingly, Plaintiff's action should be dismissed for lack of

venue in this judicial district.

### III.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Plaintiff's complaint generally alleges that a substantial part of the events or omissions giving rise to her claims occurred in the District of Columbia, some of the Defendants reside and/or work in the District of Columbia, and some of the Defendants are licensed to practice in the District of Columbia and/or practice law in the District of Columbia.[6]  Compl. ¶ 18.  However, the only other reference to the District of Columbia appears in Count VII of Plaintiff's complaint which alleges that "an unconstitutional summons was issued for her to appear at a deposition in Washington, D.C."  *See* Compl. ¶ 200.[7]

Plaintiff bears the burden of establishing personal jurisdiction over each individual Defendant.  *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988); *Atlantigas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34, 42 (D.D.C. 2003); *Taylor v. Gearan*, 979 F.Supp. 1, 5 (D.D.C. 1997)).  "Plaintiff must allege specific facts on which personal jurisdiction can be based; [she] cannot rely on conclusory allegations."  *Moore v. Motz*, 437 F.Supp.2d 88, 91 (D.D.C. 2006) (citations omitted).

---

[6] As discussed in section II, Plaintiff's previous complaint and the one in this action contradicts Plaintiff's assertions that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.  Nor has she identified which Defendants work in, reside in, or are licensed in the District of Columbia.

[7] There is no allegation that she appeared for the deposition in Washington, D.C.

### A. **All Defendants Have Not Been Personally Served**

This Court is without personal jurisdiction over Defendants in their individual capacities in the absence of proper service. It is well-established that, in an action against a federal employee in an individual capacity, the individually sued defendant must be served with process in accordance with rules applicable to individual defendants. *See Simpkins v. District of Columbia Govt.,* 108 F.3d 366 (D.C. Cir. 1997); *Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978); *Delgado v. Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989). Rule 4 of the Federal Rules of Civil Procedure requires that a copy of the summons and complaint be delivered to a defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides therein. *Lawrence*, 79 F.R.D. at 670. Service on the Attorney General of the United States or the United States Attorney for the district in which the action is brought, pursuant to the rules applicable to official capacity suits, "does not obviate the requirement of personal service . . . where the action is in substance against a federal official in his individual capacity." *Lawrence v. Acree*, 79 F.R.D. at 670; *Delgado v. Bureau of Prisons*, 727 F. Supp. at 27.

To the extent that Plaintiff seeks relief against federal employees in an individual capacity, the Court must acquire personal jurisdiction in order to enter a binding judgment. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984); *Griffith v. Nixon*, 518 F.2d 1195 (2d Cir.) *cert. denied*, 423 U.S. 995 (1975). Because the record in

6

this action does not establish proper personal service upon all Defendants[8] in their

individual capacities, all claims against those Defendants who have not been properly

served in such capacities should be dismissed.[9]

### B. Plaintiff Has Failed To Effect Proper Service Over All Defendants

Pursuant to Fed. R. Civ. P. 4(m), a defendant must be properly served with the

summons and complaint within 120 days of the filing of the complaint. If not, the Court

"must" either dismiss the action against the defendant without prejudice or order that

service be effected within a specified period of time. *Id.* Pursuant to Fed. R. Civ. P.

4(i)(1), service upon the United States must be effected by:

> deliver[ing] a copy of the summons and of the complaint to the United
> States attorney for the district where the action is brought – or to an
> assistant United States attorney or clerical employee whom the United
> States attorney designates in a writing filed with the court clerk – or [by]
> send[ing] a copy of each by registered or certified mail to the civil-process
> clerk at the United States attorney's office;

Fed. R. Civ. P. (4)(i)(1)(A). Pursuant to Fed. R. Civ. P. 4(i)(1)(B), Plaintiff also must

send a copy of the summons and of the complaint "by registered or certified mail to the

Attorney General of the United States at Washington, D.C." "Unless service is waived,

---

[8] At this time, Plaintiff has filed a return of service indicating that as of March 29, 2008, only six Defendants have been served. *See* Docket No. 8.

[9] A pro se litigant such as Plaintiff must be afforded more latitude to correct defects in service of process in his pleadings than other litigants who are represented by counsel. *See Moore v. Agency for Int'l Dev.*, 944 F.2d 874, 876 (D.C. Cir. 1993). However, as discussed herein, in light of the other bases for dismissal of this case, Defendants submit that no purpose would be served by granting such indulgences in this case.

7

proof of service must be made to the court" and "proof must be by the server's affidavit." Fed. R. Civ. P. 4(l).

"A party can move the court to dismiss a complaint under the Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process." '[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.' " *Wilson v. Prudential Financial*, 332 F. Supp. 2d 83, 87 (D.D.C. 2004) (quoting *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations omitted)). If "the plaintiff fails to effect proper service within the 120-day time limit laid down by Rule 4(m), the plaintiff carries the burden of showing good cause for that failure. *Wilson v. Prudential Financial*, 332 F. Supp. 2d at 87; *see also Hilska v. Jones*, 297 F. Supp. 2d 82, 88 (D.D.C. 2003) ("If the plaintiff fails either to effect service within the specified time or to show good cause for failing to effect service, the court may dismiss the action without prejudice.")). Fed. R. Civ. P. 4(i)(l) "requires that service on an officer of the United States be effected by serving the United States Attorney for the district in which the action is brought, as well as, the Attorney General." *Nix v. Hoke*, 62 F. Supp. 2d 110, 117 (D.D.C. 1999).

Plaintiff's *Acknowledgment of Service* dated March 29, 2008, demonstrates that she has failed to perfect service on a number of Defendants, and more than 120 days have passed since Plaintiff filed her Complaint on December 21, 2007. Because Plaintiff has

failed to effect proper service within 120 days of the filing of her Complaint, said

Complaint is subject to dismissal as to those Defendants that Plaintiff has failed to serve,

pursuant to Fed. R. Civ. P. 4(m).

### C.  The Court Cannot Exercise Personal Jurisdiction Over Twelve Non-Resident Defendants Under These Circumstances

In order to determine whether the Court may exercise personal jurisdiction over

non-resident defendants, the Court must first determine whether jurisdiction may be

exercised under the District of Columbia's long-arm statute.  *See GTE New Media Servs.,*

*Inc. v. Bell South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The District of Columbia

long-arm statute allows a court in the District of Columbia to exercise personal

jurisdiction over a non-resident defendant with regard to claims arising from a

defendant's conduct in:

> (1) transacting business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the district of Columbia by an act or omission
> in the District of Columbia; or
> (4) causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia if he regularly does or solicits business,
> engages in any other persistent course of conduct, or derives substantial
> revenue from goods used or consumed, or services rendered, in the District
> of Columbia.

D.C. Code § 13-423(a).  Plaintiff has not alleged that Defendants transacted any personal

business or contracted to supply any services in the District of Columbia.  Moreover, with

regard to tortious injury claims such as that alleged here, the only applicable provision of

the District of Columbia's long-arm statute is D.C. Code § 13-423(a)(4), which requires

9

that the injury must occur in the District of Columbia for personal jurisdiction to be

proper in this Court.  *See Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004)

(holding that § 13-423(a)(3) "is a 'precise and intentionally restricted tort section which

stops short of the outer limits of due process,' and requires that both act and injury occur

in the District of Columbia.") (citations omitted); *GTE New Media Servs., Inc. v. Bell

South Corp.*, 199 F.3d at 1347 (reading the language of D.C. Code § 13-423(a)(4) to only

vest personal jurisdiction in this Court if the injury took place in the District of

Columbia).

    The Court must also determine whether the exercise of personal jurisdiction

satisfies due process requirements.  *GTE New Media Servs., Inc. v. Bell South Corp.*, 199

F.3d at 1343 (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).  A

court cannot require a nonresident to defend in a forum which is not constitutionally

"reasonable, in context of our federal system of government . . ."  *International Shoe Co.

v. Washington*, 326 U.S. 310, 317 (1945).  The general rule is that personal jurisdiction is

proper only if the defendant's conduct with the forum allows the maintenance of a suit

which "does not offend traditional notions of fair play and substantial justice."  *Id*. at 316.

The "defendant's conduct and connection with the forum state [must be] such that he

should reasonably anticipate being haled into court there."  *World-Wide Volkswagen

Corp. v. Woodsen*, 444 U.S. 286, 297 (1980).

    Except for one instance, Plaintiff's complaint sets forth no allegations that

10

Defendants have any personal connection with the District of Columbia other than their federal employment.[10]  However, the mere fact that these Defendants are employees of the U.S. Department of Health and Human Services ("DHHS"), the headquarters office of which is in the District of Columbia, does not render them subject to suit in their individual capacities in the District of Columbia.  *See Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980) (absent minimum contacts other than those arising from federal employment, a court may not exercise personal jurisdiction over a federal official in his individual capacity).

Additionally, Plaintiff is not a resident of the District of Columbia and her complaint alleges no facts to establish that she suffered any injury in the District of Columbia.[11]  In fact, the alleged injuries of which she complains occurred in Maryland and Virginia.  *See* Compl. ¶¶ 20-26, 32, 34-39, 43-47, 51-56, 67, 69-71, 74, 77-80, 84, 87-96, 102-103, 110-117.  Therefore, Plaintiff has failed to meet her burden to establish that the Court has personal jurisdiction over all except one of the Defendants, and her

---

[10] Plaintiff lists the address of DHHS' headquarters for Defendants Biglow and Lu. *See* Compl. ¶¶ 3, 4.  She has listed Maryland addresses for the remaining Defendants.  *See* Compl. ¶¶ 5-15.  However, the heading of the complaint lists a Virginia address for Defendant Lu and a District of Columbia address for Defendant Ashkar.  *See* Compl. Heading.  In fact, Defendant Ashkar is the only Defendant who resides in the District of Columbia.  *See* Def. Exhs. B-N.

[11] Plaintiff only alleges that she was served with an "unconstitutional summons to appear at a deposition in Washington, D.C."  Compl. at ¶ 200.  However, Plaintiff does not allege the date of the summons, whether she  appeared for the deposition, or that any specific Defendant issued this summons.

complaint should be dismissed to that extent.  *See, e.g. Moore v. Motz*, 437 F.Supp.2d at

93 (dismissing non-resident defendants for lack of personal jurisdiction where there were

no allegations that defendants transacted any business in the District of Columbia or that

plaintiff suffered any tortious injury here)).

### D. <u>Doe Defendants Should Be Dismissed</u>

The Court also lacks personal jurisdiction over any federal official Plaintiff claims

to be adding to this action, in the absence of proper service.  Plaintiff's complaint names

Defendants "Does 1 to 25."   Although the use of "Doe" defendants or fictitious

defendants is sometimes used, Defendants are aware of no authority for violating

jurisdictional principles.  *See Molnar v. National Broadcasting Co.*, 231 F.2d 684, 687

(9th Cir. 1987).  While the use of fictitious names is sometimes allowed for privacy

reasons, the general rule is that the complaint must name all parties.  Fed. R. Civ. P.

10(a); *see Breslin v. City and County of Philadelphia*, 92 F.R.D. 764, 765 (E.D. Pa. 1981)

(dismissing Doe defendants because of due process concerns); *Roe v. New York*, 49

F.R.D. 279, 281 (S.D.N.Y. 1970); *but cf.*, *M.K. v. Tenet*, 99 F.Supp.2d 12, 17 (D.D.C.

2000) (plaintiffs given additional thirty days to serve Doe defendants)).  No compelling

privacy reasons exist in this case, and Plaintiff has stated that she plans to name these

other individuals only after discovery.  *See* Compl. ¶ 16.  Accordingly, these "Doe"

Defendants should be dismissed.

## IV.  PLAINTIFF DOES NOT HAVE STANDING TO
## ASSERT OTHER INDIVIDUALS' CLAIMS

In several parts of Plaintiff's complaint, she asserts violations and alleged injuries on behalf of other individuals.  *See* Compl. ¶¶ 42, 43, 49, 54, 55, 57, 65, 133, 134, 144, 145, 147, 150-159.  Simply put, Plaintiff has no standing to bring these claims because, even if true, she cannot be compensated for any alleged injuries to these other individuals. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiff must show that he has suffered an injury in fact–an invasion of a legally protected interest which is concrete and particularized)).  In this case, Plaintiff's complaint contains claims that other individuals' rights have been violated or that they have been injured.  However, these individuals' alleged injuries cannot be addressed by the Court in this case. [12] *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (the alleged concrete injury must be "likely to be redressed by a favorable decision" of the court hearing the matter)).  Accordingly, Plaintiff's claims on behalf of these other individuals must be dismissed. [13]

---

[12] In fact, according to Plaintiff's complaint, these individuals have brought their own actions and are represented by counsel.  *See* Compl. ¶¶ 40, 120, 151.

[13] Additionally, Defendants move to strike these allegations pursuant to Fed. R. Civ. P. 12(f), if the complaint is not dismissed.

## V.  PLAINTIFF HAS FAILED TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED

### A.  Standard of Review

A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim upon which relief can be granted if it does not

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v.*

*Twombly*, — U.S. —, 127 S.Ct. 1955, 1974 (May 21, 2007) (clarifying the traditional

12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  When

evaluating a motion to dismiss for failure to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must treat the complaint's factual

allegations as true and must grant the plaintiff the benefit of all inferences that can be

derived from the facts alleged." *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1113

(D.C. Cir. 2000) (internal quotation marks and citations omitted).  However, the Court

need not accept "inferences drawn by the plaintiff if such inferences are unsupported by

the facts set out in the complaint, nor legal conclusions cast in the form of factual

allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotation

marks and citations omitted).  To survive a motion to dismiss, the factual allegations in

the complaint "must be enough to raise a right to relief above the speculative level." *Bell*

*Atl*., 127 S.Ct. at 1965.

14

**B.  Plaintiff Has Failed to State a Claim**
**For Relief Under 42 U.S.C. § 1985**

Title 42 United States Code, Section 1985 provides for a cause of action against

individuals who engage in a conspiracy to interfere with civil rights.  Plaintiff alleges

violations of all three subsections of this statute.  However, Plaintiff has failed to allege

any facts that support a cause of action under any of the provisions of 42 U.S.C. § 1985.

