IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER
Plaintiff *pro se*,

v.

WILLIAM BIGLOW, *et al.*
Defendants.

C.A. No. 1:07-cv-02308(RMC)

...oOo...

### PLAINTIFF'S AMENDED MOTION [Dkt. # 59] FOR RECONSIDERATION OF MINUTE ORDER 05.12.08 GRANTING IN PART DEFENDANTS' MOTION FOR A PROTECTIVE ORDER [Dkt. #37]
(FRCP, Rule 54(b))

Plaintiff, Edar Rogler, *pro se* hereby respectfully submits her amended motion for reconsideration of Minute Order entered on May 12, 2008 granting in part the Defendants' Motion for a Protective Order ("Mtn. Protective Order") [Dkt. #37] pursuant to Federal Rules of Civil Procedures, Rule 54(b) for clear errors of fact and law. *Singh v. George Washington University*, 383 F.Supp. 2d 99, 101 (D.D.C. 2005); and *Keyston Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 237 (D.D.C. 2003). Plaintiff has submitted her supporting memorandum of points and authorities with her proposed order [Dkt. # 62].

1.) The Court entered the <u>Minute Order</u> on May 12, 2008 granting in part the Defs. Mtn. Protective Order without permitting the Plaintiff to respond in opposition to said motion as granted by the Local Rules.

2.) The Court should evaluated criminal conspiracy statutes including 18 U.S.C. Section 371 and Section 1512 in the legal analysis of the Defendants proposed affirmative defense of the intracorporate conspiracy doctrine raise in Defendants' Motion to Dismiss [Dkt. #11]. See

1

*McAndrew v. Lockheed Martin, Corp.*, 206 F.3d 1031 (11th Cir. 2000), complimentary copy attached hereto. Therefore as a matter of law the Plaintiff's referring to criminal conspiracy statutes is necessary and appropriate.

3.) Defendants assert that Plaintiff's motion do "little to advance her cause" is not true. According to the statutes and case cited in her respective motions, the Plaintiff has a right to move the court to transfer, consolidate cases, jurisdictional discovery and enlarge time pursuant to Fed. R. Civ. Pro. Rule 4(m). These motions have to be filed early and timely and separately according to case law of the D.C. Circuit.

4.) If as the Defendants' assert the Plaintiff's motions lack merit, it should be easy for the Defendants to oppose said motions.

5.) As a matter of equal access to the Courts, the granting of Defendants unlimited motion to enlarge their time to respond to Plaintiff's motions grants the Defendants an unconstitutional advantage not support by the Defendants' complaints and criticism in their motion.

**WHEREFORE,** Plaintiff respectfully moves for the Court to reconsider the Minute Order entered May 12, 2008 granting in part Defendants' motion not to respond to Plaintiff's motion until after the Court renders a decision on Defendants' motion to dismiss, to vacate said Minute Order granting in part Defs.' Mot. Protective Order, and to DENY said motion in its entirety.

Respectfully submitted by:

_____/s/_____
Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403
(410) 280-9270

2

*206 F.3d 1031, \*; 2000 U.S. App. LEXIS 3543, \*\*;*
*16 I.E.R. Cas. (BNA) 25; 13 Fla. L. Weekly Fed. C 507*

Robert E. McANDREW, Plaintiff-Counter-Defendant-Appellant, v. LOCKHEED MARTIN CORPORATION, Successor in Interest to Lockheed-Aeronautical Systems Company, a division of Lockheed Corporation, Defendant-Counter-Claimant-Appellee, J.A. Blackwell, Jr., T.A. Graham, et al., Defendants-Appellees.

No. 97-8483.

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

206 F.3d 1031; 2000 U.S. App. LEXIS 3543; 16 I.E.R. Cas. (BNA) 25; 13 Fla. L. Weekly Fed. C 507

March 8, 2000, Decided
March 8, 2000, Filed

**PRIOR HISTORY:** [\*\*1] Appeal from the United States District Court for the Northern District of Georgia. (No. 96-01584-1-CV-JOF). J. Owen Forrester, Judge.