### 1.  42 U.S.C. § 1985(1)

Title 42, United States Code, Section 1985(1) provides that:

> If two or more persons in any State or Territory conspire to prevent, by
> force, intimidation, or threat, any person from accepting or holding any
> office, trust, or place of confidence under the United States, or from
> discharging any duties thereof; or to induce by like means any officer of the
> United States to leave any State, district, or place, where his duties as an
> officer are required to be performed, or to injure him in his person or
> property on account of his lawful discharge of the duties of his office, or
> while engaged in the lawful discharge thereof, or to injure his property so as
> to molest, interrupt, hinder, or impede him in the discharge of his official
> duties;

Section 1985(1) applies to federal officials in the performance of their duties.

 "To state a cause of action under § 1985(1), a plaintiff must allege and prove a

conspiracy (1) to prevent any person by force, intimidation or threat from holding public

office or (2) injure him in his person or property on account of his lawful discharge of the

duties of his office, or while engaged in the lawful discharge thereof."  *Pope v. Bond*, 641

F.Supp 489 (D.D.C. 1986).  The elements of a civil conspiracy consist of:  "(1) an

agreement between two or more persons; (2) to participate in an unlawful act, or a lawful

15

act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement: (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). Plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim under Section 1985. *See Graves v. United States*, 961 F.Supp. 314, 320 (D.D.C. 1997). A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury. *See Id*. at 321.

Plaintiff was an independent contractor not a federal official. Moreover, even assuming *arguendo* that she was a federal official, Plaintiff fails to allege any facts to suggest a conspiracy and, instead, makes averments based upon "information and belief." *See* Compl. ¶¶ 23, 24, 25, 26, 56, 58, 85, 86, 94, 95, 102, 106, 109, 112, 114, 120, 121. Without more, Plaintiff's claims are purely speculative and conclusory. She constantly alleges a conspiracy, but provides no details as to which Defendants formed an agreement, when the agreement was made, what the agreement entailed, or what acts each Defendant may have taken in furtherance of the agreement. Accordingly, this claim should be dismissed.

## 2. 42 U.S.C. § 1985(2)

In a similar vein, the language of 42 U.S.C. § 1985(2) is inapplicable to the facts as alleged by Plaintiff in her complaint, because this section applies to federal judicial

16

proceedings.  Plaintiff contends that Defendants engaged in a conspiracy to either deter Plaintiff from being a witness in or to retaliate against her for testifying in an administrative proceeding.[14] However, the first clause of this subsection prohibits a conspiracy to deter a party or witness in a *federal court* from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court or influencing or punishing federal jurors.  Section 1985(2) does not apply to testimony given at an administrative hearing.  *See Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758 (5th Cir. 1987); *Morast v. Lance*, 807 F.2d 926, 930 (11th Cir 1987); *Graves v. United States*, 961 F. Supp. 314, 319 (D.D.C. 1997).

Additionally, even assuming *arguendo* that an administrative proceeding were considered a federal proceeding, as a nonparty to the proceeding, Plaintiff does not have standing to bring a claim under section 1985(2), because only a party to the federal proceeding has standing.  *Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1180 (7th Cir. 1989) (witness whose testimony defendants allegedly attempted to influence, but who was not himself a party to the action, did not have standing to bring suit); *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987) (since plaintiff was not a party to the actions in which she was intimidated, she can show no injury under § 1985(2)); *but see Sheffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999) (holding that a witness or juror may be

---

[14] According to her complaint, these administrative proceedings were before the EEOC or the MSPB.  *See* Compl. ¶¶ 122, 124.

a "party" entitled to maintain an action under § 1985(2)); *Brever v. Rockwell International Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (holding that witnesses have standing under § 1985(2)).

Finally, the second clause of  § 1985(2), provides for a cause of action against "two or more persons" who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . . ."  This clause is also inapplicable to the facts alleged in the complaint because it applies to conspiracies to obstruct the course of justice in state courts.  *See Kush v. Rutledge*, 460 U.S. 719 (1983).  Thus, Plaintiff has failed to state a claim against Defendants under Section 1985(2), and these claims should be dismissed.

### 3.  42 U.S.C. § 1985(3)

To state a claim under 42 U.S.C. § 1985(3), Plaintiff must allege the existence of: (1) a conspiracy; (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right of privilege.  *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (section 1983(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others.")).  Plaintiff must also have alleged that there was

18

some racial or class based invidiously discriminatory animus behind the conspirator's

actions. *Id*. at 101-02. "This requirement is to be read narrowly to avoid converting

Section 1985 into general federal tort law." *Bush v. Butler*, 521 F.Supp.2d 63 (D.D.C.

2007) (quoting *McCreary v. Heath*, 2005 WL 3276257, at * 5 (D.D.C. Sept. 26, 2005)).

Instead, Plaintiff's complaint contains only conclusory allegations that there was a

mass conspiracy involving thirteen federal employees. To survive a motion to dismiss, a

plaintiff must set forth more than conclusory allegations of an agreement. *See Brady v.

Livingood*, 360 F.Supp.2d at 104 (*citing Graves v. United States*, 961 F.Supp. 314, 321

(D.D.C. 1997) (dismissing claim where plaintiff merely alleged that his former employer

"colluded" with the Department of Education to keep him underemployed, without

putting forth "any facts showing the existence or establishment of an agreement"); *Estate

of Phillips v. District of Columbia*, 257 F.Supp.2d 69, 83 (D.D.C. 2003), *rev'd in part on

other grounds*, 455 F.3d 397 (D.C. Cir. 2006) (dismissing conspiracy claim where

plaintiffs failed to specify how the defendants "acted in concert"). Furthermore, the

complaint merely parrots the statute by stating that "[D]efendants possessed the necessary

class-based invidiously discriminatory animus," but fails to identify the class to which the

discriminatory animus applies.[15] *See* Compl. ¶ 197.

Finally, an alleged conspiracy to infringe First Amendment rights is not a violation

---

[15] In fact, the 34-page complaint fails to allege Plaintiff's race, color, national
origin, or any other class to which might Plaintiff belong.

19

of § 1985(3), unless the State is involved in the conspiracy or the aim of the conspiracy is to influence the activity of the State. *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825 (1983). Plaintiff's complaint fails to allege any such involvement. For these reasons, Plaintiff has failed to state any claims against Defendants under 42 U.S.C. § 1985(3), for which relief can be granted. Accordingly, these claims should be dismissed.

### C. **Plaintiff's Claims are Barred By the Doctrine of Incorporate Conspiracy**

In any event, Plaintiff's claims under 1985 are barred by the incorporate conspiracy doctrine, which holds that two or more individuals within the same legal entity cannot form a legal conspiracy. *See Michelin v. Jenkins*, 704 F. Supp. 1 (D.D.C. 1989) (finding that Board of Education and its officials comprise a single entity and are thus not capable of entering into a conspiracy under § 1985).

### VI. PLAINTIFF HAS FAILED TO ALLEGE CONSTITUTIONAL VIOLATIONS

For the reasons set forth herein, there is no need for the court to reach the merits of Plaintiff's argument that Defendants' actions somehow violated her constitutional rights. Nevertheless, even if the Court were to address any implied claims, it is clear that they are meritless.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that federal officials can be held liable in their individual capacities for violations of an individual's constitutional rights. However, the

20

Court must first determine whether "[T]aken in the light most favorable to the party asserting the injury, the facts alleged show the [official's] conduct violated a constitutional right?" *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In this case, the complaint generally alleges that Defendants deprived Plaintiff of rights secured by the "First, Fourth, and Fifth Amendments to the United States Constitution." *See* Complaint, ¶ 1. Plaintiff does not articulate the precise theory under which these Defendants might have committed some of these constitutional violations, and in certain instances, despite the most liberal of interpretations, the complaint is devoid of any facts that suggest constitutional violations.

### A.     First Amendment Claim

To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) he [or she] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his [or her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of his [or her] First Amendment right." *Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118 (D.D.C. 2005) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). To assess whether harassment for exercising the right of free speech is actionable, the inquiry must focus on "whether the harassment is [likely] 'to deter a person of ordinary firmness from that exercise.'" *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)). "Where a party can show no change in his behavior, he has

quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d at 73 (citing *Singer v. Fulton County Sheriff*, 63 F.3d 220, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit claiming retaliation for its editorial criticizing police handling of anti-abortion demonstrators, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit)).

Plaintiff alleges that her services were terminated in retaliation for her expected testimony in an administrative hearing.[16] Compl. ¶ 165-166. She claims that this action violated her First Amendment right to protected speech. However, Plaintiff concedes that her termination did not deter her from exercising her right of free speech. In fact, Plaintiff avers that after being told that her contract was being terminated, she "stated to Defendants Jones and Fitzgerald that she is still going to contact Hefferman's attorneys." Compl. ¶ 110(f).

Plaintiff also alleges that her First Amendment rights were violated by false statements made by Defendants. Compl. ¶¶ 121, 124, 186.[17] Yet, Plaintiff fails to allege

---

[16] Plaintiff avers that she was a witness in two administrative matters. Compl. ¶¶ 62-63, 119, 121-122.

[17] Plaintiff contends that all thirteen defendants conspired to create a letter containing false information. Compl. ¶ 121.

22

that she was in any way deterred from exercising her rights subsequent to these alleged false statements. Accordingly, Plaintiff having failed to allege that her First Amendment rights were actually chilled, she has failed to state a claim for which relief can be granted, and such claim should be dismissed.

### B.    Fourth Amendment Claim

Plaintiff alleges that Defendants violated her constitutional rights under the Fourth Amendment. Compl. ¶ 1. To support this general allegation, Plaintiff alleges that she was served with an "unconstitutional summons to appear at a deposition in Washington, D.C." Compl. at ¶ 200. However, it is unclear how the issuance of a summons or a subpoena for a deposition could violate the Fourth Amendment which proscribes unreasonable searches and seizures. Moreover, there are no dates or facts which connect this conduct to any Defendant nor does Plaintiff indicate that she was injured by such conduct.[18] Based upon these facts, Plaintiff has failed to allege a constitutional violation under the Fourth Amendment.

### C.    Fifth Amendment Claim

Plaintiff also alleges a violation of her constitutional rights under the Fifth Amendment. *See* Compl. ¶ 1. Plaintiff asserts that Defendants conspired to deprive her "of property interest in her job and good reputation." Compl. ¶ 112. She alleges that

---

[18] In fact, Plaintiff does not even allege that she appeared for the deposition or was in any way injured by the issuance of this summons.

23

"Defendants' [sic] acted in concert to denied [sic] the plaintiff her due process rights."
Id. at ¶ 203.

However, "[P]roperty interests, of course, are not created by the Constitution.
Rather, they are created and their dimensions are defined by existing rules or
understandings that stem from an independent source such as state law rules or
understandings that secure certain benefits and that support claims of entitlement to those
benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Mathews v.
Eldridge*, 424 U.S. 319 (1976) (holding that recipient of social security disability benefits
not entitled to evidentiary hearing under the Fifth Amendment prior to termination of
benefits); *Bishop v. Wood*, 426 U.S. 341 (1976) (holding that employment-at-will is not
"property" for purposes of Due Process Clause under the Fourteenth Amendment)).  In
this case, Plaintiff was an independent contractor and she had a right to appeal any
alleged breach of contract to the Court of Federal Claims or the Board of Contract
Appeals.  *See* 41 U.S.C. §§ 605-609; 48 C.F.R. pts. 33.211(a)(4)(v) and 33.211(g) (2008).
 If she has failed to avail herself of the process that was due her, she cannot now allege a
deprivation of the Due Process Clause.  Moreover, any alleged injury to her reputation is
not a "liberty" interest recoverable in a *Bivens* action.  *See Siegert v. Gilley*, 500 U.S. 226
(1991); *see also Paul v. Davis*, 424 U.S. 693 (1976) (holding that injury to reputation by

24

itself was not a "liberty" interest protected under the 14th Amendment)).[19]  Accordingly,

having failed to allege a viable constitutional claim under the Fifth Amendment,

Plaintiff's claim should be dismissed.

    **D.  Special Factors Counsel Hesitation**

    In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403

U.S. 388 (1971), the Supreme Court held that federal officials can be held liable in their

individual capacities for violations of an individual's constitutional rights. The Court

implied a cause of action for damages from the Fourth Amendment.  Subsequently, the

Supreme Court extended the *Bivens* rationale in *Davis v. Passman*, 442 U.S. 228 (1979)

(implied cause of action under the Due Process Clause of the Fifth Amendment), and

*Carlson v. Green*, 446 U.S. 14 (1980) (deceased prisoner's Eighth Amendment rights

violated by prison officials)).  In each of these cases, as in *Bivens*, the Court found that

there were no "special factors counseling hesitation in the absence of affirmative action

by Congress," no explicit statutory prohibition against the relief sought, and no exclusive

statutory alternative remedy.  *See Davis v. Passman*, 422 U.S. at 246-247; *Carlson v.*

*Green*, 446 U.S. at 18-20.

    However, in *Bush v. Lucas*, 462 U.S. 367, 389 (1983), the Supreme Court refused

to recognize a former Federal employee's damages action under the First Amendment,

---

[19] The Supreme Court recently held that there is also no Fifth Amendment right to
be free from retaliation.  *See Wilkie v. Robbins*, __U.S. __, 127 S.Ct. 2588 (2007).

noting that Congress was better positioned than the courts to weigh the competing policy

imperatives involved in creating remedies for aggrieved employees. Moreover, since

deciding the earlier cases, the Supreme Court has "responded cautiously to suggestions

that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S.

412, 421, 423 (1988) (refusing to create a *Bivens* remedy for a plaintiff whose Social

Security disability payments were allegedly improperly denied as a result of due process

violations in administration of the program); *United States v. Stanley*, 483 U.S. 669, 681

(1987) (disallowing *Bivens* actions by military personnel "whenever the injury arises out

of activity 'incident to service'"); *Chappell v. Wallace*, 462 U.S. 296 (1983) (refusing to

create a *Bivens* action for enlisted military personnel who alleged that they had been

injured by the unconstitutional actions of their superior officers, despite the fact that they

had no other remedy)). As the Supreme Court has recognized, "[T]he absence of

statutory relief for a constitutional violation, . . . . . does not by any means necessarily

imply that courts should award money damages against the officers responsible for the

violation." *Schweiker v. Chilicky*, 487 U.S. at 421-22.