**DISPOSITION:** REVERSED and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant employee challenged the order of the United States District Court for the Northern District of Georgia, which dismissed his claim against appellee employer under 42 U.S.C.S. § 1985(2) as barred by the intracorporate conspiracy doctrine.

**OVERVIEW:** Plaintiff sued defendant under 42 U.S.C.S. § 1985(2), alleging that defendant conspired to prevent him from testifying regarding the sale of aircraft to a foreign country and then retaliated by firing him after he testified. The trial court granted defendant's motion to dismiss. On appeal, the court reversed. The intracorporate conspiracy doctrine did not apply to criminal conspiracies. Plaintiff's claim alleging a conspiracy to deter him by force, intimidation, or threat from testifying in a federal court proceeding alleged a criminal conspiracy. Therefore, the intracorporate conspiracy doctrine did not apply to plaintiff's 42 U.S.C.S. § 1985(2) claim, and therefore could not shield defendant from civil liability.

**OUTCOME:** Judgment reversed. The intracorporate conspiracy doctrine did not bar plaintiff's civil claim because the doctrine did not apply to criminal conspiracies, which was what plaintiff alleged in his lawsuit against defendant.

**COUNSEL:** For Lockheed Martin Corporation, Lockheed-Aeronautical Systems Company, Lockheed Corpration, J. A. Blackwell, Jr., T. A. Graham, T. F. Powell, A. Goldfarb, J. S. McLellan, John A, B, C, D & E Does, Appellee: Edmund M. Kneisel, Kilpatrick Stockton, L.L.P., Atlanta, GA. Neal S. Berinhout, Chitwood & Harley, Atlanta, GA. Christopher W. Arbery, Atlanta, GA. Lane H. Dennard, Jr., Atlanta, GA. William H. Boice, Kilpatrick Stockton LLP, Atlanta, GA. Todd David Wozniak, Atlanta, GA. Richard W. Hendriz, FINCH MCCRANIE BROWN & THRASH, Atlanta, GA.

For Robert E. McAndrew, Appellant: Luther D. Thomas, ATL, Clerk, U.S. District Court, Atlanta, GA. James L. Ford, The Ford Law Firm, Atlanta, GA. Christopher G. Moorman, Atlanta, Ga.

**JUDGES:** Before ANDERSON, Chief Judge, TJOFLAT, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES, BARKETT, MARCUS, WILSON, Circuit Judges, * and GODBOLD, Senior Circuit Judge. **

* Judge Frank M. Hull recused herself and did not participate in this decision. [**2]

** Senior U.S. Circuit Judge John C. Godbold elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

**OPINION BY:** MARCUS

**OPINION**

[*1034] MARCUS, Circuit Judge:

This case raises the discrete question of the applicability of the intracorporate conspiracy doctrine to claims arising under 42 U.S.C. § 1985(2) and alleging a conspiracy among corporate officers and the corporation itself to deter by force, intimidation, or threat, an individual from testifying in a court of the United States. These allegations plainly describe criminal conduct in violation of 18 U.S.C. § 1512 and a criminal conspiracy in violation of 18 U.S.C. § 371. Accordingly, we hold that just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(2). Therefore, we reverse the district court's order dismissing McAndrew's § 1985(2) claim as barred by the intracorporate conspiracy doctrine and remand [**3] for further proceedings consistent with this opinion.

I.

The facts of this case are straightforward. In 1993, the United States Department of Justice was investigating Lockheed's sale of three C-130 aircraft to the Arab Republic of Egypt for possible violations of the Foreign Corrupt Practices Act, 10 U.S.C. § 2409 *et seq.* Robert McAndrew had served as Lockheed's Director of International Marketing since 1989 and was responsible for negotiating the sale of aircraft to foreign nations.