        The Court in *Schweiker* determined that it would not create a *Bivens* remedy where

the design of the Social Security program suggested that Congress had provided what it

considered adequate remedial mechanisms for constitutional violations that might occur

in the administration of the program. *Id.* at 424-25. In this case, Plaintiff has shown, by

filing separate Privacy Act and Title VII actions, that her First Amendment and Fifth

Amendment claims, if viable, can be redressed under two comprehensive legislative schemes that provide meaningful remedies for the violations alleged in her complaint.[20] Following this reasoning, courts have denied *Bivens* remedies in cases involving claims such as those Plaintiff alleges here. *See Bush v. Lucas,* 462 U.S. 367*; Spagnola v. Mathis,* 859 F.2d 223, 228 (D.C.Cir. 1988) (Title VII)*; Hatfill v. Ashcroft*, 404 F.Supp.2d 104 (Privacy Act).

Accordingly, because there exists no arguable legal bases for Plaintiff's claims for compensatory damages or any other relief against Defendants, these claims should be dismissed.

## VII.  DEFENDANTS ARE ENTITLED TO IMMUNITY

In any event, Defendants, as federal officials, are entitled to qualified immunity with respect to any claims for civil damages that Plaintiff may be seeking to assert against them in their individual capacities.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An official protected by qualified immunity enjoys "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects not

---

[20]  *See* Def. Exhs. O, P.  Plaintiff has also indicated an intent to file an action in the Court of Claims.  *See* Complaint Cover Sheet.

27

only against liability, but from trial and even from discovery.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (explaining that qualified immunity protects officials from "expensive and time consuming preparation to defend the suit on its merits" and from "not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.").  Therefore, immunity should be determined at the earliest stages of litigation.  *Harlow v. Fitzgerald*, 457 U.S. at 818; *see also Crawford-El v. Britton*, 523 U.S. at 598 ("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery.").

If the Court finds that Plaintiff has alleged sufficient facts to show the violation of a constitutional right, the Court must then ask whether the right was clearly established. *Saucier v. Katz*, 533 U.S. at 201.  Plaintiff cannot overcome the qualified immunity defense simply by alleging abstract rights and bare allegations are insufficient to defeat qualified immunity.  *See Anderson v. Creighton*, 483 U.S. 635 (1987); *see also Crawford-El v. Britton*, 523 U.S. 574 (1998).

## Conclusion

For the foregoing reasons, the complaint and all claims therein should be dismissed against all Defendants.

/s/
_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122

28

Assistant United States Attorney

 /s/
_____

JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Room E4905
Washington, D.C. 20530
(202) 514-7250

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that copies of the foregoing Defendants' Motion To Dismiss,

Memorandum in Support, Exhibits, and proposed Order were mailed on this 14th day of

April, 2008, postage pre-paid, to Plaintiff *pro se* at the following address:

Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403


                          /s/
                     JUDITH A. KIDWELL
                     ASSISTANT U.S. ATTORNEY

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____
                                    )
EDAR ROGLER,                        )
                                    )
            Plaintiff *pro se*,      )
                                    )
      v.                            )       Civil Action No. 07-2308 (RMC)
                                    )
WILLIAM BIGLOW, *et al.*,            )
                                    )
            Defendants.             )
_____)

## <u>ORDER</u>

UPON CONSIDERATION OF Defendants' Motion to Dismiss, any Opposition

thereto, and the entire record herein, it is this _____ day of April, 2008,

**ORDERED** that Defendants' motion is **GRANTED**; and it is

**FURTHER ORDERED** that the complaint and all claims against Defendants are

dismissed with prejudice.

                              _____
                              UNITED STATES DISTRICT JUDGE


Copies to:

Defendants' Counsel by ECF

Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDAR Y. ROGLER, J.D.
Plaintiff, *pro se*

v.                                                     Case No. WMN 0 7 CV 1 6 7 5

ATTORNEY WILLIAM BIGLOW,
In His Personal Capacity,

ATTORNEY JULIE LU,
In Her Personal Capacity,

JOHN I. GALLIN, M.D.,
In His Personal Capacity,

MAUREEN GORMLEY. R.N.,                                 JURY TRIAL
In Her Personal Capacity,                              REQUESTED

WALTER L. JONES,
In His Personal Capacity,

HILARY FITILIS, J.D.
In Her Personal Capacity,

Rev. O. RAY FITZGERALD, Ph.D.,
In His Personal Capacity,

Rev. DOMINICK ASHKAR,
In His Personal Capacity,

ANN M. BERGER, MSN, MD,
In Her Personal Capacity,

NYNA KONISHI,
In Her Personal Capacity,

DEBORAH BRITTON,
In Her Personal Capacity,

LAWRENCE SELF,
In His Personal Capacity,

MICHAEL CHEW
In His Personal Capacity.

1

DOES 1 TO 25,                              )
In Their Personal Capacities,             )
                                          )
                                          )
Defendants.                               )
                                          )
_____  )

## COMPLAINT

1. This is an action to redress violations of the First Amendment, Fifth Amendment to
the U.S. Constitution, 42 U.S.C. §1981, intimidation and retaliation against a witness to a
federal proceeding, and other causes deemed just and known to the court.

### PARTIES

2. Plaintiff Edar Y. Rogler, J.D. ("Rogler"), is a citizen of the State of Maryland and
resides at 915 Boucher Avenue, Annapolis, Maryland 21403.

3. Defendant Attorney William A. Biglow ("Biglow") is an attorney in the General Law
Division, Office of General Counsel, Department of Health and Human Services
("DHHS") for the United States of America ("USA"). Biglow denies that he was the
agency representative in any underlying matters, although Biglow actively participated in
the underlying matters. He is being sued in his personal capacity, while acting under the
color of federal authority. His address is c/o OGC/GLD, 200 Independence Avenue,
Room 4749, Washington, District of Columbia ("DC") 20201.

4. Defendant Attorney Julie Lu ("Lu") is an attorney in the General Law Division of the
Office of the General Counsel. Defendant Lu represented the Agency in Rev. Henry
Heffernan's petitions with the Merit System Protection Board ("MSPB") and the Equal
Employment Opportunity Commission ("EEOC"). She is being sued in her personal
capacity, while acting under the color of federal authority. Her addresses are c/o General

2

Law Division, Office of the General Counsel, DHHS, 330 Independence Avenue, S.W., Room 4760, Washington, DC 20201.

5. Defendant John I. Gallin, M.D. ("Gallin") at all pertinent times was and is the Director of The National Institute of Health ("NIH") Warren Grant Magnuson Clinical Center ("CC"), DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, MSC 1504, Bethesda, Maryland 20892.

6. Defendant Maureen Gormley, R.N. ("Gormley") at all pertinent times was and is the Chief Operating Officer ("COO") at NIH CC, DHHS. She is being sued in his personal capacity, while acting under the color of federal authority. Her address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, Bethesda, Maryland 20892.

7. Defendant Walter L. Jones ("Jones") was and is at all pertinent times the Deputy Director for Management Operations in the Office of the Deputy Director for Management Operations ("CC ODDMO") for NIH CC, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o NIH CC, Building 10 Magnuson CC, Room 2C135, MSC 1504, 10 Center Drive, Bethesda, Maryland 20892.

8. Defendant Attorney Hilary Fitilis, J.D. ("Fitilis") is known as a "staff attorney" employed by the Department of Health and Human Services at the National Institutes of Health Clinical Center in what is called "the legal department." It is unknown if Defendant Fitilis is a licensed attorney to practice law in the State of Maryland and/or whether there is a "legal department" officially in NIH. The State Bar of Maryland

3

denies that she is licensed to practice law in Maryland. Her official capacity is Special Assistant to the Chief Operating Officer ("CCO"), Defendant Maureen Gormley. She is being sued in her personal capacity, while acting under color of federal authority. Her address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-3521, MSC 1504, 10 Center Drive, Bethesda, Maryland 20892.

9. Defendant Rev. O. Ray Fitzgerald, Ph.D. ("Fitzgerald") at all pertinent times was the Chief of the Spiritual Ministry Department ("SMD"). He is now a Special Assistant to Defendant Jones. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 7-2525, 10 Center Drive, Bethesda, Maryland 20892.

10. Defendant Dominic Ashkar ("Ashkar") is a Lebanese Maronite Catholic priest, who was a contract chaplain at NIH CC and then was given the permanent chaplain position that was made available when NIH CC wrongfully terminated Heffernan. Ashkar's present status is unknown, but on information and belief he is still employed at NIH CC in the same capacity in the permanent federal civil service position made vacant by the wrongful termination of Heffernan. His address is c/o NIH CC, Building 10, Magnuson CC, Room 14S231, 10 Center Drive, Mail Stop 1952, Bethesda, Maryland 20892.

11. Defendant Ann M. Berger, MSN, MD ("Berger") at all pertinent times was and is the Chief of the Pain and Palliative Care Clinic ("PPCC"). She is being sued in her personal capacity, while acting under the color of federal authority. Her address is c/o 10-CRC-Hatfield CRC, Room 2-1733, 10 Center Drive, Bethesda, Maryland 20892.

12. Defendant Nyna Konishi ("Konishi") at all pertinent times was and is the Administrative Officer ("AO") for Defendants Gallin and Gormley. She was not the

Administrative Officer for the SMD. She is being sued in her personal capacity, while acting under color of federal authority. Her address is c/o NIH CC, Building 10-CRC-Hatfield Research Center, Room 6-3581, 10 Center Drive, MSC 1504, Bethesda, Maryland 20892.

13. Defendant Deborah Britton ("Britton") at all pertinent times was and is the Chief of Simplified Acquisitions. Office of Purchasing and Contracts, at NIH CC. She is being sued in her personal capacity, while acting under color of federal authority. Her address is c/o NIH CC, Building 2DEM-Two Democracy Plaza, Room 106L, 6707 Democracy Blvd, MSC 5480, Bethesda, Maryland.

14. Defendant Lawrence N. Self ("Self") at all pertinent times was and is the Director of the Office of Equal Opportunity and Diversity Management (OEO DM) at NIH, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o OEO DM, 6011 Executive Boulevard, Suite 216, MSC 7653. Rockville, Maryland 20852-7653.

15. Defendant Michael Chew ("Chew") is a Complaint's Officer in the Office of Equal Opportunity and Diversity Management (OEO DM) at NIH, DHHS. He is being sued in his personal capacity, while acting under the color of federal authority. His address is c/o OEO DM, 6011 Executive Boulevard, Suite 216, MSC 7653, Rockville, Maryland 20852-7653.

16. Defendants Does 1 to 25 are people being sued in their personal capacity, while acting under color of federal authority. which will be named after discovery.

5

## JURISDICTION AND VENUE

17. Jurisdiction over this matter is proper under 28 U.S.C. §1331, as Plaintiff asserts claims arising under the laws of the United States.

18. Venue is proper in this district pursuant to the provisions of 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in the District of Maryland.

## STATEMENT OF FACTS

19. From August of 2005 to January of 2006 Plaintiff worked as an associate chaplain for the United States Department of Health and Human Services ("DHHS") at The National Institute of Health Clinical Center ("NIH CC") located at 9000 Rockville Pike, Bethesda, Maryland 20892.

20. NIH is a component of the Public Health Service in DHHS. 42 U.S.C. §§201(a), 202, 203.

21. NIH CC is a federal research hospital housed in two adjacent buildings on the NIH campus:

a.) One building is the 14-story Warren Grant Magnuson Clinical Center, Building 10; and

b.) The other building is the 7-story Mark O. Hatfield Clinical Research Center ("CRC"), which is also called Building 10. (Collectively the two buildings together are called Building 10.)

22. The Mark O. Hatfield CRC has an atrium in the lobby that reaches to the ceiling of the building and comprises an opening rising seven floors.

23. On information and belief Defendants Gallin, Gormley, and Jones authorized, approved, and supervised the architectural design and construction of the Mark O. Hatfield Clinical Research Center ("CRC"), in particular the seven story atrium with open, unimpeded spaces off of each floor which created a seven floor opening.

24. On information and belief Defendants Gallin, Gormley, and Jones authorized and instructed that the psychiatric units of NIH CC be located on the seventh floor of the CRC with the psychiatric patients walking by the open atrium to a seven floor space without proper safeguards to a patient jumping off the seventh floor.

25. On information and belief Defendants Gallin, Gormley, and Jones ordered that the psychiatric units be placed on the seventh floor over the objections of many of the psychiatrists and psychiatric staff.

26. On information and belief Defendants Gallin, Gormley, and Jones believed that the ascetics and looks of the physical premises were more important than the physical welfare of the psychiatric patients hospitalized at NIH CC.

27. Defendants assert that the Plaintiff was an independent contractor not protected by *Title VII of the Civil Rights Act of 1964*, as amended ("Title VII").

28. Defendants assert that the Plaintiff was an independent contractor not protected by the *Whistleblower Protection Act*. (5 U.S.C §1221(e)).

29. Defendants assert that the Plaintiff is not a civil servant employee under 5 U.S.C. §1221(a) meeting the definition of an employee under 5 U.S.C. §2105.

30. Defendants assert that the Plaintiff does not have a statutory remedy for damages Plaintiff incurred by the conduct, activities, and omissions of the Defendants.

7

31. Defendants assert that Plaintiff has no legal rights and no legal recourse against the adverse personnel and other actions they have take against her.

32. Defendants assert that the United States CONSTITUTION does not apply to Plaintiff, because she was employed in a contractual relationship with NIH.

33. Defendant Jones asserts that Jones can do whatever he pleases to Plaintiff without legal recourse.

34. Plaintiff provided chaplaincy services to NIH CC as a part-time associate chaplain in the SMD under the direct supervision of Fitzgerald.

35. Defendant Fitzgerald is under the direct supervision of Defendant Jones, Deputy Director for Management and Diversity.

36. Defendant Jones is under the direct supervision of Defendant Gallin, Director, NIH CC.

37. Dr. Reeve Robert Brenner ("Brenner"), a Jewish Rabbi, was employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Defendant Fitzgerald.

38. Rev. Gary Johnston ("Johnston") at the pertinent time was a chaplain at NIH CC assigned to SMD, but was on military leave being deployed to the Pentagon until February, 2007. On information and belief Johnston retired in February, 2007.

39. Rev. Henry Heffernan ("Heffernan"), a Jesuit Roman Catholic priest, was and is employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Defendant Fitzgerald, as Chief of the Department.

40. Heffernan was and is represented at all pertinent times by Attorneys Irving Kator ("Kator") and Cathy A. Harris ("Harris") of Kator, Parks & Weiser, PLLC.