In the fall of 1993, McAndrew and more than 30 other Lockheed employees were subpoenaed to testify before a federal grand jury. McAndrew alleges that on the morning he was scheduled to appear before the grand jury, June 21, 1994, he received a phone call from T.A. Graham, Vice President of Business Development at Lockheed (and McAndrew's immediate supervisor). During the course of the conversation Graham supposedly expressed his dissatisfaction to McAndrew about McAndrew's appearance before the grand jury, and told him specifically that "the company was very unhappy with [McAndrew's] decision to testify." Indeed, the complaint alleges that Graham made clear to McAndrew [**4] that "it would not be in his best interest to testify." McAndrew explained that he had no choice about testifying, that he had been under subpoena since October, 1993, and that he had been ordered by the court to give testimony. McAndrew told Graham, according to the complaint, that McAndrew had to appear and answer truthfully whatever questions were posed to him. Plaintiff alleged that Graham was in

Mexico when he called McAndrew and that Graham made it clear by his words that he was not only expressing his own personal sentiments, but was also speaking for Lockheed.

On June 21, 1994, under compulsion of subpoena and a separate court order, McAndrew appeared and testified before the grand jury regarding his knowledge of the sale of aircraft to Egypt. Two days later, McAndrew alleged, he received another call from Graham during which Graham told McAndrew that he, and Defendants A. Goldfarb (Vice President for Administration) and T.F. Powell (Vice President of Human Resources) were discussing what to do about McAndrew. Graham allegedly told McAndrew to take a couple of days off. Thereafter, according to the complaint, on June 28, 1994, Graham fired McAndrew by reading him the following [**5] statement: "The company has decided to end our relationship. This is due to your performance in International Marketing."

[*1035] In June 1996, McAndrew sued Lockheed and five senior management employees--Graham, Powell, Goldfarb, J.A. Blackwell (Lockheed's Aeronautical Senior President and Chief Executive Officer), and J.S. McLellan (President of Lockheed Martin Aeronautical System Company, a division of Lockheed Martin)--alleging that they conspired to prevent him from testifying and then retaliated against him by firing him after he testified in violation of 42 U.S.C. §§ 1985(2) and 1986, and the United States Constitution. McAndrew also brought supplemental claims alleging violation of the Georgia Constitution and intentional infliction of emotional distress. Lockheed filed counterclaims asserting that McAndrew breached his fiduciary duties to the company and committed fraud in connection with the sale of Lockheed aircraft to Egypt. In addition, each Defendant filed a motion to dismiss.

The district court granted Defendants' motions to dismiss and dismissed the complaint in its entirety. In doing so, the court held: first, that McAndrew's § 1985(2) claim was barred [**6] by the intracorporate conspiracy doctrine; second, that his § 1986 claim was derivative of the § 1985 claim and failed for the additional reason that the one year statute of limitations had run; third, that his constitutional claims failed because he did not allege state action; and finally, that his pendent state claim for intentional infliction of emotional distress was barred by the statute of limitations.

McAndrew appealed the district court's rulings dismissing his § 1985(2) claim and his state law claim for intentional infliction of emotional distress but did not appeal the trial court's rulings dismissing his claim under § 1986 and dismissing his federal and state constitutional claims. A panel of this Court affirmed the district court's ruling dismissing McAndrew's state law claim but reversed the ruling dismissing the § 1985(2) claim holding that the intracorporate conspiracy doctrine did not apply to § 1985 claims alleging civil rights violations. See McAndrew v. Lockheed Martin Corp., 177 F.3d 1310, 1313 (11th Cir.1999). On August 11, 1999, we vacated this opinion and granted rehearing en banc.

II.

The only issue before us [1] is whether the intracorporate [**7] conspiracy doctrine applies to and bars a claim arising under Title 42 U.S.C. § 1985(2), [2] alleging a criminal conspiracy among a corporation and its employees to prevent by force, intimidation, or threat, an individual from testifying in a federal court. We hold that it does not. This outcome flows from the long-established conclusion that the intracorporate conspiracy doctrine does not apply to criminal conspiracies. Because a § 1985(2) claim alleging a conspiracy to deter a person by force, intimidation, or threat from testifying in a federal court proceeding squarely and unambiguously [*1036] alleges a criminal conspiracy in violation of 18 U.S.C. §§ 371, 1512, the intracorporate conspiracy doctrine does not apply and, therefore, cannot shield the Defendants from civil liability.