8

41. Heffernan filed petitions with the Merit System Protection Board ("MSPB"), MSPB No. DC-0752-04-0756-I-1; and the Equal Employment Opportunity Commission ("EEOC"), EEOC Case No. 120-2005-00226X.

42. DHHS, by and through Defendants Gallin, Gormley, Jones, Fitilis, Fitzgerald, and Ashker, discriminated and retaliated against Heffernan and wrongfully terminated Heffernan in violation of Title VII.

43. In February of 2007 both federal panels (the EEOC and MSPB) found that the Agency discriminated against Heffernan and ordered his reinstatement to NIH CC.

44. In March of 2007 Heffernan was reinstated to NIH CC.

45. During August through December of 2005 Defendant Fitzgerald made statements to Plaintiff regarding Defendant Fitzgerald's and NIH CC's reasons for suspending and ultimately terminating Heffernan and discriminatory remarks about Heffernan's being Roman Catholic, and other statements evidencing a motive and intent to violate Heffernan's Title VII protection.

46. Plaintiff never met or spoke directly to Heffernan prior to December 23, 2005.

47. Plaintiff's first contact with Heffernan was a telephone message for Heffernan by and through Rabbi Brenner on or before December 21, 2005.

48. Plaintiff alleges that Defendants have and continue to intimidate and retaliate against her witnesses to the cause of actions contained in the instant complaint.

49. Brenner is represented by Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, PLLC.

9

50. Brenner by and through his attorneys has filed petitions with the MSPB, entitled *Reeve Brenner v. Mike Leavitt*, case no. DC-0752-07-0414-1-1, and the EEO formal complaint, entitled *Reeve Brenner v. Mike Leavitt*, case no. NIHCC-06-0009.

51. Rev. Kathryn Snyder ("Snyder") was a contract chaplain at NIH CC assigned to the SMD until on or about December 1, 2005.

52. The Defendants had renewed Snyder's contract for another year of services from December 1, 2005 to November 30, 2006.

53. The Defendants revoked Snyder's contract for the second year of service from December 1, 2005 to November 30, 2006.

54. Plaintiff alleges that the Agency's revocation of Snyder's contract for services from December 1, 2005 to November 30, 2006 violated Title VII and Snyder's constitutionally protected rights.

55. Plaintiff asserts that Defendant Fitzgerald stated to Plaintiff that Defendant Fitzgerald requested Snyder's contract be terminated, because Defendant Ashkar was moving Snyder's Protestant Bible in the Chapel and not returning it, and Defendant Ashkar objected to Defendant Fitzgerald when Snyder left a note in her Bible that to whom ever was moving her Bible to please put it back when they were done and that Defendant Fitzgerald and Ashkar in a derogatory manner confronted Snyder about said note which is alleged herein to violate Title VII and the U.S. CONSTITUTION.

56. On information and belief Defendant Ashkar wanted his religion's Bible to be the only Bible in the Chapel at NIH CC.

57. Plaintiff alleges on information and belief that Defendant Ashkar conspired with the Defendants to deprive Heffernan of his Title VII protection to have Heffernan wrongfully

terminated to enable Defendant Ashkar to obtain Hefferman's civil service position with
the Agency.

58. On information and belief Defendant Fitzgerald exhibited an exceptional interest in
Byzantine and Eastern Orthodox Christian religions and could be described as a
"groupie" regarding said religions.

   a.) Defendant Fitzgerald attends the Antiochian Orthodox Church Study Program and
       obtains a certificate;

   b.) If Defendant Fitzgerald takes more classes at the University of Balamaand,
       Lebanon (an Orthodox graduate school) he can obtain a Masters of Art degree;

   c.) Defendant Fitzgerald utilizes the services of a Greek Orthodox priest in Los
       Angeles, California. Defendant Fitzgerald calls said priest his "spiritual father."

59. Defendant Fitzgerald stated to Plaintiff that he was going to have his "Byzantine
dream team" with Defendant Ashkar and the Plaintiff being hired in the SMD.

60. However to hire Defendant Ashkar, Defendant Fitzgerald and defendants had to
bring about the termination of Rev. Hefferman's permanent civil service employment.

61. The plan involved with this illegal process to remove Hefferman from his permanent
civil service position and replace him with Defendant Ashkar has been coined "the dream
team scheme."

62. The plaintiff was a witness and had relevant and material testimony for two federal
petitions filed by Rev. Henry Hefferman.

63. The plaintiff at all pertinent times was a witness and had relevant and material
testimony concerning discrimination and retaliation animus by the Agency against
Brenner.

11

64. Brenner was and is a material witness to Plaintiff's causes of action herein.

65. During July of 2005 Heffernan had lost his MSPB complaint and dispositive motions were being heard at the EEOC or its dismissal was being considered.

66. In the summer of 2005 Defendant Fitzgerald finds Plaintiff's email address.

67. Defendant Fitzgerald emails Plaintiff and states that he is interest in Plaintiff becoming a student in the clinical pastoral educational program at NIH CC, approved and certified by The Association for Clinical Pastoral Education, Inc. (ACPE).

68. In the summer of 2005 Plaintiff emails Defendant Fitzgerald in response stating she has been accepted into another Clinical Pastoral Education ("CPE") program.

69. Plaintiff asserts that in August of 2005 Defendant Fitzgerald invited Plaintiff out to dinner at a restaurant, The American Grill, in a hotel, The Bethesda Marriot Hotel near NIH CC allegedly to interview her for employment at NIH CC to work a week or two in August of 2005.

70. Defendant Fitzgerald and Plaintiff met and had dinner, wherein:

    a.) Fitzgerald offered her a job performing substitute work at NIH CC;

    b.) Plaintiff accepted said offer;

    c.) No written contract was written or executed; and

    d.) An oral contract was established.

71. On or about August 16 to 19, 2005 Plaintiff works at NIH CC. During this time Defendant Fitzgerald makes remarks about his unlawfully disciplining and terminating Heffernan. Defendant Fitzgerald additionally makes anti-Semitic remarks about Brenner and discloses adverse employment action Defendant Fitzgerald has taken against Brenner because he is a Jew.

12

72. From late August to mid-November of 2005 Plaintiff was a federal employee at the Dayton Veteran's Administration Medical Center (VAMC).

73. In the fall of 2005 Defendant Fitzgerald made arrangements for Plaintiff to substitute on her Christmas vacation.

74. In the fall of 2005 Defendant Fitzgerald then recruited Plaintiff to resign from her job at VAMC and take a job with NIH CC as a part-time associate chaplain.

75. In the fall of 2005 Defendant Fitzgerald insisted that Plaintiff had to meet him in Boston, Massachusetts for an interview for said job.

76. On or about October 28 to 29, 2005 Plaintiff met Defendant Fitzgerald in Boston and attended an Orthodox Christian Association of Medicine, Psychology, and Religion (OCAMPR) conference, but now Defendant Fitzgerald stated to Plaintiff that no interview was necessary because Plaintiff already had the job.

77. On or about November 16, 2005 Plaintiff returns to work at NIH CC working part-time as an associate chaplain for at least twenty (20) hours per week.

78. No contract was ever written or executed by the plaintiff and the Agency, DHHS. NIH CC deposited Plaintiff's paycheck into her personal checking account by direct-deposit.

79. Plaintiff was given keys to the Spiritual Ministry Department ("SMD"), which was located in Room 14S231, on the 14th floor of the Warren Grant Magnuson Clinical Center.

80.Defendant Fitzgerald assigned Plaintiff to video storage closet, Room 7-254, at all pertinent times was then called "Copier Room" on the seventh floor Mark O. Hatfield

13

Clinical Research Center, instead of in the SMD in Room 14S231 in the South Tower, called by Warren Grant Magnuson Clinical Center.

    a.) Room 7-254 did not have a desk, chairs, or a computer in it.

    b.) It had a large video storage unit stored in it, which took up most of the room.

    c.) The ceiling panels were hanging down with electrical wires hanging down
        from the exposed area.

    d.) The room has been changed since Plaintiff's termination.

81. Defendant Fitzgerald telephones Plaintiff repeatedly when she is off duty and gives her work assignments.

82. Defendant Fitzgerald micro-manages Plaintiff's work.

83. Defendant Fitzgerald controls substantially all aspects of Plaintiff's work.

84. In December of 2006 Defendant Ashkar delivered a monologue to Plaintiff that the rabbi's position at NIH CC should be eliminated and other anti-Semitic statements.

85. On information and belief Defendant Ashkar openly prays during public services for the conversion of the Jews to his religion.

86. On information and belief from on or about December 06, 2005 to December 12, 2005 Defendant Fitzgerald is on leave and for some of the time is attending a conference in California. Defendant Fitzgerald instructs Defendant Ashkar to be in charge of the SMD during Defendant Fitzgerald's absence and for Defendant Ashkar to carry the Protestant pager.

87. On or about December 9, 2005 Defendant Ashkar is in charge of the SMD, NIH CC, DHHS due to the absence of Defendant Fitzgerald and Fitzgerald's appointment of Askhar as being in charge of the SMD.

14

88. On or about December 9, 2005 Defendant Ashkar came to work late, left work early, and worked less than three hours.

89. On or about December 9, 2005 Defendant Ashkar left work early to perform a Mass Ceremony at a church in Virginia, while he was designated to be on call for emergencies at NIH CC.

90. A patient committed suicide by climbing over the retaining wall and jumping off seventh floor and falling through the Atrium of the CRC in Building 10 at NIH CC on or about December 9, 2005.

91. On or about December 9, 2005 the Plaintiff telephoned Defendant Ashkar that his presence was urgently needed at NIH CC due to the death of a patient, and other patients and staff being upset.

> a.) Plaintiff stated to Defendant Ashkar that all Heads of Departments were being called to the seventh floor beside the Atrium of the CRC.
>
> b.) Defendant Ashkar refused to return to NIH CC stating that he was in Virginia and going to perform a mass.

92. On December 9, 2005 after the patient committed suicide and Defendant Ashkar refused to return to NIH CC, Plaintiff Rogler telephoned Defendant Fitzgerald who was at a conference in California. In response Defendant Fitzgerald stated that he had to attend the conference and hung up on her.

93. Plaintiff was a witness to the aftermath of a patient suicide at NIH CC on or about December 9, 2005, to the alleged improper handling of the incident by Defendants Fitzgerald and Ashkar, and Defendant Ashkar's appearance of working two different jobs concurrently.

15

94. On information and belief Defendant Ashkar was working concurrently at NIH CC and a Maronite Church in Virginia during the time period that he had a written contract to work as a chaplain for NIH CC.

95. On information and belief Defendant Ashkar would submit monthly time sheets alleging to have worked at NIH CC, when in fact Defendant Ashkar was not on the NIH CC premises.

96. On or about December 12, 2005 Plaintiff met with Laura Chisholm ("Chisholm"), Service Chief, NIH CC. Chisholm helps Plaintiff prepare a memorandum for Defendant Fitzgerald and sends Plaintiff to be seen by a counselor in the Employee Assistance Program ("EAP").

97. Plaintiff objected to alleged discrimination to Laura Chisholm (Chisholm), Service Chief, Defendants Gormley, and Jones.

98. In December of 2005 Defendant Fitzgerald states to Plaintiff that there is a plan called "clean sweep" that had been approved by all his chain of command "all the way up" to retaliate against all witnesses in the *Heffernan* matter who cooperated with the complainant.

  a. The plan was to terminate Kelley and Brenner one at a time.

  b. Chaplain Johnston was going to be pressured into retiring in February of 2006.

99. On or about December 18, 2005 (Sunday) Defendant Fitzgerald telephones the Plaintiff.

  a. Plaintiff returns Fitzgerald's call the same day.

16

> b. Defendant Fitzgerald threatens Plaintiff with termination if she does
> not become his CPE student.

100. On or about December 18, 2005 Plaintiff emails Defendant Gormley.

101. On or about December 19, 2005 at 7:45 a.m. Defendant Gormley emails Defendant Jones with a copy to Defendant Gallin, stating: "Walter, See below. Follow up needed here. Maureen and forwards Plaintiff's email to Defendant Gormley to Defendant Jones.

102. On information and belief on or about December 20, 2005 Defendant Fitzgerald instructs Dana Kelley to give Plaintiff an office in the SMD in the Tower.

103. On or about December 20. 2005 Dana Kelley gives Plaintiff an office with a computer in the SMD in the South Tower.

104. On or about December 21, 2005 Plaintiff meets with Brenner and discusses that she is a witness to statements made by Defendant Fitzgerald that are relevant to the *Heffernan* EEOC hearing. Brenner has a telephone conversation with Rev. Heffernan in Plaintiff's presence.

105. On or about December 22, 2005 at 11:22 a.m. Defendant Jones emails Plaintiff at the wrong email address. Defendant Jones' email states: "Hello Deborah, I am have received a copy of your email to Maureen Gormley. Please contact me at your to schedule a time to discuss your concerns. My number is 301-496-327. Thanks. Walter."

106. On information and belief on December 22, 2005 Defendant Jones asks Kelley to have Plaintiff telephone Defendant Jones.

107. On December 22, 2005 Kelley instruct Plaintiff to telephone Defendant Jones to schedule a meeting between Plaintiff and Defendant Jones.

17

108. On December 22, 2005 Defendant Jones and Plaintiff meet.

    a. Defendant Jones encourages Plaintiff to discuss her concerns with Defendant Jones during said meeting.

    b. Plaintiff discusses Fitzgerald's communications to Plaintiff that the EEOC found to violated Title VII, her concerns about Defendant Ashkar working to jobs at the same time, her own problems with Fitzgerald's discrimination against plaintiff, Fitzgerald's discrimination against Brenner that she would testify for Heffernan, and other concerns. Plaintiff's speech was constitutionally protected speech.

    c. Defendant Jones states to Plaintiff that Defendant Fitzgerald's conduct is "wrong" and states that Defendant Jones will schedule a meeting with Defendant Fitzgerald the next day (December 23, 2005) and that Plaintiff is not to talk with Defendant Fitzgerald until after Defendant Jones meets with Defendant Fitzgerald.

109. On information and belief on December 23, 2005 Defendants Jones and Fitzgerald meet to discuss Plaintiff's concerns.