**FOOTNOTES**

1 We adopt the panel's disposition affirming the district court's dismissal of McAndrew's intentional infliction of emotional distress claim.

2 The portion of § 1985(2) at issue in this case provides: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully and truthfully, ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." As defined in Title 28 U.S.C. § 451, the phrase "court of the United States" in § 1985(2) refers only to Article III courts and certain federal courts created by act of Congress, but not to state courts. See Shaw v. Garrison, 391 F. Supp. 1353, 1370 (E.D.La.1975), aff'd, 545 F.2d 980 (5th Cir.1977), rev'd on other grounds sub nom., Robertson v. Wegmann, 436 U.S. 584, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978). Section 1985(2) encompasses conspiracies to deter testimony before a federal grand jury. See Heffernan v. Hunter, 189 F.3d 405, 409 (3rd Cir.1999); Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1125 (10th Cir.1994); McCord v. Bailey, 204 U.S. App. D.C. 334, 636 F.2d 606, 618 (D.C.Cir.1980).

[**8] The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. See Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc., 140 F.3d 898, 912 (11th Cir.1998) (explaining that a civil conspiracy ordinarily requires "an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff"). However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 603 (5th Cir.1981); see also United States v. Hartley, 678 F.2d 961, 970 (11th Cir.1982). [**9] Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. See Dussouy, 660 F.2d at 603 (noting that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.1952) (explaining that "it is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation").

Not surprisingly, the intracorporate conspiracy doctrine first developed in the anti-trust context where it seemed particularly logical to conclude that a single corporation could not conspire with itself to restrain trade in the way imagined by Section 1 of the Sherman Antitrust Act. 3 As the former Fifth Circuit explained in Nelson Radio, while [**10] a single corporation could act in violation of Section 2 of the Sherman Act 4--which prohibits attempts to monopolize--it could not alone form a contract, combination, or conspiracy in restraint of trade so as to violate Section 1 of the Act. See Nelson Radio, 200 F.2d at 914 (explaining that Section 1 of the Sherman Act "does not purport to cover a conspiracy

which consists merely in the fact that the officers of the single defendant corporation did their day to day jobs in formulating and carrying out its managerial policy"). To hold otherwise would render Section 2 of the Act meaningless. *See Hartley*, 678 F.2d at 971.

**FOOTNOTES**

3 Section 1 of the Sherman Act, 15 U.S.C. § 1 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."

4 Section 2 of the Sherman Act, 15 U.S.C. § 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...."

[**11] In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir.1972), the Seventh Circuit extended the intracorporate conspiracy doctrine to § 1985 claims. The *Dombrowski* court held that when two executives of the same firm make a decision to discriminate in furtherance of the purpose of the business, [*1037] that decision cannot be called a conspiracy for purposes of § 1985(3). 5 *Id.* at 196. *See also Hartman v. Board of Trustees*, 4 F.3d 465, 469-70 (7th Cir.1993) (holding the intracorporate conspiracy doctrine is not avoided in § 1985(3) claims by a showing that corporate employees were motivated in part by personal bias); *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir.1990) (reiterating, in response to plaintiff's § 1985(2) retaliation claim, the holding of *Dombrowski* that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory").

**FOOTNOTES**

5 Title 42 U.S.C. § 1985(3) provides: "If two or more persons in any State or Territory conspire, or go in disguise on the highway ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws ... or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner ...; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