110. On December 23. 2005 Defendant Jones has Defendant Fitzgerald and Plaintiff meet with Defendant Jones.

    a. Defendant Jones states to Plaintiff that Defendant Jones "has good news and bad news" for Plaintiff. Defendant Jones states to Plaintiff that NIH is a big family and they have worked with each other for years and that he will not take the time to sort out the confusion.

18

b. Defendant Jones states to Plaintiff that Defendant Jones is terminating Plaintiff's alleged "contract without cause."

c. Defendant Jones states to Plaintiff that Plaintiff has no legal rights and that Defendant Jones can do "whatever he wants" to Plaintiff.

d. Defendant Jones states to Plaintiff that NIH and Defendant Jones personally will give Plaintiff a "good reference" if Plaintiff "lets by-gones be by-gones" and "not tell anyone what [Plaintiff] has seen and heard at NIH."

e. Plaintiff considered this to be a threat and an attempt to intimidate her as a witness to discrimination and retaliation.

f. Plaintiff stated to Defendants Jones and Fitzgerald that she is still going to contact Heffernan's attorneys.

111. On December 28, 2005 Plaintiff telephoned Angela Kinney ("Kinney"), the Administrative Officer for SMD and explains that Defendant Jones had stated to her that she was terminated.

g. Kinney stated to Plaintiff that Defendant Jones did not have the power or authority to terminate Plaintiff's service without Kinney conducting an investigation and agreeing with the termination.

h. Kinney promised Plaintiff that she was going to conduct an investigation of said matter and to call back later and come to her office.

112. On information and belief the Defendants participated in a conspiracy to deprive the Plaintiff of property interest in her job and good reputation by removing Plaintiff's

19

Administrative Officer Kinney from investigating Defendants Jones' and Fitzgerald's
actions and omissions.

113. Later on December 28, 2005 Plaintiff telephoned Kinney, wherein Kinney stated to
Plaintiff that Defendant Gallin had removed her from investigating said matter and had
replaced Kinney with Gallin's Administrative Officer, Defendant Nyna Konishi and for
Plaintiff to come to Kinney's office to meet with Defendant Konishi.

114. On information and belief the Defendants participated in a conspiracy to what is
commonly known as rubber-stamping the decisions of Defendants Jones' and Fitzgerald.

115. Later on December 28, 2005 before 4:16 p.m. Plaintiff went to Kinney's office.
Kinney was in her office and Defendant Konishi came to the outer office.

    a.  Plaintiff and Defendant Konishi met in the outer office.

    b.  Defendant Konishi stated to Plaintiff that there would be no investigation
       of her termination and that Defendant Konishi was going to just sign off
       on it.

    c.  Defendant Konishi stated to Plaintiff that Plaintiff was terminated for the
       convenience of the government without cause and would get a neutral
       reference.

    d.  Defendant Konishi provided Plaintiff with a copy of the "Order For
       Supplies Or Services" ("PO") and Konishi underlined "52.249-1
       Termination for Convenience of the Government (Fixed Price) (Short
       Form) (Apri 1984).

    e.  Plaintiff never executed said contract.

f.  Defendant Konishi states to Plaintiff that Plaintiff has no legal rights.
    Plaintiff states to Defendant Konishi that Plaintiff has already contacted
    Heffernan.

g.  Defendant Konishi instructs Plaintiff to give to Konishi the badge and
    keys that were assigned to Plaintiff and in her possession.

h.  Plaintiff turns over her badge and keys to Konishi.

116.  On December 28, 2005 at 4:16 p.m. Defendant Konishi emailed Defendant Jones
that "Ms. Rogler visited Angela and I just a moment ago and I was able to pull the terms
and conditions of her Purchase Order that states under FAR 52.249-2 that the
Government can Terminate for the Convenience of the Government (dated Apr 1984)."
This is the clause of the contract, which does not require a reason to terminate a
contractor.

117.  On information and belief Defendant Konishi failed to conduct an adequate
investigation into the grounds for the Plaintiff's termination, participated in a conspiracy
to deprive the Plaintiff of her position, and signed Plaintiff's termination papers to
retaliate against plaintiff in violation of the US CONSTITUTION.

118.  On December 30, 2005 at 12:47 p.m. Defendant Konishi emails Defendant Jones
referring to the Plaintiff, stating: "Good Afternoon- I need ASAP the reason for her
termination. It needs to go into the termination letter and into the records. Thanks"

119.  Plaintiff was named and called as a witness in *Rev. Henry Heffernan v. Mike
Leavitt, DHHS (NIH CC)*, EEOC Case No. 120-2005-00226X ("*Heffernan*").

120.  On information and belief on January 4, 2006 Heffernan's counsel, Attorney Cathy
A. Harris, contacted the Agency's counsel, Defendant Lu, and informed her that

21

Hefferman was filing his "Complainant's Motion to Call Edar Rogler as a Witness" and "to ascertain her position on this motion." Complainant filed said motion moving to call Rogler as "a potential impeachment witness to the expected testimony of Defendant Fitzgerald. On information and belief Attorney Harris served Defendant Lu a copy by facsimile on January 4, 2006.

121. On information and belief in violation of Plaintiff's constitutional rights and privacy rights, the defendants in conspiracy falsely created a letter to Plaintiff from Defendant Britton regarding "Purchase Order 269-MM-602634 entitled 'Pastoral Care/Consulting Counseling Services to Patients and Families'" dated January 5, 2005. Said letter falsely stated that the Plaintiff's alleged "contract" was terminated, because "concerns were raised by Pain and Palliative Care Leadership based on the performance by the contractor in the services being provided to their patients. Plaintiff asserts that said letter is false. The factual basis for this allegation is as follows:

- a.) The timing of letter of termination in relationship to Plaintiff's email to Defendant Gormley, communications with Defendant Jones and Fitzgerald, and Hefferman's Motion submitted to the EEOC naming Plaintiff as a witness;

- b.) Plaintiff was not assigned to perform services in the Pain and Palliative Care Clinic (PPCC);

- c.) Plaintiff had been to the PPCC twice briefly in mid-November to temporarily substitute until Defendant Fitzgerald arrived late;

- d.) for six weeks there was no mention of concern regarding Plaintiff extremely brief substitute service in PPCC;

22

e.)   no one wrote a written complaint or completed a point of contact form
      with a patient complaint alleging inadequate services;

f.)   said letter is the first mention of concerns regarding Plaintiff's brief,
      temporary visit to PPCC;

g.)   the Plaintiff has never met the PPCC leadership;

h.)   Administrative Officer Kinney was prohibited from investigating
      Defendant Jones' request to terminate Plaintiff;

i.)   Defendant Konishi failed to perform any investigation into the
      Plaintiff's termination before Defendant Konishi approved it;

j.)   Defendant Britton failed to perform any investigation into the
      Plaintiff's termination before Defendant Britton approve it;

k.)   Defendant Fitilis removed the Plaintiff's records from Defendant
      Britton's office and instructed Defendant Britton not to conduct an
      investigation into the Plaintiff's termination;

l.)   Defendants had a planned called "Operation Clean Sweep" to retaliate
      against witnesses to Heffernan's allegations of discrimination and
      reprisal by wrongfully terminating the witnesses or pressuring them
      into retiring and

m.)   other reasons that will be investigated during discovery.

Plaintiff's testimony in the *Heffernan* matter was constitutionally and federally protected
speech.

122. Plaintiff is a witness in two matters pending in *Rabbi Reeve Brenner v. Mike
Leavitt, DHHS (NIH CC)*, MSPB, case no. DC-0752-07-0414-1-1 and EEO formal

23

complaint entitled *Reeve Brenner v. Mike Leavitt*, case no. NIH CC-06-0009

("*Brenner*"). Plaintiff's testimony in the *Brenner* matter is constitutionally and federally protected speech.

123. Said complaint in the *Rogler* matter was dismissed for lack of jurisdiction and was not decided on the merits of the complaint.   Plaintiff's communications were constitutionally protected speech.

124. Plaintiff alleges that said letter of January 5, 2005 was falsely created to be unlawfully presented in the EEOC matter of *Heffernan* (Case No. 120-2005-002226X) to adversely influencing the decision of Administrative Judge David Norken ("AJ Norken") in his decision on whether to accept the addition of the Plaintiff as a witness.

125. Plaintiff alleges said letter was created with malicious intent to intimidate Plaintiff from being a witness and to unlawfully retaliate against the Plaintiff by publicly humiliating her for coming forward as a witness in said matter.

126. Plaintiff alleges said letter was created without an adequate investigation and was written with the intent to deprive the Plaintiff of future employment opportunities.

127. Plaintiff alleges said letter was created without an adequate investigation and was written with the intent to deprive the Plaintiff of future employment opportunities in furtherance of Operation Clean Sweep.

128. The Defendants, by and through Defendant Lu, filed said letter with the EEOC, Baltimore District Office before Plaintiff had received said letter, thereby, denying her the opportunity to object to the unlawful disclosure of the falsely created document. Said letter was then mailed by overnight express to the Plaintiff.

24

129. On January 5, 2006 the Agency filed its *Opposition to Complainant's Motion to Call Edar Rogler as a Witness*. Said opposition stated, "[t]he Agency offered Ms. Rogler two weeks severance pay and a neutral reference."

130. On January 6, 2006 the Agency wrote to Heffernan's counsel a letter dated January 6, 2006 proposing that the Agency's termination letter dated January 5, 2005 to Rogler would be used as evidence in the Heffernan hearing and attached a copy of the Plaintiff's termination letter. The Agency's letter of termination of Plaintiff's services was falsely created and delivered to the EEOC before it was delivered to the Plaintiff. Plaintiff was not given an opportunity to object to said letter's publication and release to the EEOC. 131. The EEOC ruled that said letter was irrelevant, immaterial and inadmissible in the EEOC matter. This disclosure of said letter violated Plaintiff's right to privacy pursuant to the Privacy Act, 5 U.S.C. § 552a *et seq.*.

132. In January of 2006 Brenner was called to testify at the Heffernan matter. Brenner's testimony was constitutionally protected speech and protected by *Title VII of the Civil Rights Act of 1964*, as amended, ("Title VII").

133. At the time Brenner testified in the *Heffernan* matter, he had a clean personnel record and satisfactory work performance.

134. After Brenner testified in the *Heffernan* matter, he was allegedly unlawfully suspended and wrongfully terminated from employment at NIH CC.

135. Additionally Brenner is a witness to discrimination and retaliation and constitutional violations committed by the Defendants against the Plaintiff.

25

136. Plaintiff filed her own EEOC complaint entitled *Edar Rogler v. Mike Leavitt,
DHHS (NIH CC)*, Request No. 0520070128, Appeal No. 01A63657, Agency No.
NIHCC-06-0008 ("*Rogler*").

137. On or about Defendant Britton stated to Plaintiff that she was going to conduct a
thorough investigation into the termination of Plaintiff's alleged "contract."

138. On information and belief Defendant Fitilis obstructed the investigation that
Defendant Britton was going to conduct by asserting that she was staff attorney for NIH
CC and to turn all of Plaintiff's records over to Defendant Fitilis and the NIH "Legal
Department." Defendant Britton stated to Plaintiff that the NIH CC "legal department"
had instructed her to turn over all of her records on Plaintiff and not to conduct an
independent investigation into the termination of Plaintiff's services.

139. On or about Plaintiff emailed Defendant Britton and asked Defendant to give
Plaintiff the name of the relevant "TOC" and "auditor."

140. On or about Defendant Britton emailed Defendant Fitilis to get instructions on
whether or not Defendant Britton should give Plaintiff the name of the relevant "TOC"
and "auditor."

141. On information and belief Defendants Fitilis and Biglow obstructed and intervened
by instructing Defendant Britton not to provide the Plaintiff with the requested
information.

142. On or about Defendant Britton emailed the Plaintiff writing for Plaintiff to contact
Defendant Biglow.

26

143. On information and belief Defendant Gallin ordered Defendant Fitilis to settle the discrimination informal complaints filed by Plaintiff and Rabbi Brenner with the OEO DM.

144. On or about June 5, 2006 Rabbi Brenner filed his formal complaint alleging discrimination and retaliation under Title VII with the OEO DM.

145. On or about June 6, 2006 Defendants Biglow and Fitilis were in an agreement, a so-called "in the loop" to conspire against Rabbi Brenner's and the Plaintiff's constitutionally protected rights.

146. On or about June 6, 2006 Defendant Fitilis emailed Defendant Biglow to keep him in "the loop" on Plaintiff's activities.

147. On information and belief all of the defendants are in the loop to conspire against Rev. Heffernan, Rabbi Brenner, and the Plaintiff to deprive them of their constitutionally protected rights.

148. During the week of June 6, 2006 Defendants Biglow and Fitilis were in communication with Victor Canino ("Canino"), Complaints Officer, OEO DM who was managing the informal complaints of Plaintiff and Rabbi Brenner.

149. Defendants Biglow and Fitilis were schedule to meet with Canino on or about June 7, 2006.

150. On or about June 7, 2006 on information and belief Defendant Fitilis asked Canino to find out "how low" Rabbi Brenner "will go" to settle his complaint and resign from his position at NIH CC.

27

151. On information and belief Rabbi Brenner's counsel, Attorney Kator telephoned Defendant Biglow and stated that it would take a lot of money to settle Rabbi Brenner's complaint and that Rabbi Brenner was unwilling to resign.

152. On information and belief the Agency was unwilling and remains unwilling to settle Rabbi Brenner's discrimination complaint.

153. On information and belief during the week of Yom Kippur about October 2nd to 4th, of 2006, Defendant Fitilis confronted Rabbi Brenner in the Chapel of the CRC on the 7th Floor in Building 10 and falsely alleged that she was a Jew as defined by the Jewish religion and seeking spiritual communication with the rabbi. Plaintiff alleges that the conversation that ensued between Defendant Fitilis and Rabbi Brenner that was protected speech under the U.S. CONSTITUTION and Title VII.

154. On or about October 4th, 2006 Defendant Jones brought Rabbi Brenner up on disciplinary charges resulting in Rabbi Brenner being on administrative leave for approximately five (5) months.

155. One major charge against Rabbi Brenner concerned the conversation between Defendant Fitilis and Rabbi Brenner in the Chapel on Yom Kippur when Defendant Fitilis alleged that she was a Jew as defined by the Jewish religion.

156. On information and belief Defendant Fitilis is not a Jew as defined by the Jewish religion and rabbinical law.

157. Additionally Defendant Fitilis was working in a secular job on Yom Kippur in violation of the tenets of the Jewish religion.