[**12] Like a majority of the other circuits, 6 we have followed the Seventh Circuit's extension of the intracorporate conspiracy doctrine to claims arising under § 1985(3). In *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir.1977) (per curiam), the former Fifth Circuit, in binding precedent, 7 affirmed the district court's holding [*1038] that the intracorporate conspiracy doctrine barred plaintiff's § 1985(3) claim alleging that university officials' decision not to renew her teaching contract was the product of a conspiracy to violate her civil rights. *Id.* at 1015. The district court concluded that "the university and its officials are considered as constituting a single legal entity which cannot conspire with itself." *Chambliss v. Foote*, 421 F. Supp. 12, 15 (E.D.La.1976). The former Fifth Circuit affirmed

with only the following statement: "We affirm on the basis of the district court's opinion." *Chambliss*, 562 F.2d at 1015. 8 Recently, in *Dickerson v. Alachua County Comm'n*, 200 F.3d 761 (11th Cir.2000), a panel of this Court followed *Chambliss* and held that the intracorporate conspiracy doctrine barred plaintiff's [**13] § 1985(3) claim alleging a conspiracy among employees of the same public entity to deprive him of his civil rights. *See id. Chambliss* and *Dickerson* remain the law in this Circuit. We have no occasion to revisit them today because neither case addressed the precise question presented here: whether the intracorporate conspiracy doctrine applies to and bars claims alleging a criminal conspiracy among corporate officers and the corporation itself arising under 42 U.S.C. § 1985(2). Neither case involved a claim brought under § 1985(2) and, more importantly, neither involved allegations of a criminal conspiracy to deter by force, intimidation, or threat an individual from testifying before a federal grand jury.

**FOOTNOTES**

6 *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998), *cert. denied*, 526 U.S. 1065, 119 S. Ct. 1457, 143 L. Ed. 2d 543 (1999) (applying the intracorporate conspiracy doctrine to plaintiffs' § 1985(3) claims alleging defendant supervisors conspired to deprive plaintiffs of their First Amendment and equal protection rights but finding the claims fell within an exception to the doctrine which arises when corporate employees act for their own personal purposes); *Hull v. Cuyahoga Valley Joint Voc. Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir.1991) (affirming district court's judgment that plaintiff's § 1985(3) claims were barred by the intracorporate conspiracy doctrine and reaffirming the circuit's extension of the doctrine from the context of antitrust litigation to allegations of conspiracy under the Civil Rights Act); *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir.1985) (affirming the applicability of the intracorporate conspiracy doctrine to bar plaintiffs' § 1985(3) claims); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156-57 (8th Cir.1983) (affirming district court's dismissal of plaintiff's § 1985(3) claim as barred by the intracorporate conspiracy doctrine where the corporate agents' acts "arguably were within the scope of employment"); *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71-72 (2d Cir.1976) (holding plaintiff's § 1985(3) claim alleging a conspiracy among a corporation and its directors to discriminate against her on the basis of sex was barred by the intracorporate conspiracy doctrine).

A minority of circuits have, however, refused to apply the doctrine to certain § 1985 claims alleging conspiracies to violate civil rights. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1127 (10th Cir.1994) (declining to apply the intracorporate conspiracy doctrine to a § 1985(2) claim because the intracorporate conspiracy doctrine, "designed to allow one corporation to take actions that two corporations could not agree to do, should not be construed to permit the same corporation and its employees to engage in civil rights violations"); *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir.1984) (finding that the "boundaries of an 'intracorporate' exception to § 1985(3) conspiracy provision should be narrower than in antitrust" and holding the intracorporate conspiracy doctrine did not apply in the present case because "defendants' activities [] went beyond 'a single act' of discrimination"); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1256-59 (3rd Cir.1978) (rejecting the application of the intracorporate conspiracy doctrine to a § 1985(3) conspiracy claim alleging an eight year program of denial of equal opportunity holding that neither the language or § 1985 nor the policies undergirding the section support application of the doctrine to such claims), *vacated on other grounds*, 442 U.S. 366, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979). [**14]

7 Fifth Circuit decisions enacted prior to October 1, 1981 are binding precedent in the 11th Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en

banc).

8 Although *Chambliss* was issued on the summary calendar, it was published and therefore is precedent in the Circuit. See *United States v. Machado*, 804 F.2d 1537, 1543 n. 11 (11th Cir.1986) (rejecting the notion that the prior panel precedent rule does not apply when the challenged panel decision was decided on the non-argument calendar by a per curiam opinion).