158. Plaintiff alleges that Defendant Fitilis deliberately and/or incompetently confront Rabbi Brenner on or about Yom Kippur in the NIH CC's chapel to provoke an argument

28

to support false disciplinary charges against Rabbi Brenner to procure the rabbi's

wrongful termination in violation of Title VII.

159.  Plaintiff alleges that Defendant Fitilis was acting in concert with the other

defendants to bring to completion Operation Clean Sweep in regards to Rabbi Brenner's

employment at NIH CC in violation of Title VII.

160.  In January/February of 2007 the EEOC issued its decision and order in the

*Heffernan* matter ordering that the Agency had discriminated and retaliated against Rev.

Heffernan and ordered the Agency to reinstated Rev. Heffernan.

## COUNT I
### (First Amendment Violations)
### (Freedom of Speech)

161.  Plaintiffs realleges paragraphs 1 through 160 as if fully set forth herein.

162.  Plaintiff enjoys the rights of freedom of expression as guaranteed by the First
Amendment to the United States Constitution.

163.  The First Amendment guarantees Plaintiff of her right to speak freely, including the
right to testify at an EEOC hearing on a discrimination matter, to criticize NIH CC and its
governmental officials and employees and to file her own discrimination complaint with
the OEO DM.

164.  Plaintiff's speech was protected speech.

165.  Defendants, acting under color of federal authority, violated Plaintiff's First
Amendment rights by retaliating against Plaintiff for coming forward as a witness in the
*Heffernan* matter and by attempting to prevent Plaintiff from continuing to exercise her
First Amendment rights.

166.  The Defendants' retaliatory action adversely affected Plaintiff's constitutionally
protected speech.

167.  A causal relationship existed between Plaintiff's speech and the Defendants'
retaliatory action.

168.  Defendants were not performing a discretionary function.

29

169. Defendants' conduct violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

170. A reasonably competent public official knows or should know that intimidation of a witness is clearly a prohibited unlawful activity.

171. Retaliation against speech on issues of public concern is clearly prohibited.

172. The Defendants' conduct was plainly incompetent and/or knowingly violating Plaintiff's constitutional rights.

173. Examples of facts supporting improper motive are as following (but not limited to the following):

    a.) Plaintiff presence and existence was concealed from Revs. Heffernan and Brenner by Defendant Fitzgerald by such actions as designating Plaintiff's office to be in a video storage closet, Room 7-254, called "Copier Room" on the seventh floor CRC instead of in the SMD in the South Tower, Warren Grant Magnuson Clinical Center, in Building 10. Said room 7-254 has been changed since Plaintiff's termination;

    b.) Plaintiff was prohibited from going into the SMD, Room 14s231, 14th floor in the South Tower, Warren Grant Magnuson Clinical Center, Building 10 when Rabbi Brenner was present in the SMD and/or on duty at the NIH CC;

    c.) Defendant Fitzgerald's dissertation to Plaintiff on the Defendants' operation clean sweep was an intimidation speech to intimidate Plaintiff from coming forward as a witness to discrimination and retaliation by the Defendants against Revs. Heffernan and Brenner;

    d.) Defendant Fitzgerald asked Plaintiff not to tell anyone what he had told her;

    e.) On information and belief Defendant Fitzgerald instructed Rabbi Reeve Brenner to falsely state under oath at the *Heffernan* hearing that he had no recollection when he clearly remembered;

    f.) Defendant Fitzgerald's offer to Plaintiff of a position as an ACPE CPE student with a level II promotion;

    g.) The timing of the events raises an inference of retaliatory motive. Defendant Jones commenced termination procedure within twenty-four (24) hours of learning that Plaintiff had come forward as a witness in the *Heffernan* matter and had other protected speech to Defendant Gormley;

    h.) Lack of evidence of poor work performance;

    i.) Lack of evidence of anyone objecting to Plaintiff's work performance prior to Plaintiff's protected speech;

    j.) Defendant Jones offered Plaintiff a good recommendation if she did not tell anyone anything that she had seen or heard at NIH;

    k.) Management officials removed Administrative Officer Angela Kinney when she stated that she would conduct a thorough investigation of Defendant Jones' desire to terminate Plaintiff;

30

l.) The replacement of Administrative Officer Kinney with Defendant Konishi the Administrative Officer for Defendant Gallin in the Office of the Director.

m.) The approval of Plaintiff's termination by Defendant Konishi (without Konishi knowing the reason for Plaintiff's termination);

n.) Defendant Britton's writing of the letter to Plaintiff notifying her of the termination of her alleged contract without an adequate investigation and based upon false allegations;

o.) Defendants' transmission of said letter to Defendant Lu without notifying the Plaintiff and without providing the Plaintiff with any opportunity to object to the unlawful disclosure of said letter;

p.) Defendant Lu's submission of said letter (which was inadmissible) to AJ Norken without any notice to Plaintiff and without any opportunity for Plaintiff to object to the unlawful submission;

q.) Defendant Fitilis removal of the Plaintiff's records from Defendant Britton's office when Defendant Britton was going to perform an investigation;

r.) Finding and Opinions of the MSPB and EEOC in the *Heffernan* matter;

s.) Defendants being in "the loop" and applying unlawful pressure on the OEO DM during the investigative period for Plaintiff's and Brenner's discrimination and retaliation informal and formal complaints;

t.) and other facts that will be investigated during discovery.

174. The Defendants are not entitled to qualified immunity.

175. Defendants retaliated against Plaintiff and attempted to prevent her from exercising his First Amendment rights by unlawfully terminating Plaintiff's services, falsely alleging that she was terminated for the leadership of PPCC concerns over the quality of her work, and falsely creating a Notice of Termination to wrongfully submit in *Heffernan* matter without Plaintiff's knowledge or consent and to threaten Plaintiff with bad recommendations to future employers.

176. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of his constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

177. As a direct and proximate result of the violation of his constitutional rights, Plaintiff suffered substantial damages.

## COUNT I
### (First Amendment Violations)
### (Freedom of Religion)

178. Plaintiffs realleges paragraphs 1 through 160 as if fully set forth herein.

179. The EEOC and MSPB found that the Agency discriminated and retaliated against Rev. Heffernan. Said decisions and orders are finally adjudicated.

31

## COUNT III
(Fifth Amendment Violations)
(Equal Protection)

180. Plaintiff realleges paragraphs 1 through 160 as if fully set forth herein.

## COUNT III
(Fifth Amendment Violations)
(Due Process)

181. Plaintiff realleges paragraphs 1 through 160 as if fully set forth herein.

182. The Defendants denied the plaintiff to her constitutionally protected right to due process.

WHEREFORE, Plaintiff Rogler demands judgment be entered against Defendants, jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs and such other relief as the Court deems just and proper.

**Plaintiff demands trial by jury on all issues so triable.**

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 06/26/07

EDAR ROGLER, Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland 21403
(443) 852-6553
no fax number
edar_rogler@yahoo.com

32

**EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDAR ROGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.1:07-cv-02308 |
| | ) | |
| William Biglow, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF
## Lawrence N. Self

I, Lawrence N. Self, pursuant to 28 U.S.C. § **1746**, hereby declare the following:

1.    I currently am the Director, Office of Equal Opportunity and Diversity Management, employed with the National Institutes of Health, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.    My permanent place of residence is Martinsburg, West Virginia, and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at [City, State], this ___9___ day of ___April___, 2008.

Lawrence N. Self

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EDAR ROGLER,           )
                           )
       Plaintiff,         )
                           )
   v.                    )    Civil Action No.1:07-cv-02308
                           )
William Biglow, et al.,     )
                           )
       Defendants.     )
                           )

**DECLARATION OF
Dominic Ashkar**

    I, Dominic Ashkar, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I currently am Chaplain, Spiritual Ministry Department – NIH Clinical Center, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

    2.    My permanent place of residence is in Washington, DC, and I resided at that location at the time this legal action was filed.

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, Maryland, this _7th_ day of _April_ , 2008.

                                      _D. Ashkar_
                            Dominic Ashkar

**EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,             )
                             )
      Plaintiff,          )
                             )
   v.                   )   Civil Action No.1:07-cv-02308
                             )
William Biglow, et al.,      )
                             )
      Defendants.     )
                             )

## DECLARATION OF
### Ann Berger

I, Ann Berger, pursuant to 28 U.S.C. ' 1746, hereby declare the following:

1.    I currently am Chief of Pain and Palliative Care, National Institutes of Health, Clinical Center, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.    My permanent place of residence is in Darnestown, Maryland and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. ' 1746. Dated at Bethesda, maryland, this _8th_____ day of _April_____, 2008.


_____Ann Berger_____
Ann Berger

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                            )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )    Civil Action No.1:07-cv-02308
                                        )
William Biglow, et al.,                 )
                                        )
        Defendants.                     )
_____ )

DECLARATION OF
WILLIAM A. BIGLOW

        I, WILLIAM A. BIGLOW, pursuant to 28 U.S.C. § 1746, hereby declare the

following:

        1.      I currently am an attorney in the General Law Division, Office of the

General Counsel, U.S. Department of Health and Human Services, and have

occupied that position at all times relevant to the above-captioned case.

        2.      My permanent place of residence is not currently in Washington, D.C.,

nor was it in Washington, D.C., at the time this legal action was filed.

        I declare under penalty of perjury that the foregoing is true and correct.

28 U.S.C. § 1746. Dated at Washington, D.C., this _7_$^{7h}$_ day of April, 2008.

_____
William A. Biglow

**EXHIBIT F**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EDAR ROGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.1:07-cv-02308 |
| | ) | |
| William Biglow, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF
## DEBORAH BRITTON

I, DEBORAH BRITTON, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1.  I currently am SUPERVISORY BRANCH CHIEF, OFFICE OF PURCHASING AND CONTRACTS/CC U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.  My permanent place of residence is in [COLUMBIA, MARYLAND], and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at [COLUMBIA, MARYLAND], this 7 day of APRIL, 2008.

*Deborah Britton*

DEBORAH BRITTON

**EXHIBIT G**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                      )
                                  )
    Plaintiff,            )
                                  )
v.                                )    Civil Action No.1:07-cv-02308
                                  )
William Biglow, et al.,           )
                                  )
    Defendants.           )
————————————————————— )

## DECLARATION OF
### Michael A. Chew

    I, Michael A. Chew, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1.    I currently am an EEO Complaints Specialist with the National Institutes of Health, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.    My permanent place of residence is Silver Spring, Maryland, and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at [City, State], this _7th_ day of _APRIL_, 2008.

_____
Michael A. Chew

**EXHIBIT H**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EDAR ROGLER,              )
                               )
      Plaintiff,          )
                               )
    v.                   )     Civil Action No.1:07-cv-02308
                               )
William Biglow, et al.,       )
                               )
      Defendants.    )
                               )

**DECLARATION OF
HILLARY FITILIS**

    I, HILLARY FITILIS, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I currently am Deputy Chief Operating Officer for Workforce Management, NIH Clinical Center, U.S. Department of Health and Human Services. I occupied the position of Special Assistant, NIH Clinical Center, U.S. Department of Health and Human Services at all times relevant to the above-captioned case.

    2.    My permanent place of residence is in Bethesda, Maryland, and I resided at that location at the time this legal action was filed.

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, Maryland this ___7th___ day of _April_ ___, 2008.

                                             _____
                                           Hillary J. Fitilis

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDAR ROGLER, )<br><br>  Plaintiff, )<br><br>  v. )<br><br>William Biglow, et al., )<br><br>  Defendants. ) | Civil Action No.1:07-cv-02308 |

## DECLARATION OF
## OWEN RAY FITZGERALD

I, Owen Ray Fitzgerald, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1.    I currently am a Special Assistant, NIH Clinical Center, U.S. Department of Health and Human Services. I occupied the position of Chief, Spiritual Ministry Department, NIH Clinical Center, at all times relevant to the above-captioned case.

2.    My permanent place of residence is in Bethesda, Maryland, and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, Maryland, this _8th_ day of _April_, 2008.

_Owen Ray Fitzgerald_
Owen Ray Fitzgerald

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDAR ROGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.1:07-cv-02308 |
| | ) | |
| William Biglow, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF
### JOHN I. GALLIN

I, JOHN I. GALLIN, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1.    I currently am the Director, NIH Clinical Center, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.    My permanent place of residence is in Potomac, Maryland, and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, MD, this 7th day of April, 2008.

John I. Gallin, M.D.

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EDAR ROGLER,               )
                                 )
      Plaintiff,        )
                                 )
  v.                 )    Civil Action No.1:07-cv-02308
                                 )
William Biglow, et al.,    )
                                 )
      Defendants.    )
                                 )

**DECLARATION OF
MAUREEN E. GORMLEY**

    I, Maureen E. Gormley, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I currently am the Chief Operating Officer, National Institutes of Health Clinical Center, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

    2.    My permanent place of residence is in Bethesda, Maryland, and I resided at that location at the time this legal action was filed.

    I declare under penalty of perjury that the foregoing is true and correct.

    28 U.S.C. § 1746. Dated at Bethesda, Maryland, this _8th_ day of _April_, 2008.

                             Maureen E. Gormley

# EXHIBIT L

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                          )
                                      )
      Plaintiff,              )
                                      )
    v.                                )    Civil Action No.1:07-cv-02308
                                      )
William Biglow, et al.,               )
                                      )
      Defendants.             )
                                      )

## DECLARATION OF
### Nyna Konishi

I, Nyna Konishi, pursuant to 28 U.S.C. § 1746, hereby declare the following:

1.      I currently am Administrative Officer, National Institutes of Health, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

2.      My permanent place of residence is in Germantown, MD, and I resided at that location at the time this legal action was filed.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, Maryland, this _7th____ day of _April_____, 2008.

Nyna Konishi, Administrative Officer

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                                    )
                                               )
    Plaintiff,                          )
                                               )
v.                                             )     Civil Action No.1:07-cv-02308
                                               )
William Biglow, et al.,                        )
                                               )
    Defendants.                         )
_____ )

DECLARATION OF
JULIE S. LU

    I, JULIE S. LU, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I currently am a General Attorney, Claims and Employment Law Branch, General Law Division, Office of the General Counsel, U.S. Department of Health and Human Services and have occupied that position at all times relevant to the above-captioned case.