We have long recognized an exception to the applicability of the intracorporate conspiracy doctrine for intracorporate criminal conspiracies arising under 18 U.S.C. § 371 of the federal criminal code. 9 In *Hartley*, we refused to apply the intracorporate conspiracy doctrine to shield from liability members of the same corporation who were accused of a criminal conspiracy. *Id.*, 678 F.2d at 971-76. We considered an alleged conspiracy between a private food manufacturing [**15] company and government inspectors to bypass the government's food inspection guidelines. While we recognized that the conspiracy alleged did not require an analysis of the intracorporate conspiracy doctrine because it involved government inspectors who were not part of the corporation, we noted that "the provocative nature of the issue compels us to rule on its application to the facts of this case." *Id.* at 970. We followed former Fifth Circuit precedent in holding that the intracorporate conspiracy doctrine does not apply to alleged intracorporate criminal conspiracies. We wrote:

> The former Fifth Circuit recognized this exception to the [single corporate entity] fiction in criminal conspiracy cases in *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir.1981) when it stated: "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees." *Id.* at 603. We now adopt this exception and hold that it is possible for a corporation to conspire with its own officers, agents and employees in violation of 18 U.S.C. § 371.

678 F.2d at 972.

**FOOTNOTES**

9 Title 18 U.S.C. § 371 makes it a crime for two or more persons to conspire to commit any offense against the United States or to defraud the United States.

The [**16] First, Sixth, Eighth, and Ninth Circuits have all ruled similarly. See *United States v. Hughes Aircraft Co.*, 20 F.3d 974, 978-79 (9th Cir.1994) (noting that the intracorporate conspiracy doctrine "has never been applied to criminal cases" and holding that "a corporation may be liable under § 371 for conspiracies entered into [*1039] by its agents and employees"); *United States v. Ames Sintering Co.*, 927 F.2d 232, 236 (6th Cir.1990) (noting that " 'in the criminal context a corporation may be convicted of conspiring with its officers' ") (quoting *United States v. S & Vee Cartage Co.*, 704 F.2d 914, 920 (6th Cir.1983)); *United States v. Hugh Chalmers Chevrolet-Toyota, Inc.*, 800 F.2d 737, 738 (8th Cir.1986) (holding that "a corporation may be responsible when two or more high ranking or authoritative agents engage in a criminal conspiracy on its behalf"); *United States v. Peters*, 732 F.2d 1004, 1007-08 (1st Cir.1984) (upholding the convictions of two corporate officers convicted of criminal conspiracy under 18 U.S.C. § 371 because, despite the fact that the defendants were performing actions [**17] they were authorized to perform and were doing so with an intent to benefit the corporation, "the corporate veil does not shield them from criminal liability"). See also *United States v. Wise*, 370 U.S.

405, 417, 82 S. Ct. 1354, 8 L. Ed. 2d 590 (1962) (Harlan, J. concurring) (agreeing with the majority that an individual corporate officer is subject to prosecution under Section 1 of the Sherman Act because "the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions....").

The rationale supporting the idea that the intracorporate conspiracy doctrine cannot shield corporate employees and corporations accused of criminal conspiracies is simple enough. As we explained in *Hartley*, the original purpose of the corporate entity fiction was to *expand* rather than shrink corporate responsibility by making a corporation answer for the negligent acts of its agents. See *Hartley*, 678 F.2d at 970 (explaining that "by personifying a corporation, the entity [][is] forced to answer for its negligent acts and to shoulder financial responsibility for them"); see [**18] also *Dussouy*, 660 F.2d at 603 (noting that "the original purposes of the rule attributing agents' acts to a corporation were to enable corporations to act, permitting the pooling of resources to achieve social benefits and, in the case of tortious acts, to require a corporation to bear the costs of its business enterprise"). "The fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other." *Hartley*, 678 F.2d at 970. As the Fifth Circuit emphasized in *Dussouy*, in situations where a criminal conspiracy is alleged "the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose." *Id.*, 660 F.2d at 603.