    2.    My permanent place of residence is in Centreville, Virginia, and I resided at that location at the time this legal action was filed.

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Washington, D.C., this 8th day of April, 2008.

_____
Julie S. Lu

**EXHIBIT N**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                                )
                                            )
    Plaintiff,                       )
                                            )
    v.                               )    Civil Action No.1:07-cv-02308
                                            )
William Biglow, et al.,                     )
                                            )
    Defendants.                      )
_____)

## DECLARATION OF
## JOE MARTIN

    I, JOE MARTIN, pursuant to 28 U.S.C. § 1746, hereby declare the following:

    1.    I currently am Acting Associate Director, Client Services Division, Office of Human Resources Management, NIH, U.S. Department of Health and Human Services. Walter Jones held the position of Deputy Director for Diversity Management, NIH Clinical Center, U.S. Department of Health and Human Services at all times relevant to the above-captioned case.

    2.    Walter Jones' permanent place of residence is Haymarket, Virginia and he resided at that location at the time this legal action was filed on or about December 21, 2007.

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Dated at Bethesda, Maryland this _14_ day of _April_, 2008.

_____
Joe Martin

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **EDAR Y. ROGLER,** | ) | |
| **Plaintiff,** *pro se* | ) | |
| | ) | |
| **v.** | ) | Case No. WMN 0 7 CV 1 6 7 6 |
| | ) | |
| **Department of Health and Human Services,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

### COMPLAINT FOR DECLARATORY AND <u>INJUNCTIVE RELIEF</u>

1. Plaintiff, Edar Y. Rogler, and hereby files this complaint for compliance with the Privacy Act, 5 U.S.C. § 552a *et seq.* Plaintiff respectfully alleges as follows:

### <u>JURISDICTION AND VENUE</u>

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2) (United States as defendant), 5 U.S.C. § 552a(g)(5).

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

### <u>COUNT I</u>
#### (Violation of the Privacy Act)

4. Plaintiff realleges paragraphs 1 through 160 as if fully set forth herein.

5. The Defendant willfully and intentionally maintained confidential records on Plaintiff Rogler. This system of records includes information unlawfully obtained from the A.C.P.E. CPE Supervisor Rev. Karen Morrow and, on information and belief, from others, including other government agencies.

6. The maintenance of this system of records by Defendants is not relevant to accomplish any purpose required by statute or executive order of the President, but is part of a pattern of willful and intentional misconduct undertaken for purposes of attacking or threatening attacks on Plaintiff, and others similarly situated.

7. The Defendants' willful and intentional maintenance of this system of records on individuals, including Plaintiff, against them, violates 5 U.S.C. §§ 552a(e)(1) and (g)(1)(D), among other relevant provisions of the Privacy Act.

33

8. The Defendants' willful and intentional use and dissemination of information from this system of records to attack or threaten individuals, including Plaintiff, violates 5 U.S.C. §§ 552a(e)(1) and (g)(1)(D), among other relevant provisions of the Privacy Act.

9. As a proximate result of Defendants' willful, intentional and unlawful maintenance of information and dissemination of information from this system of records, individuals, including Plaintiff, have suffered economic and non-economic damages.

WHEREFORE, Plaintiff demands: (1) that judgment be entered against Defendants; (2that Defendants be enjoined from unlawfully disseminating information from Plaintiff's DHHS and/or other government files; (4) an award of compensatory damages in an amount not less than the $1,000 statutory minimum set forth at 5 U.S.C. § 552a(g)(4)(A); (5) an award of costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552a(g)(4)(B); and (6) such other relief as the Court deems just and proper.

Dated:  06/27/07

EDAR ROGLER, Plaintiff *pro se*
915 Boucher Avenue
Annapolis, Maryland  21403
(443) 852-6553
no fax number
edar_rogler@yahoo.com

34

**EXHIBIT P**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDAR Y. ROGLER,                          *
Plaintiff, *pro se*

                                         *

v.                                       *

                                         *   Civil No. WMN 07 2726

MIKE LEAVITT,                            *
SECRETARY
UNITED STATES                            *
DEPARTMENT OF HEALTH                     *
AND HUMAN SERVICES (DHHS),
(NATIONAL INSTITUTES OF HEALTH),         *
AGENCY
In his official capacity;                *

Defendant.                               *


*        *        *        *        *        *        *        *        *        *        *        *

## COMPLAINT

1. This action is brought pursuant to *Title VII of the Civil Rights Act of 1964,* as amended, (Title VII) for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff resides at 915 Boucher Avenue, Annapolis, Maryland 21403, email address is "Edar Rogler"edar_rogler@yahoo.com, and telephone number is (443) 852-6553.

3. Defendant Mike Leavitt, Secretary, United States Department of Health and Human Services (US DHHS) business address is: Office of Secretary, US DHHS, 200 Independence Avenue, S.W., Washington, D.C. 20201. Defendant Leavitt's email address is "Secretary Mike Leavitt"Mike.Leavitt.GO6@hhs.gov and telephone number (202) 619-0257.

4. The discrimination and reprisal occurred in connection with plaintiff's employment at or application to be employed at, defendant's National Institute of Health (NIH) Warren Grant Magnuson Clinical Center (CC), place of business located at Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, Bethesda, Maryland.

5. The alleged discriminatory acts occurred starting in the late spring and summer of 2005 and are continuing to present to the date of this instant filing of complaint.

1

6. Plaintiff filed charges with the United States Equal Employment Opportunity Commission (US EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036, regarding defendant's alleged discriminatory conduct from the spring of 2005 to January, 2006. Plaintiff's charge was entitled, "Edar Y. Rogler v. Mike Leavitt, Secretary, Department of Health and Human Services, (National Institutes of Health), Agency. Request No. 0520070128, Appeal No. 01A63657, Agency No. NIHCC-06-0008)."

7. Plaintiff has exhausted all of her administrative remedies. A decision on the merits of plaintiff's complaint has never been made. Plaintiff received her "Right to File a Civil Action" letter dated December 20, 2006. The original letter is attached to this complaint.

8. The alleged discriminatory acts, in this suit, concern failure to employ plaintiff, termination of plaintiff's employment, allegedly unilaterally converting plaintiff's employment status from common law employee to contractor and then terminating said contract, and reprisal for EEO protected activity and other acts.

9. Defendant's conduct is discriminatory with respect to the following:

   A. Plaintiff's sex (female);

   B. Plaintiff's religion (Greek Orthodox); and

   C. Reprisal for EEO activity:
      1. Plaintiff objected to the discrimination and reprisal of Heffernan and was a witness in *Heffernan v. Leavitt*, EEOC and MSPB complaints.
      2. Plaintiff objected to the discrimination and reprisal of Brenner and has been notified that she will be called to testify in *Brenner v. Leavitt*, EEOC and MSPB complaints.
      3. Plaintiff's own objections to discrimination and reprisal under Title VII and filing of an EEOC complaint.

## A brief statement of the alleged facts of plaintiff's claim:

10. The employer/agency is the United States Department of Health and Human Services (US DHHS) with a work site at National Institutes of Health Clinical Center (NIH CC).

11. John I. Gallin, M.D. (Gallin) at all pertinent times was and is the Director of NIH CC.

12. Maureen Gormley, R.N. (Gormley) at all pertinent times was and is the Chief Operating Officer at NIH CC.

2

13. Walter L. Jones (Jones) was and is at all pertinent times the Deputy Director for NIH CC's Management and Diversity for the Office of the Deputy Director for Management & Diversity (CC ODDMD). During all pertinent times Gallin directly supervised Jones.

14. Rev. O. Ray Fitzgerald, Ph.D. (Fitzgerald) at all pertinent times was and is the Chief of the Department of Spiritual Ministry (CC OODMD SMD) at NIH CC. Fitzgerald is under the direct supervision of Walter Jones (Jones), Deputy Director for Management and Diversity. Jones is under the direct supervision of Dr. John I. Gallin (Gallin), Director, Clinical Center. Fitzgerald is also an Association of Clinical Pastoral Education (ACPE) Clinical Pastoral Education (CPE) Supervisor.

15. Nyna Konishi (Konishi) at all pertinent times was and is the Administrative Officer for Gallin's and Gormley's activities. Konishi was not the Administrative Officer for the Spiritual Ministry Department.

16. Angela Kinney (Kinney) was the Administrative Officer over the Spiritual Ministry Department, Fitzgerald, Brenner, and the plaintiff.

17. Rev. Henry Heffernan (Heffernan), a Jesuit Roman Catholic priest, was and is employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Dr. Rev. O. Ray Fitzgerald (Fitzgerald), as Chief of the Department. Heffernan was and is represented at all pertinent times by Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, P.L.L.C.

18. Rabbi Reeve Brenner (Brenner), a Jewish Rabbi, was employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Fitzgerald. Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, P.L.L.C represent Brenner.. Brenner by and through his attorneys has filed petitions with the MSPB and the EEOC.

19. Rev. Gary Johnston (Johnston) at the pertinent time was a chaplain at NIH CC assigned to SMD, but was on military leave being deployed to the Pentagon until February 2007. Johnston retired in February of 2007.

20. Rev. Kathryn Snyder (Snyder) was a contract chaplain at NIH CC assigned to the SMD until on or about December 1, 2005. Snyder had another one-year contract to commence December 1, 2005, but Fitzgerald had NIH CC revoke Snyder's contract for the second year of service.

21. Rev. Dominic Ashkar (Ashkar) is a Lebanese Maronite priest, who was a contract chaplain at NIH CC and then was given the permanent chaplain position that was made available when NIH CC wrongfully terminated Heffernan. Ashkar's present status is unknown, but on information and belief he is still employed at NIH CC in the same capacity.

3

22. From August of 2005 to January of 2006 plaintiff alleges that she was employed as a common law employee by NIH CC as a part-time associate chaplain in the SMD under the direct supervision of Fitzgerald.

23. Heffernan filed two federal complaints. One was with the Merit System Protection Board (MSPB), MSPB No. DC-0752-04-0756-I-1 and the other one was with the Equal Employment Opportunity Commission (EEOC), EEOC Case No. 120-2005-00226X. Both federal panels found that the Agency unlawfully discriminated and retaliated against Heffernan and ordered his reinstatement to NIH CC.

24. During August through December of 2005 Fitzgerald made statements to Plaintiff regarding Heffernan and Fitzgerald's and NIH CC's reasons for suspending and ultimately terminating Heffernan.

25. The plaintiff at all pertinent times was a witness and had relevant and material testimony for two federal petitions filed by Rev. Henry Heffernan. Heffernan by and through his attorneys filed petitions with the MSPB and EEOC.

26. Plaintiff never met or spoke directly to Heffernan prior to December 23, 2005.

27. Heffernan has been reinstated to NIH CC in his previous federal civil service position.

28. Brenner was called to testify at the Heffernan matter.

29. At the time Brenner testified he had a clean personnel record and satisfactory work performance.

34. After Brenner testified he was suspended and terminated from employment at NIH CC.

35. Plaintiff alleges that Brenner's suspension and termination violated Title VII. The plaintiff at all pertinent times was a witness and had relevant and material testimony for two federal petitions filed by Rabbi Reeve Brenner.

36. During July of 2005 Heffernan had lost his MSPB complaint and dispositive motions were being heard at the EEOC or its dismissal was being considered.

37. On information and belief in the summer of 2005 Fitzgerald finds Plaintiff's ACPE CPE application in Morrow's stale files and finds Plaintiff's email address. Fitzgerald emails Plaintiff and states that he is interest in her application (which is defunct by the rules and regulations of ACPE).

38. Plaintiff emails Fitzgerald in response stating she has been accepted into another CPE program.

4

39. In August of 2005 Fitzgerald invited Plaintiff out to dinner at a restaurant in a hotel near NIH CC allegedly to interview her for employment at NIH CC to work a week or two in August of 2005. Fitzgerald and Plaintiff met and had dinner. Fitzgerald offered her a job performing substitute work at NIH CC and Plaintiff accepted. No contract was written or executed.

40. On or about August 16th to 19th, 2005 Plaintiff works at NIH CC:
   a.    During this time Fitzgerald makes remarks about his unlawfully disciplining and terminating Heffernan.
   b.    Fitzgerald additionally makes anti-Semitic remarks about Brenner and discloses adverse employment action Fitzgerald has taken against Brenner because he is a Jew.
   c.    Fitzgerald made remarks to plaintiff about how he wore a clerical collar to the *Heffernan* MSPB hearing to affect the outcome of the case.
   d.    Fitzgerald notes to plaintiff that Heffernan always wears a clerical collar. The plaintiff never witnesses Fitzgerald wearing a clerical collar.
   e.    During this work period Plaintiff's services were personal in nature and resulted in an employer-employee relationship.
   f.    Plaintiff did not negotiate or execute a contract to be an independent contractor, but had an oral agreement to be employed as a substitute chaplain.
   g.    On or about August 18, 2005 Fitzgerald refers to Brenner as "the Jew" and "that Jew" in a derogatory manner and states that he refuses to assign Brenner to be on call for the Protestant patients at NIH CC and carry the Protestant pager, because "the pager rarely goes off" and Fitzgerald did not want "the Jew to be sitting at home enjoying himself and get the money."

41. From August to December of 2005 Fitzgerald called Brenner "the Jew", "that Jew", "the butthead Jew", "the crass Jew", and all such references made herein meant refer to Rabbi Reeve Brenner as called by Rev. Dr. O. Ray Fitzgerald. Fitzgerald's use of these terms were discriminatory and derogatory and are alleged to be in violation of Title VII, because Fitzgerald's context, inflection, tone of voice, along with the local custom and usage of the term in said manner evidences animosity towards the Jewish race and religion. Fitzgerald's usage of the term "Jew" was not benevolent or neutral. Furthermore Fitzgerald did not refer to anyone else by his/her race or religion. Fitzgerald's terminology is alleged to be epithets in violation of the purposes of Title VII to discriminate and retaliate against Brenner.

42. From late August of 2005 to January of 2006 Plaintiff was a federal employee at the Dayton Veteran's Administration Medical Center (VAMC). Fitzgerald made arrangements for Plaintiff to substitute at NIH CC on her Christmas vacation from work at the VAMC. Fitzgerald then recruited Plaintiff to resign from her job at VAMC and take a job with NIH CC as a part-time associate chaplain.