A claim arising under § 1985(2), such as McAndrew's, alleging a conspiracy to deter by force, intimidation, or threat, an individual from testifying in a federal court, necessarily alleges criminal activity in violation of 18 U.S.C. § 1512--the criminal statute prohibiting [**19] tampering with a witness--and a criminal conspiracy in violation 18 U.S.C. § 371. Section 1512(b) specifically provides:

> Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--(1) influence, delay, or prevent the testimony of any person in an official proceeding; .... shall be fined under this title or imprisoned not more than ten years, or both.

An "official proceeding," as referred to in § 1512(b), is explicitly defined in 18 U.S.C. § 1515 to include a federal grand jury proceeding. Indeed, § 1512(b) applies to attempts to influence testimony in a broader range of proceedings than does the first clause of § 1985(2). Clause 1 of § 1985(2) applies only to conspiracies to deter or alter testimony in any federal court proceeding. Section 1512, however, applies to attempts to prevent or influence testimony not only in federal courts but also before Congress, federal agencies, and [*1040] insurance regulators. [10] Moreover, § 1512(b) subsumes but is significantly broader than the provision of [**20] § 1985(2) making it illegal to "conspire to deter by force, intimidation, or threat" any person from testifying in a pending federal court matter. Section 1512(b) not only makes it a crime to attempt to deter testimony by force, intimidation, or threat, as does § 1985(2), but also makes it a crime to try to deter such testimony through sheer persuasion without the use of physical or economic threat, as long as one does so with a corrupt purpose. See *United States v. Shotts*, 145 F.3d 1289, 1301 (11th Cir.1998) (sustaining a conviction under § 1512(b) where an employer told an employee not to talk to investigators so that she would not be bothered, finding that a jury could reasonably have inferred that the employer was attempting with improper motive to persuade the employee not to talk to investigators); see also *United States v. Tocco*, 135 F.3d 116, 126-27 (2d Cir.1998) (sustaining defendant's conviction of witness

tampering based on evidence showing defendant had substantial influence over witness because he was her landlord and her employer, and had paid for an attorney to help her prepare her testimony); *United States v. Gabriel,* 125 F.3d 89, 102-03 (2d Cir.1997) [**21] (holding that defendant's attempt to mislead a client by providing it with false information was illegal witness tampering because defendant was trying to corruptly persuade or mislead the client with the intent of influencing its potential testimony before the grand jury); *United States v. Morrison,* 321 U.S. App. D.C. 170, 98 F.3d 619, 629-30 (D.C.Cir.1996) (holding that defendant's corrupt intent to influence testimony and exhortation to witness not to testify truthfully was enough to justify his § 1512(b) conviction, even with no direct threat of either physical or economic harm); *United States v. Altman,* 48 F.3d 96, 99, 104 (2d Cir.1995) (holding that witness's testimony that he lied to investigators because his friend, the defendant, had asked him to do so, was sufficient to sustain the defendant's conviction under § 1512(b)). Plainly, by stating a claim under § 1985(2), alleging that Defendants attempted to deter him by force, intimidation, or threat from testifying before the federal grand jury about Lockheed's activities by threatening him with job-related sanctions, McAndrew also alleged a crime under § 1512(b) and a criminal conspiracy [**22] under § 371.

---

**FOOTNOTES**

10 Title 18 U.S.C. § 1515 provides that the term "official proceeding" in § 1512 means: "A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Claims Court, or a *Federal grand jury;* B) a proceeding before Congress; C) a proceeding before a Federal Government agency which is authorized by law; or D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any person engaged in the business of insurance whose activities affect interstate commerce" (emphasis added).

---

The only real question is whether the criminal conspiracy exception to the intracorporate conspiracy doctrine is somehow limited to cases in which the underlying criminal conspiracy arises under 18 U.S.C. § 371 rather than under 42 U.S.C. § 1985 [**23] (2). We can discern no basis for drawing this distinction. Indeed both the rationale for the intracorporate conspiracy doctrine and the legislative history of § 1985(2) counsel in favor of a consistent application of the criminal conspiracy exception to the intracorporate conspiracy doctrine regardless of whether the criminal conspiracy arises under the federal criminal or civil code.