5

43. Fitzgerald instructs plaintiff to write him a letter applying for the job and informs her what to write. By letter dated October 17, 2005 plaintiff wrote a letter to Fitzgerald stating, "Please accept this letter as application for the position of part-time associate chaplain and for the position in your CPE program." Said letter does not ask for a contractual position with a contract.

44. Fitzgerald insisted that plaintiff had to meet him in Boston, Massachusetts for an interview for said job. On or about October 28th through 29th, 2005 Plaintiff met Fitzgerald in Boston and attended an Orthodox Christian Association of Medicine, Psychology, and Religion (OCAMPR) conference, but Fitzgerald then stated that no interview was necessary that she already had the job.

45. There was no Purchase Order (PO) regarding the plaintiff during the month of November 2005.

46. On November 07, 2005 at 9:05 a.m. Kelley emails Yasmin Coates (Coates) referring to the plaintiff as "a new employee" to be scheduled for the "New Employee Orientation."

47. On November 08, 2005 Yasmin Coates of NIH CC emails Dana Kelley of the SMD referring to plaintiff as an "employee."

48. On or about November 16, 2005 plaintiff returns to work at NIH CC working part-time as an associate chaplain for at least twenty (20) hours per week.
   a. No contract was written or executed by the parties.
   b. An employer-employee relationship continued.
   c. NIH CC direct deposited plaintiff's paycheck into her personal checking account.
   d. Plaintiff was a common law employee of US DHHS NIH CC assigned to SMD as a part-time associate chaplain.
   e. Plaintiff's service to NIH CC is personal in nature.
   f. Plaintiff is required to be at NIH CC to perform her services with NIH CC.
   g. NIH CC supplies plaintiff with all principal tools and equipment required for plaintiff's services, including but not limited to telephones, copy machines, computers, fax machines, devotional literature, paper, desks, office, and any other item required.
   h. Fitzgerald and only Fitzgerald determined plaintiff's schedule and what she is to do throughout her day of work.
   i. Plaintiff's services are exactly the same as the permanent federal chaplains employed at NIH CC.
   j. NIH CC provided plaintiff with parking space.
   k. NIH CC provided plaintiff with the services of the Employee Assistance Program (EAP).
   l. NIH CC did not disclose the payments made in the year 2005 by NIH CC to the plaintiff for her work performed at NIH CC to the Internal Revenue Service (I.R.S.) and/or the State of Maryland.

6

49. On or about November 16, 2005 Kelley gave plaintiff the keys to the SMD.

50. On November the 17, 2005 at 10:53 a.m. Coates emails Kelley referring to the plaintiff as an "employee" and schedules plaintiff to participate in the NIH CC orientation program for new employees called "New Employee Orientation" to be held November 28 to 29, 2005.

51. On November 17th, 2005 at 10:53 a.m. Coates emails Kelley again referring to plaintiff as an "employee" and schedules her for orientation from November 28th to 29th, 2005. This is the same orientation for all new employees.

52. On November 18, 2005 Kelley completes the "Spiritual Ministry Department Orientation Checklist" for plaintiff. Said checklist refers to plaintiff as an "employee" and mentions "employment."

53. On or about November 21, 2005 Fitzgerald assigned Plaintiff to the Video Storage closet in the CRC instead of instead of assigning her to an office in SMD.
   a. All permanent, civil service, federal chaplains and contractual chaplains (except for plaintiff) had offices in another building.
   b. The video storage unit had a big video cabinet in it and did not have a desk, chair or NIH CC computer in it.
   c. On information and belief Fitzgerald deliberately and intentionally in violation of Title VII ordered plaintiff to stay in the Video Storage closet to conceal a witness to active MSPB and EEOC complaints filed by Heffernan and potential complaints to be filed by Brenner and others.
   d. Fitzgerald told plaintiff that she would be assigned an office in the SMD with the other chaplains when Snyder's contract expired on or about November 30, 2005.
   e. Fitzgerald also ordered the plaintiff to stay away from "the crass Jew" (meaning Brenner).
   f. Fitzgerald never introduces the plaintiff to Brenner.
   g. There are no SMD departmental meetings, services, and/or celebrations typical of chaplain departments in hospitals.

54. During the week of November 21, 2005 Fitzgerald stated to the plaintiff that Fitzgerald "stands in the shoes of God" as head of the Spiritual Ministry Department, which was "a concept that Heffernan could not grasp."

55. During the week of November 21, 2005 Fitzgerald stated to the plaintiff that Fitzgerald, Jones and Gallin tried to eliminate the position of the rabbi at NIH CC, but that the Patient Advocate named Martin Kohn objected so much that they could not eliminate the position and had to hire "the butthead Jew" instead.

56. Plaintiff attended orientation on November 28 and 29, 2005 and meets Laura Chisholm (Chisholm), Service Chief.

7

a. Plaintiff asks Chisholm for her telephone number and email address because Fitzgerald will be absence from the NIH CC premises and will be placing the plaintiff in charge of the Spiritual Ministry Department.

b. Plaintiff receives an "Orientation Agenda" referring to "employees" and not "contractors."

57. The EEOC Administrative Judge (AJ) David Norken (Norken) grants Heffernan's motion for reconsideration and schedules a hearing for the *Heffernan* matter for December of 2005.

58. In November and December of 2005 Fitzgerald asks the plaintiff not to repeat anything Fitzgerald has stated to the plaintiff. Fitzgerald states that because the plaintiff is not clergy everything that Fitzgerald has stated to the plaintiff is not confidential.

59. On or about December 8th, 2005 Coates emails Kelley referring to the plaintiff as an "employee" and schedules the plaintiff for the Patient Safety and Emergency Procedure Training.

60. On December 12, 2005 the plaintiff met with Chisholm.
a. Chisholm helps the plaintiff prepare a memorandum to Fitzgerald.
b. Chisholm authorized the counseling services provided by EAP to the plaintiff.
c. Chisholm emails Gormley about the plaintiff's statement to Chisholm.
d. Craig Kalman, an EAP counselor, counseled the plaintiff that day and a couple of more times.

61. Fitzgerald tells the plaintiff that Fitzgerald, Jones, and Gallin have a plan called "Clean Sweep" wherein Kelley and Brenner will be terminated for cooperating in the *Heffernan* matter and that Johnston will be given an offer he can't refuse to persuade Johnston to retire in February of 2006, because Johnston cooperated in the *Heffernan* matter.

62. On information and belief Fitzgerald instructed Brenner to testify that he "did not recall" when in fact Brenner did clearly recall the information requested. Fitzgerald forced the plaintiff to hide in a video storage closet in another building and instructed not to tell anyone what Fitzgerald had told the plaintiff.

63. On December 18, 2005 a Sunday morning at approximately 8:30 a.m. Fitzgerald calls the plaintiff on her day off and wakes her up and leaves her a message to call him and come in to work the next day.

64. On December 18, 2005 at 11:13 a.m. Fitzgerald and the plaintiff have a conversation for approximately twenty-six (26) minutes, wherein:
a. Fitzgerald threatens to fire the plaintiff if she does not take his current CPE class (which is over half way through completion).

8

      b.      Plaintiff believes that Fitzgerald is threatening her to get her to be in a
more vulnerable position to intimidate her from coming forward about
the discrimination against Heffernan and alleged discrimination against
Kelley, Brenner, and Johnston.

      c.      Plaintiff emails Gormley regarding the alleged discriminatory and
retaliatory conduct.

65. On December 19, 2005 at 7:54 a.m. Gormley emails Jones with a copy to Gallin,
stating "Walter, See below. Follow up needed here. Maureen" and forwards to Jones the
plaintiff's email to Gormley dated December 18, 2005 at 2:57 p.m..

66. On December 20, 2005 Fitzgerald instructs Kelley to give the plaintiff an office in
the SMD in the Tower so the plaintiff can get out of the video storage closet. Kelley
gives the plaintiff an office. Kelley gives the plaintiff a printed note.

67. On December 22, 2005 at 11:22 a.m. Jones emails the plaintiff at the wrong email
address. Jones' email states, "Hello, Deborah, I am have received a copy of your email to
Maureen Gormley. Please contact me at your to schedule a time to discuss your
concerns. My number is 301-496-327. Thanks. Walter Jones"

68. On December 22, 2005 on information and belief Jones asks Kelley to have plaintiff
telephone him. In response to Jones' request the plaintiff telephones Jones.

69. Jones has the plaintiff meet with Jones:
      a.    Jones discussed the email the plaintiff sent to Gormley and has a copy.
      b.    Jones encourages the plaintiff to discuss everything with Jones.
      c.    The plaintiff discusses all of the alleged discriminatory and retaliatory conduct
and her concerns.
      d.    Plaintiff informs Jones that she has a telephone message into Heffernan's
attorney to talk with her about what she knows and has talked with Brenner
about what she knows.
      e.    Jones states to the plaintiff that Jones agrees that Fitzgerald's conduct is
wrong and that Jones will talk to Fitzgerald about Fitzgerald's needing to
change his conduct. Jones instructs the plaintiff to return on December 23,
2005 at 1:00 p.m. and not to talk with Fitzgerald before said meeting.

70. On December 23, 2005 Jones and Fitzgerald verbally inform the plaintiff that she is
terminated.
      a.      Fitzgerald and Jones inform the plaintiff that they have changed her
status to contractor without telling her and without her executing a
contract.
      b.      On information and belief Jones and Fitzgerald have not informed the
Administrative Officer Angela Kinney or received her permission to
terminate the plaintiff.

     c.         On information and belief Jones and Fitzgerald have not informed Deborah Britton or received her permission to terminate plaintiff's alleged contract.

     d.         Jones and Fitzgerald state that the plaintiff is being terminated without cause for the convenience of the government and that plaintiff will receive a good reference if she lets by-gones be by-gones and not tell anyone anything that the plaintiff has seen or heard at NIH.

     e.         Jones states to the plaintiff that HIN is a "big family and have worked together for years" and that Jones "will not take the time to sort out the confusion."

     f.         Jones states to the plaintiff that she has no legal rights and that Jones can do whatever he pleases to her.

     g.         Plaintiff asked Jones for the Agency's attorney's name and telephone number in the *Heffernan* matter.

     h.         Jones refuses to give it to the plaintiff.

     i.         Plaintiff tells Jones and Fitzgerald that she is still contacting Heffernan's attorney.

71. On December 28, 2005 the plaintiff telephone's her Administrative Officer (AO) Angela Kinney. Kinney states to the plaintiff that the plaintiff has not been terminated and cannot be terminated unless Kinney as plaintiff's AO agrees. Kinney states that she is going to conduct a good faith investigation of the matter and will not just rubber stamp Jones and Fitzgerald's attempted termination of the plaintiff. Kinney told plaintiff to call her back that day in a couple of hours and then to come into NIH CC to talk with Kinney.

72. When the plaintiff telephone Kinney back on December 28, 2005, Kinney stated to plaintiff that Gallin had removed her as the AO to sign off on plaintiff's attempted termination and Gallin has replaced Kinney with his own AO, the Administrative Officer Nyna Konishi (Konishi). Kinney stated to plaintiff she was to come into her office to give Konishi her keys and ID badge.

73. On December 28, 2005 after the above-stated telephone office plaintiff came to Kinney's office and was greeted by Konishi. Konishi stated to the plaintiff that Kinney was not allowed to conduct an investigation, that Konishi would not conduct an investigation and would sign that the plaintiff was terminated without cause for the convenience of the government and plaintiff would get a neutral reference. Konishi stated to the plaintiff that plaintiff was a contractor, even though plaintiff never agreed to a contract and/or executed a contract. Konishi stated that NIH CC had changed her status by mailing the plaintiff to her home a Purchase Order for Supplies (PO) on or about November 28, 2005. Konishi obtained a copy of the PO by fax and gave the plaintiff a copy underlying a clause that permitted termination of the contract without cause for the convenience of the government.

74. On information and belief the management officials on NIH CC had developed a plan called "Operation Clean Sweep," wherein every person working for NIH CC SMD would be brought up on false charges, given a bad reference, discharged from

10

employment and/or contractual work, and further prevented from gaining future employment by US DHHS merely because they filed an EEOC complaint and/or cooperated with the EEOC investigation and/or testified at an EEOC hearing.

75.  If relief is not granted, plaintiff will be irreparably denied rights secured by Title VII of the 1964 Civil Rights Act, as amended.

76.  Plaintiff has no adequate remedy at law to redress the wrongs described above.

**Therefore, Plaintiff prays as follows:**
   A.  That all fees, cost or security attendant to this litigation be hereby waived.
   B.  That the Court appoints legal counsel.
   C.  That the Court grants such relief as might be appropriate, including injunctive orders, compensatory three hundred thousand dollars ($300,000.00) and punitive damages of five million dollars ($5,000,000.00), cost and attorney's fees.
   D.  For plaintiff to be made whole.
   E.  For any remedy deemed just and fair.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:

_____
Signature of Plaintiff

11

3                                   0520070128

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Edar Y. Rogler
915 Boucher Ave
Annapolis, MD  21403

Bonita V. White, Assistant Secretary
Management/Budget/EEO
Department of Health and Human Services
200 Independence Ave., SW #514-G
Washington, DC  20201

DEC 2 0 2006
_____
Date

_____
Equal Opportunity Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Edar Y. Rogler,
Complainant,

v.

Mike Leavitt,
Secretary,
Department of Health and Human Services,
(National Institutes of Health),
Agency.

Request No. 0520070128

Appeal No. 01A63657

Agency No. NIHCC-06-0008

## DENIAL

Complainant timely requested reconsideration of the decision in *Edar Y. Rogler v. Department of Health and Human Services*, EEOC Appeal No. 01A63657 (October 11, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A63657 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate

2                                                    0520070128

United States District Court **within ninety (90) calendar days** from the date that you receive
this decision. If you file a civil action, you must name as the defendant in the complaint the
person who is the official agency head or department head, identifying that person by his or
her full name and official title. Failure to do so may result in the dismissal of your case in
court. "Agency" or "department" means the national organization, and not the local office,
facility or department in which you work.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an
attorney, you may request that the Court appoint an attorney to represent you and that the
Court permit you to file the action without payment of fees, costs, or other security. *See* Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation
Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is
within the sole discretion of the Court.** Filing a request for an attorney does not extend your
time in which to file a civil action. Both the request and the civil action must be filed within
the time limits as stated in the paragraph above ("Right to File a Civil Action").
FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

DEC 2 0 2006
Date