As we have explained, the corporate entity fiction was designed to expand corporate liability by holding the corporation liable for the acts of its agents. The intracorporate conspiracy doctrine shielding corporate employees and the corporation itself from unlawful conspiracy claims was a product of this fiction. However, the fiction was never intended nor used to [*1041] shield conspiratorial conduct that was criminal in nature. See *Hartley,* 678 F.2d at 970. As the Fifth Circuit explained in *Dussouy,* criminal conspiracies pose the precise group danger at which conspiracy liability is aimed, making the corporate entity doctrine in such cases a "fiction without a purpose." *Id.,* 660 F.2d at 603. Because, the underlying conspiratorial conduct being challenged is precisely the [**24] same regardless of whether a criminal conspiracy is alleged under § 371 or under § 1985(2), there is no reason to differentiate between the criminal and civil conspiracy statutes. In either case, when a criminal conspiracy is alleged, the underlying conduct is of a sort that neither the corporate entity fiction nor the intracorporate conspiracy doctrine was intended or used to shield.

Moreover, application of the criminal conspiracy exception to a § 1985(2) claim is altogether consonant with the original purpose of that statute. Section 1985 derives from Section 2 of the Ku Klux Klan Act of 1871 also known as the Civil Rights Act of 1871. [11] The Act was passed in response to a rising tide of Klan terrorism against blacks and Union sympathizers and was designed to proscribe conspiracies "having the object or effect of frustrating the constitutional operations of government through assaults on the person, property, and liberties of individuals." See Comment, *A Construction of Section 1985(c) in Light of its Original Purpose*, 46 U. Chi. L.Rev. 402, 402-03 (1979); see also *District of Columbia v. Carter*, 409 U.S. 418, 425-26, 93 S. Ct. 602, 34 L. Ed. 2d 613 (1973); [**25] *Brawer v. Horowitz*, 535 F.2d 830, 837-38 (3rd Cir.1976); *Civil Rights* 591 (Bernard Schwartz ed., 1970); Janet A. Barbiere, *Conspiracies to Obstruct Justice in the Federal Courts: Defining the Scope of Section 1985(2)*, 50 Fordham L.Rev. 1210, 1210-1229 (1982). The criminal conspiracy exception to the intracorporate conspiracy doctrine promotes the original purpose of the Act by ensuring that individuals and groups can be prosecuted for their criminal activities regardless of their status of incorporation. The exception ensures that conspiratorial criminal conduct is not shielded from civil liability under § 1985(2) of the Civil Rights Act simply by the expedient of incorporation.

---

**FOOTNOTES**

[11] The official title was "An Act to enforce the provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes."

---

Indeed, even courts that generally apply the intracorporate conspiracy doctrine to § 1985 claims have recognized that an exception should exist [**26] when the conspiracy alleged is criminal in nature. For example, in *Dombrowski*, the Seventh Circuit, while extending the intracorporate conspiracy doctrine to § 1985(3) claims generally, suggested in dicta that the doctrine would not shield criminal conspiracies from § 1985 liability. In discussing the scope of § 1985(3), the Seventh Circuit explained: "We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding. Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon." 459 F.2d at 196. Similarly, in *Hartman*, the Seventh Circuit noted that, for the reasons it had expressed in *Dombrowski*, not all discriminatory action taken within the scope of employment and attributable to the corporation is exempt from 1985(3). See *id.*, 4 F.3d at 470.

Simply put, we conclude that the criminal conspiracy exception to the intracorporate conspiracy doctrine applies regardless of whether the criminal conspiracy arises under 18 U.S.C. § 371 or under 42 U.S.C. § 1985. [**27] Because a claim, such as McAndrew's, alleging an intracorporate conspiracy to deter a person from testifying in a court of law by force, intimidation, or threat, necessarily alleges a criminal conspiracy, the intracorporate conspiracy doctrine cannot apply. Accordingly, we reverse the district court's order of dismissal [*1042] on this issue and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

Service: **Get by LEXSEE®**
Citation: **206 F.3d 1031**
View: Full
Date/Time: Saturday, June 14, 2008 - 2:25 PM EDT