## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EDAR ROGLER,** | : | |
| **915 Boucher Avenue** | | |
| **Annapolis, Maryland  21403** | : | |
| **Plaintiff,** | | |
| | : | |
| **versus** | | |
| | : | |
| **U.S.  EQUAL EMPLOYMENT** | | |
| **OPPORTUNITY COMMISSION** | : | |
| **OFFICE OF FEDERAL OPERATIONS** | | |
| **1801 L Street, N.W.** | : | |
| **Washington, D.C.** | | **C.A. No.: 1:07-cv-02308(RMC)** |
| | : | **JURY TRIAL REQUESTED** |
| **U.S. DEPARTMENT OF HEALTH AND** | | |
| **HUMAN SERVICES** | : | |
| **200 Independence Avenue** | | |
| **Washington, D.C. 20201** | : | |
| | | |
| **MICHAEL O. LEAVITT,** | : | |
| **in his official capacity as** | | |
| **Secretary,** | : | |
| **U.S. Department of Health and Human Services** | | |
| **200 Independence Avenue** | : | |
| **Washington, D.C.  20201** | | |
| | : | |
| **ELIAS ZERHOUNI, M.D.,** | | |
| **individually and in his official capacity as** | : | |
| **Director,** | | |
| **The National Institutes of Health** | : | |
| **9000 Rockville Pike** | | |
| **Bethesda, Maryland  20892-0001** | : | |
| | | |
| **WILLIAM A. BIGLOW, Esquire** | : | |
| **individually and in his official capacity as** | | |
| **Attorney, General Law Division,** | : | |
| **Office of the General Counsel** | | |
| **U.S. Department of Health and Human Services** | : | |
| **330 Independence Avenue, S.W.** | | |
| **Washington, D.C. 20201** | : | |

RECEIVED

AUG - 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

**JULIE S. LU, Esquire**                                        :
**individually and in her official capacity as**
**Attorney, General Law Division,**                            :
**Office of the General Counsel**
**U.S. Department of Health and Human Services** :
**330 Independence Avenue, S.W.**
**Washington, D.C. 20201**                                     :

**JOHN I. GALLIN, M.D.**
**individually and in his official capacity as**               :
**Director,**
**Clinical Center**                                            :
**The National Institutes of Health**
**Warren Grant Magnuson Clinical Center**                      :
**Hatfield Clinical Research Center**
**10 Center Drive**                                            :
**Bethesda, Maryland 20892-1204**

                                                               :

**MAUREEN E. GORMLEY, R.N.,**
**individually and in her official capacity as**               :
**Chief Operating Officer,**
**The National Institutes of Health**                          :
**Warren Grant Magnuson Clinical Center**
**Hatfield Clinical Research Center**                          :
**10 Center Drive**
**Bethesda, Maryland 20892-1204**                              :

**WALTER L. JONES,**                                           :
**individually and in his official capacity as**
**Deputy Director for Management and Diversity** :
**The National Institutes of Health**
**Warren Grant Magnuson Clinical Center**                      :
**Hatfield Clinical Research Center**
**10 Center Drive**                                            :
**Bethesda, Maryland 20892-1204**

                                                               :

**HILLARY FITILIS, Esquire**
**individually and in her official capacity as**               :
**Special Assistant to Chief Operating Officer**
**The National Institutes of Health**                          :
**Warren Grant Magnuson Clinical Center**
**Hatfield Clinical Research Center**                          :
**10 Center Drive**
**Bethesda, Maryland 20892-1204**                              :

**REV. OWEN RAY FITZGERALD**                              :
individually and in his official capacity as
(Formerly) Chief, Spiritual Ministry Department:
And (formerly) ACPE Supervisor
The National Institutes of Health                        :
Warren Grant Magnuson Clinical Center
Hatfield Clinical Research Center                        :
10 Center Drive
Bethesda, Maryland 20892-1204                            :

**REV. DOMINIC ASHKAR**                                  :
individually and in his official capacity as
(Formerly) Independent Contractor Chaplain               :
Our Lady of Lebanon Maronite Church
Rectory                                                  :
7164 Alaska Avenue, N.W.
Washington, D.C.  20012                                  :

**ANN M. BERGER, M.S.N., M.D.,**                         :
individually and in her official capacity as
Chief of the Pain and Palliative Care Clinic             :
The National Institutes of Health
Warren Grant Magnuson Clinical Center                    :
Hatfield Clinical Research Center
10 Center Drive                                          :
Bethesda, Maryland 20892-1204
                                                         :
**NYNA KONISHI,**
individually and in her official capacity as             :
Administrative Officer,
The National Institutes of Health                        :
Warren Grant Magnuson Clinical Center
Hatfield Clinical Research Center                        :
10 Center Drive
Bethesda, Maryland 20892-1204                            :

**DEBORAH BRITTON**                                      :
individually and in her official capacity as
Contracting Officer                                      :
Office of Purchasing and Contracts
The National Institutes of Health                        :
2 Democracy Plaza
6707 Democracy Blvd.                                     :
Bethesda, Maryland 20892-5480

3

LAWRENCE N. SELF                                    :
individually and in his official capacity as
Director,                                          :
Office of Equal Opportunity
& Diversity Management                             :
The National Institutes of Health
Warren Grant Magnuson Clinical Center              :
2 Center Drive
Bethesda, Maryland 20892-1204                      :

MICHAEL A. CHEW                                    :
individually and in his official capacity as
EEO Specialist                                     :
The National Institutes of Health
Warren Grant Magnuson Clinical Center              :
2 Center Drive
Bethesda, Maryland 20892-1204                      :

VICTOR CANINO                                      :
individually and in his official capacity as
(Formerly) EEO Specialist                          :
The National Institutes of Health
Warren Grant Magnuson Clinical Center              :
2 Center Drive
Bethesda, Maryland 20892-1204                      :

SLYVIA D. DRUMMOND                                 :
individually and in her capacity as
Senior Case Manger, DSZ                            :
271 North Oak Street
Alberta, Virginia                                  :

DSZ, INC.                                          :
1501 Lee Highway, Suite 205
Arlington, Virginia  22209                         :

DHHS UNKNOWN OFFICIALS NOS. 1-10,                  :
Individually and official capacities,
200 Independence Avenue                            :
Washington, D.C. 20201

                                                   :
                        Defendants.

                     ...oOo...

                        4

## FIRST AMENDED COMPLAINT
### (Declaratory Judgment Act, Administrative Procedures Act, Constitutional Torts, Civil Rights Violations, RICO & State Law Claims)

### Introduction

1.  Under the Administrative Procedures Act ("APA"), 5 U.S.C. §§500, et seq., the Declaratory Judgment Act, 28 U.S.C. §2201, Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972 and the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§2000e-2 *et seq.*, 42 U.S.C. §§ 1981, 1985, 1986 & 1988 and the First Amendment, Fourth Amendment, and Fifth Amendment to the Constitution of the United States and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c) ("RICO"), 18 U.S.C.S. §1512 and related claims at state law of the States of Ohio, Massachusetts, Virginia, Maryland and the District of Columbia, Plaintiff Edar Rogler ("Rogler") seeks damages, injunctive, declaratory, and any other equitable relief that she might be granted

2.  This civil action concerns Plaintiff both as a private citizen and as an associate chaplain who worked for The National Institutes of Health Clinical Center ("NIH CC"), United States Department of Health and Human Services ("US DHHS").  NIH CC established policies and practices to eliminate Roman Catholic priest(s)/chaplains, Jewish rabbi/chaplains and other religious minorities at NIH and for the NIH chaplains to not have and/or display their religious identity, attributes, and liturgical traditions of their various denominations and in place of their denominational practices to have one so-called "generic chaplaincy" and to retaliate against any objectors and their witnesses in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972 and the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §§2000e-2 *et seq.*, 42 U.S.C. §§1985 & 1986 and the First Amendment to the

5

Constitution of the United States, 18 U.S.C.S. §1512, and Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. §1962(c) ("RICO"), and related claims at state law. Plaintiff seeks

damages to compensate her for her injuries, injunctive relief to prevent further such harm, and

declaratory relief to declare her to be a federal common law employee entitled to protection

under Title VII and/or was an employee of the United States government as defined by 5 U.S.C.

§2105 and order the United States Equal Employment Opportunity Commission to hold an

administrative hearing on her discrimination/reprisal complaint. Plaintiff asserts that the agency's

administrative actions were unlawful and corruptly produced illegal documentary evidence to the

extent that the EEOC could not constitutionally review Plaintiff's formal EEO complaint and

render a legitimate decision on her complaint.

3. Generic chaplaincy in actuality is a liberal Protestant chaplaincy and not a religiously

neutral chaplaincy. Coining the term "generic chaplaincy" is an faux intellectual façade to

camouflage discrimination against the religious leaders of the Roman Catholic, Jewish faiths, and

other religious minorities that is the same discrimination that the original Civil Rights Act of

1871 (also known as the Klu Klux Klan Act of 1871) was enacted to prevent. To achieve the goal

of generic chaplaincy (or in actuality the discrimination against and eliminations of Roman

Catholic priest(s) and Jewish rabbi(s)) NIH CC mandated that its chaplains to a varying degree

and in different manners undergo re-training through the Association of Clinical Pastoral

Education ("ACPE") and take four units of Clinical Pastoral Education ("CPE") regardless of

how well and many years the chaplains had been performing chaplaincy.

4. Plaintiff was a witness in the federal proceeding, entitled *Rev. Henry Heffernan v.*

*Michael Leavitt, Secretary, U.S. D.H.H.S.,* E.E.O.C. Case No. 120-2005-00226X; and *Rev.*

*Henry Heffernan v. Michael Leavitt, Secretary, U.S. D.H.H.S.,* M.S.P.B. No. DC-0752-04-0756-I-1. Federal proceedings were occurring in Washington, District of Columbia ("DC") at the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations ("OFO"), 1801 L Street, N.W., Washington, D.C.; and the Merit System Protection Board ("MSPB"), 1615 M Street, N.W., Washington, D.C. 20419, as well as the EEOC's Baltimore Regional Office. Plaintiff was a named witness in the federal proceeding, entitled *Dr. Reeve Robert Brenner v. Michael Leavitt, Secretary, U.S. D.H.H.S.,* M.S.P.B. No. DC-0752-07-0414-I-1, before the M.S.P.B. in the regional office located in Alexandria, Virginia and before the EEOC Baltimore Regional Office in Baltimore, Maryland.   Plaintiff was a named witness in various federal administrative proceedings within the District of Columbia, Virginia, and Maryland.

5. The US Equal Employment Opportunity Commission ("EEOC") in a final adjudication in the matter of *Henry Heffernan v. Michael Leavitt, Secretary US DHHS*, EEOC Case No. 120-2005-00226X that DHHS violated Rev. Henry Heffernan's Title VII protection and that the Agency retaliated and reprised Heffernan in violation of Title VII.  Rev. Heffernan's two material witnesses were Rabbi Reeve Robert Brenner ("Brenner") and the Plaintiff.  Federal employee(s) of NIH CC instructed and/or requested that Brenner and the Plaintiff either conceal their identity and/or not testify truthfully in the Heffernan matter.  Defendants, who included non-federal employees, in conspiracy and/or in a private conspiracy and/or a criminal conspiracy demanded that Plaintiff be concealed in a video storage closet in a different building than the building wherein the Spiritual Ministry Department office and chaplains' offices were located. When Plaintiff refused to stay concealed any longer, voiced her objections and expressed an intention to come forward as a witness, the Defs. Lu, Biglow, Gallin, Gormley, Jones, Fitilis,

7

Konishi, Berger, Britton, Chew, Canino, Self, and Drummond acting alone and/or in conspiracy retaliated and obstructed justice and interfered with the Plaintiff's interstate communications and travel. Federal employee(s) of NIH CC terminated Plaintiff twice: first on December 23, 2005 without cause and with two weeks severance pay and second on January 5, 2005 for a fabricated cause. After testifying truthfully for Rev Heffernan, Rabbi Brenner was stalked and confronted in the Chapel at NIH CC on Yom Kippur, 2006, placed on an extended administrative leave and then brought up on false charges and without progressive discipline was terminated based on fabricated charges. Defendants have deliberately and willfully failed to fill the position of Civil Service part-time rabbi/chaplain and intend to eliminate the position for a Jewish rabbi/chaplain. Previously Defendants unsuccessfully tried to eliminate the position of rabbi/chaplain before being forced to hire Rabbi Brenner. The following paragraphs will set forth how the Defendants each acted in furtherance of a conspiracy and/or with a pattern of racketeering activity to violate the Constitutional and Civil Rights of victims, witnesses, objectors, and any person attempting to assist and/or help the victims and/or witnesses and/or failed to supervise subordinates.

6. Defs. Lu, Biglow, Gallin, Gormley, Jones, Fitilis, Konishi, Berger, Britton, Chew, Canino, Self, and Drummond were members in a so-called "loop" and/or in "the family" and in an enterprise that functioned as a continuing unit over a period of time to achieve a shared objective or objectives of the enterprise. Defendants had the shared objective or objectives of a fraudulent scheme that has been coined "the dream team scheme" to rid NIH CC of Roman Catholic priest(s) and Jewish rabbi(s) and to replace them with other preferred religions and to establish a "generic chaplaincy" which in reality is a liberal Protestant chaplaincy. Said scheme monetarily benefited particular non-federal employees and federal employees.

8

7. Plaintiff asserts that the Defendants acted in conspiracy to prevent Plaintiff from interstate travel and communication with Rev. Heffernan who worked and resided within the District of Columbia and his attorneys who where located within the District of Columbia and retaliated against her for said interstate communications and travel and thereby prevent and/or retaliate against the Plaintiff for being a witness in a proceeding before the Office of Federal Operations ("OFO") located in the District of Columbia ("DC") and to prevent and/or retaliate against the Plaintiff for filing her own appeal to the OFO in DC.

8. DHHS by and through NIH CC and Defendant Fitzgerald in conspiracy with others recruited plaintiff from Dayton, Ohio where plaintiff was employed by the Dayton Veteran's Administration Medical Center ("VAMC") by using interstate communications and wires. DHHS by and through NIH CC and Defendant Fitzgerald in conspiracy with others had plaintiff undergo an employment interview in Brookline, Massachusetts in October of 2005 by using interstate communications and wires. The overt acts in furtherance of the conspiracy were committed by Defs. Lu, Biglow, Gallin, Gormley, Jones, Fitilis, Konishi, Berger, Britton, Chew, Canino, Self, and Drummond (unnamed co-conspirator) in various states, including Ohio, Massachusetts, Virginia, District of Columbia and Maryland. The most harm was done to the Plaintiff in the District of Columbia, Ohio, and Massachusetts with actions committed in Maryland and the District of Columbia.

### FIRST COUNT
### Violation of the First Amendment to the U.S. Constitution

### I. Introduction

9. This is a claim for declaratory, injunctive, and monetary relief under the First Amendment to the Constitution of the United States, as more fully set forth below.

9

10.  Plaintiff complains for her first claim for relief alleges that Defendants (individually, not in their official capacities as federal employees) Zerhouni, Biglow, Lu, Gallin, Gormley, Jones, Fitilis, Fitzgerald, Ashkar, Berger, Konishi, Britton, Self, and Chew acted in civil and/or criminal conspiracy under color of federal authority to violate the Rev. Heffernan's, Dr. Brenner's and Plaintiff's rights protected by the First Amendment to the U.S. Constitution. Plaintiff enjoys the rights of freedom of association, religion, speech, expression and to petition the government for redress of grievances as guaranteed by the First Amendment to the United States Constitution. Plaintiff sues Defs. EEOC, DHHS, and Secretary Leavitt for equitable relief only.

11.  The First Amendment guarantees Plaintiff of her right to speak freely on matters of public concern, including but not limited to the right to testify at an EEOC hearing on a discrimination matter, to criticize NIH CC and its governmental officials and employees and to file her own discrimination complaint with the OEO DM.  The First Amendment prohibits the government from interfering with, abridging, or otherwise discriminating against a person on the basis of that individual's as associations, expression, religion and/or speech.

## II. Jurisdiction

13.  Jurisdiction over this matter is proper under 28 U.S.C. § 1331, as Plaintiffs assert claims arising under the laws of the United States.

14.  Personal jurisdiction is proper over the Defendants under the District of Columbia's long-arm statute, D.C. Code §13-423(a).  Personal jurisdiction is proper over the Defendants because the Defendants acted in conspiracy with non-federal employees, Defendants Ashkar and Drummond to interfere with the plaintiff's right to access to the OFO US EEOC, located in the

10

District of Columbia and right to interstate travel and communications with Rev. Heffernan and

his attorneys, who were all located in the District of Columbia and/or Defendants have minimum

contacts and/or have availed themselves to the District of Columbia. Defendants have minimum

contacts and have availed themselves with the District of Columbia and/or have committed acts

in furtherance of a conspiracy to harm the plaintiff from interstate communications, travel and

communications within the District of Columbia and have been properly served in accordance

with the laws of the District of Columbia.

### III. Venue

15. Venue is proper in this district pursuant to the provisions of 28 U.S.C. §1391(b)(2)

because a substantial part of the events or omissions giving rise to the claims herein occurred in

the District of Columbia and the injuries to the plaintiff occurred in the District of Columbia

and/or originated from activities and/or omissions by the Defendants within the District of

Columbia and/or originated from activities and/or omissions by the Defendants in Maryland to

prevent the plaintiff from interstate communications and travel to the District of Columbia.

This Court is the most convenient forum for the witnesses: Dr. Reeve Robert Brenner, Angela

Wright-Kinney, Fr. Henry Heffernan, Dana Kelley, Rev. Gary Johnston, Attorney Cathy Harris,

and Monsgr. Mosley (Archdiocese of Washington, D.C.).

This Court is the most convenient forum for the parties.

### IV. Parties

16. Plaintiff Edar Rogler ("Rogler" or "Plaintiff") is now and at all times relevant to this

complaint a resident of Annapolis, Anne Arundel County, Maryland and some of the time

relevant to this complaint worked for NIH CC, US DHHS as an associate chaplain.

11

17. Defendant US Equal Employment Opportunity Commission ("EEOC") is an agency with in the executive branch of the government of the United States, maintaining offices within the District of Columbia and is sued for equitable relief, declaratory and injunctive relief only.

18. Defendant US Department of Health and Human Services ("DHHS") is an agency with in the executive branch of the government of the United States, maintaining offices within the District of Columbia and having more than 500 employees in all weeks from 2005 through the present. DHHS is a federal agency within the meaning of 5 U.S.C. ¶552a(a)(1).

19. Defendant Michael O. Leavitt ("Leavitt") is now and at all times relevant to this complaint a resident of Washington, District of Columbia. Def. Leavitt is a federal employee, whose official capacity is Secretary, US DHHS. His work address is now and at all relevant time to this complaint DHHS, 200 Independence Avenue, Washington, District of Columbia. He is being sued in his official capacity for declaratory and injunctive relief.

20. Defendant Elias Zerhouni, M.D. ("Zerhouni") is now and at all times relevant to this complaint a resident of Bethesda, Montgomery County, Maryland. Def. Zerhouni is a federal employee, whose official capacity is Director of The National Institutes of Health. His work address is now and at all relevant time to this complaint The National Institutes of Health, Bethesda, Maryland. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

21. Defendant William A. Biglow, Esquire ("Biglow") is now and at all times relevant to this complaint a resident North Potomac, Montgomery County, Maryland. Def. Biglow is a federal employee, whose official capacity is General Counsel, General Law Division, Office of the General Counsel, US DHHS. His work address is now and at all relevant time to this

12

complaint Office of the General Counsel, General Law Division, 330 Independence Avenue, S.W., Wilbur J. Cohen Federal Building, Washington, D.C. 20201. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

22. Defendant Julie S. Lu, Esquire ("Lu") is now and at all times relevant to this complaint a resident of Centreville, Fairfax County, Virginia. Def. Lu is a federal employee, whose official capacity is General Counsel, General Law Division, Office of the General Counsel, US DHHS. Her work address is now and at all relevant time to this complaint General Law Division, Office of the General Counsel, U.S. D.H.H.S., 330 Independence Avenue, S.W., Washington, D.C. 20201. She is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

23. Defendant John I. Gallin, M.D. ("Gallin") is now and at all times relevant to this complaint a resident Potomac, Montgomery County, Maryland. Def. Gallin is a federal employee, whose official capacity is Director, NIH CC, US DHHS. His work address is now and at all relevant time to this complaint NIH CC, Building 10-CRC-Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

24. Defendant Maureen E. Gormley, R.N. ("Gormley") is now and at all times relevant to this complaint a resident of Gaithersburg, Montgomery County, Maryland. Def. Gormley is a federal employee, whose official capacity is Chief Operating Officer, NIH CC, US DHHS. Her work address is now and at all relevant time to this complaint NIH CC, Building 10-CRC-

13

Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. She is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

25. Defendant Walter L. Jones ("Jones") is now and at all times relevant to this complaint a resident Haymarket, Fairfax County, Virginia. Def. Jones is a federal employee, whose official capacity was at some of the relevant times to this complaint Deputy Director for Management Operations in the Office of the Deputy Director for Management Operations, NIH CC, US DHHS. His work address is now and at all relevant time to this complaint NIH CC, Building 10-CRC-Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

26. Defendant Hillary Fitilis, Esquire ("Fitilis") is now and at all times relevant to this complaint a resident of Bethesda, Montgomery County, Maryland. Def. Fitilis is a federal employee, whose official capacity is Special Assistant to Chief Operating Officer. Her work address is now and at all relevant time to this complaint NIH CC, Building 10-CRC-Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. She is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

27. Defendant Rev. Owen Ray Fitzgerald, Ph.D. ("Fitzgerald") is now and at all times relevant to this complaint a resident of Bethesda, Montgomery County, Maryland. Def. Fitzgerald was Chief, Spiritual Ministry Department, NIH CC, US DHHS and then Special Assistant to Def. Jones. He is a federal employee, whose work address is now and at all relevant

time to this complaint NIH CC, Building 10-CRC-Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

28. Defendant Rev. Dominic Ashkar ("Ashkar") is now and at all times relevant to this complaint a resident is a citizen of the District of Columbia. During the time period at the beginning of the complaint Rev. Ashkar was an independent contractor supplied by Our Lady of Lebanon Maronite Church for the federal government at NIH CC, US DHHS. During the time period at the end of the complaint and now Rev. Ashkar is a federal employee, whose official capacity is Chaplain, NIH CC, US DHHS. His work address is NIH CC, Building 10-CRC-Hatfield Research Center, 10 Center Drive, Bethesda, Maryland 20892. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

29. Defendant Ann M. Berger, M.D. ("Berger") is now and at all times relevant to this complaint a resident of Gaithersburg, Montgomery County, Maryland. Def. Berger is a federal employee, whose official capacity is Chief of the Pain and Palliative Care Clinic, NIH CC, US DHHS. Her work address is now and at all relevant time to this complaint NIH CC, 10-CRC-Hatfield CRC, 10 Center Drive, Bethesda, Maryland 20892. She is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

30. Defendant Nyna Konishi ("Konishi") is now and at all times relevant to this complaint a resident of Germantown, Montgomery County, Maryland. Def. Konishi is a federal employee, whose official capacity is Administrative Officer for Def. Gallin. Her work address is

now and at all relevant time to this complaint NIH CC, Building 10-CRC-Hatfield Research

Center, 10 Center Drive, Bethesda, Maryland 20892. She is being sued in his individual

capacity for monetary damages and in his individual and official capacities for declaratory and

injunctive relief.

31. Defendant Deborah Britton ("Britton") is now and at all times relevant to this

complaint a resident of Columbia, Howard County, Maryland. Def. Britton is a federal

employee, whose official capacity is Contracting Officer. Her work address is now and at all

relevant time to this complaint and is a federal employee, whose work address is now and at all

relevant time to this complaint NIH, building 2 DEM-Two Democracy Plaza, 6707 Democracy

Blvd., Bethesda, Maryland. She is being sued in his individual capacity for monetary damages

and in his individual and official capacities for declaratory and injunctive relief.

32. Defendant Lawrence N. Self ("Self") is now and at all times relevant to this

complaint a resident of the State of Virginia and resides in Martinsburg, Virginia. Def. Self is a

federal employee, whose official work capacity is Director, Office of Equal Opportunity &

Diversity Management, NIH CC, US DHHS. His work address is now and at all relevant time to

this complaint Bethesda, Maryland. He is being sued in his individual capacity for monetary

damages and in his individual and official capacities for declaratory and injunctive relief.

33. Defendant Michael Chew ("Chew") is now and at all times relevant to this complaint

a resident of Montgomery Count, Maryland. Def. Chew is a federal employee, whose official

capacity is EEO Specialist in the Office of Equal Opportunity and Diversity Management ("OEO

DM") at NIH CC, US DHHS. His work address is now and at all relevant time to this complaint

Bethesda, Maryland. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

34. Defendant Victor Canino ("Canino") is now and at all times relevant to this complaint a resident of Rockville, Montgomery County, Maryland. Def. Canino at all pertinent times was a federal employee (now retired), whose official capacity was EEO Specialist in the Office of Equal Opportunity and Diversity Management ("OEO DM") at NIH CC, US DHHS. His work address at all pertinent times was Bethesda, Maryland. He is being sued in his individual capacity for monetary damages and in his individual and official capacities for declaratory and injunctive relief.

### V. Statement of Facts

35. Def. Fitzgerald has attended church at Our Lady of Lebanon Maronite Church, 7142 Alaska Avenue, N.W., Washington, D.C. 20012, has socialized and attended dinner at Defendant Rev. Dominic Ashkar's residence at the same location, attended graduate school at and graduated from American University at 4500 Massachusetts Avenue, N.W., Washington, D.C. 20016 and still attends functions there. He has given speeches and sermons at American University and Wesley Theology Seminary at the same address. Rev. Fitzgerald is an author and writes books, which he sells for profit within the District of Columbia.

36. Def. Jones has minimum contacts with and has availed himself to the District of Columbia. Mr. Jones has graduated from High School within the District of Columbia, works as professor teaching classes with the District, is a member of associations within the District, previously worked for the District of Columbia General Hospital, and is the Board Chairman of the D.C. Economic Empowerment Coalition.

37. Def. Gallin has minimum contacts with and has availed himself to the District of Columbia. Dr. Gallin is on the editorial boards of journals, which are incorporated and doing business with the District of Columbia, has presented at conferences and given speeches within the District of Columbia, and otherwise avails himself to the District of Columbia. Dr. Gallin is an author and writes books that he sells for profit within the District of Columbia.

38. Def. Fitilis has minimum contacts with and has availed herself to the District of Columbia. Def. Fitilis graduated from the Washington College of Law at American University in Washington, D.C.. Defendant Fitilis is an attorney. Fitilis' Test., *Heffernan* EEOC Adm. Hr'g Tr., 535:18-20 [Dkt. # 61-2, at p.7 of 20]. She is licensed to practice law in the District of Columbia. [Dkt. #43-3, at p. 2 of 9].

39. Def. Gormley has minimum contacts with and has availed herself to the District of Columbia. Ms. Gormley is an athlete, who admits that she routinely runs in races within the District of Columbia. She routinely presents at conferences within the District of Columbia.

40. Def. Britton has minimum contacts with and has availed herself to the District of Columbia. Ms. Britton attended school, routinely frequents, shops and visits friends within the District of Columbia.

41. On information and belief Defs. Konishi, Canino, Chew, and Self have minimum contacts with and has availed themselves to the District of Columbia

42. All individual defendants' contacts with and their insistences availing themselves to the District of Columbia should be subject to proof during discovery.

43. For the personal jurisdictional facts based upon the conspiracy of the Defendants, Plaintiff hereby incorporates by reference her statements of facts set forth below.

44. Plaintiff asserts that the primary place of injury was the District of Columbia. Rev. Heffernan's petition on his termination was being heard at the EEOC's Office of Federal Operations in Washington, D.C.. Rev. Heffernan's attorney's office was in Washington, D.C.. Rev. Heffernan's residency and place of work were both within the District of Columbia. Defendants in conspiracy hid the Plaintiff in a video storage closet and forbid the Plaintiff from entering the SMD when "the Jew" was there with the deliberate intent to conceal the Plaintiff from Rev. Heffernan and his attorneys in Washington, D.C. and to intimidate the Plaintiff from interstate communications and/or traveling to the District of Columbia to meet with Rev. Heffernan and his attorneys. The last thing the Defendants wanted was for Plaintiff to be sitting in Rev. Heffernan's attorneys office in Washington, D.C. on January 4, 2006 divulging what she saw and heard at NIH CC. The retaliation against the Plaintiff herself primarily occurred at the OFO in the District of Columbia.

45. Plaintiff hereby incorporates by reference herein all findings of facts and conclusions of law ("FOFCL") found by the US EEOC in Administrative Judge David Norken's Decision in *Henry Heffernan v. Michael Leavitt, Secretary US DHHS*, EEOC no. 120-2005-00226X (October 5th, 2006)("EEOC AJ Decision") [Dkt. #51-5]. Said decision is finally adjudicated having been upheld on appeal by *Henry Heffernan v. Michael Leavitt, Secretary US DHHS*, EEOC Petition No. 0320060079 (January 24, 2007) [Dkt. # 34-2, at p. 7]; *Henry G. Heffernan v. Michael O. Leavitt,* Appeal no. 0720020038 (December 4, 2007) [Dkt. #34-3, at p. 2].

46. Plaintiff's citations to the record refer to her evidence and documentary evidence submitted into the record by her motions for judicial notice, parts one to six, which she incorporates by reference herein as stated and cited below [Dkt. Nos. 43, 44, 47, 51, 57 & 64].

47. The National Institute of Health Clinical Center ("NIH CC") located at 9000 Rockville Pike, Bethesda, Maryland  20892.  EEOC AJ Decision, FOFCL, ¶20 [Dkt. #51-5, at 12 of 27].

48. The National Institutes of Health ("NIH") is a component of the Public Health Service in DHHS.  42 U.S.C. §§201(a), 202 & 203.

NIH CC is a federal research hospital housed in two adjacent buildings on the NIH campus:

a.) One building is the 14-story Warren Grant Magnuson Clinical Center, Building 10; &

b.) The other building is the 7-story Mark O. Hatfield Clinical Research Center ("CRC"), which is also called Building 10.  (Collectively the two buildings together are called Bldg. 10.)

49. Def. Zerhouni, M.D., Director of The National Institutes of Health was and is at all pertinent times under the direct supervision of Def. Leavitt, Secretary of DHHS, at all pertinent times had and now has knowledge of violations of Title VII within NIH and has failed to take corrective action and negligently supervised his subordinates.

50. Def. Gallin is and was at all pertinent times under the direct supervision of Defendant Zerhouni, M.D., Director of NIH.

51. Def. Gallin at all pertinent times had and now has knowledge of violations of Title VII within NIH CC and has failed to take corrective action and negligently supervised his subordinates.

52. Def. Jones was at some of the pertinent times Deputy Director for Management Operations in the Office of the Deputy Director for Management Operations ("CC ODDMO"). Jones' Tr., *Heffernan* EEOC Adm. Hr'g Tr. 1718:20-1719:2. [Dkt. #43-2, pg. 28 of 42]; EEOC AJ Decision, FOFCL, ¶1 [Dkt. #51-5, at 7 of 27].

20

53. Def. Jones began his employment at NIH CC as Deputy Director with all NIH Departments under his supervision. Over the years Def. Gallin has slowly and steadily removed the NIH Departments from under Def. Jones supervision and has made numerous changes to Def. Jones' position title. In 2008 Def. Jones' position was changed to Diversity Management and Miniority Outreach and removed from supervising any NIH CC Departments.

54. At all pertinent times until September of 2007 Def. Jones was in charge of providing leadership to the Spiritual Ministry Department ("SMD"). Jones' Test., *Heffernan* EEOC Adm. Hr'g Tr. 1719:3-12 [Dkt. #43-2, pg. 28 of 42].

55. On information and belief in September of 2007 Jones was removed from providing supervision of the SMD and permanently barred by NIH CC from any contact with SMD or its staff. Def. Jones is under the direct supervision of Def. Gallin, Director, NIH CC.

56. Def. Jones at all pertinent times had and now has knowledge of violations of Title VII within NIH and has failed to take corrective action.

Def. Fitzgerald was at all pertinent times Chief of the Spiritual Ministry Department ("SMD"). Fitzgerald's Tr., *Heffernan* EEOC Adm. Hr'g., 1022:7-10 [Dkt. #43-2, pg. 4 of 42]; EEOC AJ Decision, FOFCL, ¶1 [Dkt. #51-5, at 7 of 27].

57. Def. Fitzgerald at all pertinent times was a Clinical Pastoral Education Supervisor certified by The Association for Clinical Pastoral Education, Inc. ("ACPE").

There is an ACPE Clinical Pastoral Education ("CPE") program affiliated and housed at NIH.

58. Def. Fitzgerald was and is under the direct supervision of Def. Jones, Deputy Director for Management and Diversity. EEOC AJ Decision, FOFCL, ¶1 [Dkt. #51-5, at 7].

21

59. In 2007 Def. Fitzgerald was removed from being Chief of the SMD, because his leadership was "not normal" and was adjudicated to be discriminatory and retaliatory in violation of Title VII. Affidavit of Angela Wright-Kinney [Dkt. # 64-2, pg. 12 of 13].

60. In 2007 after being removed as Chief of the SMD, Def. Fitzgerald became the Special Assistant to Def. Jones.

61. In 2006 the Administration of NIH CC removed Def. Fitzgerald from being their ACPE CPE Supervisor.

62. On information and belief in September of 2007 the Administration of NIHCC removed Def. Fitzgerald from providing any services within the SMD and is permanently barred by NIH CC from any contact with SMD or its staff, but remains employed at NIH CC as Def. Jones' Special Assistant.

63. Angela Wright-Kinney ("Kinney") was Administrative Officer ("AO") of the SMD. Affidavit of Kinney [Dkt. # 64-2, pg. 5 and 12 of 13].

AO Kinney resigned from NIH CC effective on or about April 13, 2007, because of what she perceived and believed was discrimination and retaliation against her by the Defendants, because of her voicing her objections and being a witness in the Heffernan, Brenner, and instant matter.

64. At all pertinent times AO Kinney resided within the District of Columbia. On information and belief Ms. Kinney currently resides and works within D.C..

65. Dana C. Kelley ("Kelley") at all pertinent times and is now the Program Administrator for the SMD.

66. Def. Fitzgerald and his chain of command targeted Ms. Kelley for removal for being a cooperating witness with the EEOC. Def. Fitzgerald in furtherance of the plan attended a

conference on how to remove problem employees.

67.  For some of the pertinent time Plaintiff provided chaplaincy services to NIH CC as a part-time associate chaplain in the SMD under the direct supervision of Def. Fitzgerald. EEOC AJ Decision, FOFCL, ¶20 [Dkt. #51-5, at 12 of 27].

68.  Defendants continued in conspiracy to retaliate against the Plaintiff by lawfully terminating her twice for being a cooperating witness with the EEOC.

69.  Def. Ashkar at all pertinent times was and is a Lebanese Maronite Catholic priest, and was a contractor chaplain at NIH CC supplied by Our Lady of Lebanon Maronite Church. Later Def. Ashkar was a civil service chaplain (federal civil service employee) at NIH CC. EEOC AJ Decision, FOFCL, ¶20 [Dkt. #51-5, at 12 of 27]; Ashkar's Tr., Heffernan EEOC Adm. Hr'g., 406:1-407:19 [Dkt. #61-6, pg. 5 of 11]; and Fitzgerald's Tr., *Heffernan* EEOC Adm. Hr'g., 1094:21-1095:9 [Dkt. #43-2, pg. 6 of 42].

70.  Dr. Reeve Robert Brenner ("Brenner"), a Jewish Rabbi, was employed by NIH CC as a permanent part-time chaplain in the SMD under the direct supervision of Def. Fitzgerald.

71.  Brenner resides in Rockville, Maryland until he was unlawfully terminated in 2007 for being a cooperating witness with the EEOC.

72.  Dr. Brenner was represented by Attorney Irving Kator ("Kator") of the Law Offices of Irving Kator and Cathy A. Harris ("Harris") of Kator, Parks & Weiser, PLLC.

73.  Dr. Brenner by and through his attorneys has filed petitions with the MSPB, entitled *Reeve Brenner v. Mike Leavitt*, case no. DC-0752-07-0414-1-1, and the EEO formal complaint, entitled *Reeve Brenner v. Mike Leavitt*, case no. NIHCC-06-0009.

74. Rev. Gary Johnston ("Johnston") at all pertinent times was a chaplain at NIH CC assigned to SMD, but was on military leave being deployed to the Pentagon until February of 2007. On information and belief Rev. Johnston retired in February of 2007 under pressure from Def. Fitzgerald and his chain of command, because Rev. Johnston was a cooperating witness with the EEOC.

### Discrimination and Reprisal Against Rev. Heffernan in Violation of Title VII
### (Overt Acts in Furtherance of the Conspiracy)

75. Rev. Henry Heffernan ("Heffernan"), a Jesuit Roman Catholic priest since 1962, has extensive experience as a hospital chaplain. EEOC AJ Decision, FOFCL, ¶2 [Dkt. #51-5, at 7].

76. Rev. Heffernan was and is employed by NIH CC as a permanent chaplain in the SMD, except for the time period when he was unlawfully terminated from NIH CC. Rev. Heffernan was hired by NIH CC on November 8, 1988 and unlawfully terminated on July 20, 2004.

77. Rev. Heffernan was reinstated by orders of the MSPB and EEOC and returned to work in March of 2007.

78. Currently Rev. Heffernan continues to be employed by NIH CC as a Chaplain.

79. Some of the federal employees on Rev. Heffernan's witness list were: Rev. Johnston (retired under pressure), Rev. Karen Morrow (resigned under hostile, dysfunctional environment), Dr. Brenner (removed by unlawful charges and settled with forced retirement), Plaintiff (terminated within twenty-four hours of coming forward as a witness and then terminated for cause a second time within twenty-four hours of Rev. Heffernan's attorney notifying Def. Lu that Plaintiff was being added as a named witness) and Dana C. Kelley (defendants were in the process of moving towards progressive discipline when stopped by the

24

pile up of complaining chaplains).

80. Rev. Heffernan under the direct supervision of Def. Fitzgerald, as Chief of SMD until his removal in 2004.

81. Def. Ashkar conspired with the Defendants to deprive Heffernan of his Title VII protection to have Heffernan wrongfully disciplined and terminated to enable Def. Ashkar to obtain Heffernan's civil service position with the Agency. EEOC AJ Decision [Dkt. #51-5].

82. Def. Ashkar got Heffernan's position at NIH CC. Id. FOFCL, ¶21-23 [Dkt. #51-5, at pg. 12-13 of 27].

83. Def. Fitilis provided NIH CC and the Defendants with the unlawful legal advice to discipline and terminate Rev. Heffernan.

84. Def. Fitilis conspired with the Defendants in the plan to discipline and terminate Rev. Heffernan in violation of Title VII and has failed to take corrective action to implement Title VII protection at NIH CC.

85. Defs. Fitzgerald and Jones conspired to discipline and terminate Rev. Heffernan in violation of Title VII and failed to take corrective action to implement Title VII protection at NIH CC.

86. Defs. Fitzgerald and Jones conspired with Defs. Gormley, Gallin, and Fitilis to discipline and terminate Rev. Heffernan in violation of Title VII and have failed to take corrective action to implement Title VII protection at NIH CC.

87. Defs. Ashkar, Fitzgerald, Fitilis, Jones, Gormley, Gallin, and Fitilis came to a meeting of the minds and agreed in conspiracy to discipline and terminate Rev. Heffernan in violation of Title VII and agreed to not take corrective action to implement Title VII protection at

NIH CC.

88.   Defs. Ashkar, Fitzgerald, Fitilis, Jones, Gormley, Gallin, and Fitilis came to a meeting of the minds and agreed in conspiracy to have zero tolerance for Title VII protection and to retaliate against anyone who voiced objections and/or participated in EEO proceedings including the witnesses.

89.   Rev. Heffernan was and is represented at all pertinent times by Attorneys Irving Kator ("Kator") of Law Offices of Irving Kator and Attorney Cathy Harris ("Harris") of Kator, Parks & Weiser, PLLC, located at 1020 19th Street, N.W., Washington, D.C.  20036. EEOC AJ Decision, p.1 [Dkt. #51-5, at 2 of 27].

90.   Rev. Heffernan filed petitions with the Merit System Protection Board ("MSPB"), MSPB No. DC-0752-04-0756-I-1; and the EEOC, EEOC case no. 120-2005-00226X. During July of 2005 Rev. Heffernan had lost his MSPB complaint and dispositive motions were being heard at the EEOC or its dismissal was being considered.

91.   On October 27, 2005, Rev. Heffernan filed a timely petition with the EEOC at the Office of Federal Operations ("OFO"), Washington, D.C. asking for review of a Final Order issued by the MSPB concerning his claim of discrimination in violation of Title VII. *Heffernan v. Leavitt*, EEOC Petition 03A60015, reviewing MSPB No. D.C.-0752-04-0756-I-1, at pg. 1 [Dkt. # 43-3, pg.4].

92.   In 2007 both federal panels (the EEOC and MSPB) found that the Agency discriminated against Rev. Heffernan and ordered his reinstatement to NIH CC. *Henry Heffernan v. Michael Leavitt, Secretary US DHHS*, EEOC Petition No. 0320060079 (January 24, 2007) [Dkt. # 34-2, at p. 7]; and *Henry G. Heffernan v. Michael O. Leavitt,* Appeal no. 0720020038 (December 4, 2007) [Dkt. #34-3, at p. 2].

93. Def. DHHS Secretary Leavitt, by and through Defs. Gallin, Gormley, Jones, Fitilis, Fitzgerald, and Ashkar, discriminated and retaliated against Rev. Heffernan and wrongfully disciplined and terminated Rev. Heffernan in violation of Title VII. *Heffernan* EEOC AJ Decision, in its entirety [Dkt. #51-5].

94. Defs. Leavitt, Zerhouni, and Gallin are aware that there is a policy and practice of discrimination and reprisal in violation of Title VII at NIH and NIH CC and have failed to reasonably supervise subordinates and remedy the deficiencies. Defs. Leavitt, Zerhouni, Gallin, Gormley, and Jones having had the knowledge of the conspiracy to violate the Rev. Hefferan's Title VII, civil rights and constitutional rights and of the violations committed, and having had the power to prevent these wrongs, neglected and/or refused to do so.

**Hiring Def. Fitilis in Specially Created Position to Improve Defs.' Litigation Advantage and Def. Fitilis' Legal Advice to Oppose Rev. Hefferan's Title VII Protection (Overt Act in Furtherance of the Conspiracy)**

95. In violation of Title VII and the Federal Constitution management at NIH CC has a policy and practice to recruit personnel that management considers to be compatible their informal agreements and be "in the loop" and/or "family" that has a policy and practice of discrimination (commonly known as "the plantation"), and then create positions for which the person is hired.

96. Beginning in December of 2003 Def. Fitilis was and is now employed by NIH CC in the position of Special Assistant to the Chief Operator Officer, Def. Gormley. Fitilis' Test., *Heffernan* EEOC Adm. Hr'g Tr., 524:10-525:10 [Dkt. #61-2, at pg. 5 of 20]. Previously she worked for the Office of General Counsel, General Law Division with DHHS. Id. 525:14-18.

97. Def. Gormley created a position for Def. Fitilis, when she was informed that Defendant Fitilis was looking for a position and would come and work for Def. Gormley. Id. 526:3-16.

98. Def. Fitilis admits that Def. Gormley needed a special assistant for employee issues in the Clinical Center because "what [Gormley] was finding was that most of the Clinical Center cases would end up in litigation." Id. 526:17-22.

99. Said position filled by Def. Fitilis was to "support and guide the management officials in addressing performance and conduct issues." Id. 527:16-528:2 [Dkt. #61-2, at pgs. 5-6of 20].

100. Def. Fitilis is an attorney. Id. 535:18-20 [Dkt. # 61-2, at p.7 of 20]. She is licensed to practice law in the District of Columbia [Dkt. #43-3, at p. 2 of 9]

101. Def. Fitilis by 2205 had been involved in giving advice for 38 Terminations at NIH CC. Id. 538:1-6 [Dkt. # 61-2, at p. 8 of 20].

102. Def. Fitilis is also known as "The Terminator" and "staff attorney," although those are not her official title.

103. Def. Fitilis admits that if a policy is not in writing, then employees might not know what the policy is and that it could be applied differently to different people. Id. 534:11-22 [Dkt. #61-2, at p. 7 of 20].

104. Def. Fitilis admits that she does not uphold the Roman Catholic doctrine that a Catholic priest cannot be ordered to give communion to a non-Catholic patient; that the employee must follow instructs that are in direct conflict to the instructions of his faith; and that she gave this legal advice to Def. Fitzgerald. Id. 547:8-18; 548:18-549:11 [Dkt. #61-2, at p. 10 and 11 of 20].

28

105. Def. Fitilis admits that she did not calculate how many CPE units should be accredited to Rev. Heffernan, although she gave Defs. Fitzgerald and Jones the legal advice to remove Rev. Heffernan from service for not having sufficient CPE units. Id. 551:21-552:1 [Dkt. #61-2, at pgs. 11-12 of 20].

106. Because Rev. Heffernan would not defy Roman Catholic instructions, orders, and practices, Def. Fitilis admits she declared that Rev. Heffernan was unable to be rehabilitated. Id. 557:16-19; 573:1-5 [Dkt. # 61-2, at p. 13of 20 and p. 17 of 20]. See *Heffernan v. Leavitt*, EEOC no. 03A60015, at p. 4 [Dkt. # ], stating "the evidence of record clearly establishes that the central point of contention between petitioner and agency management that led to the events at issues was what [Rev. Heffernan] perceived as incongruence between the practices and teachings of his Catholic faith and the practices, including the concept of 'generic chaplaincy,' advocated by his supervisor, a Methodist minister."

107. Def. Fitilis admits that her opinion that Rev. Heffernan was unable to be rehabilitated did not change even though Rev. Heffernan agreed to take CPE. Fitilis' Test., *Heffernan* EEOC Adm. Hr'g Tr., 578:13-579:7 [Dkt. #61-2, at p. 18 of 20].

108. After the EEOC found that DHHS discriminated against Rev. Heffernan in violation of Title VII, Def. Fitilis refused to comply with all of the decision. [Dkt. #51-6] The EEOC ordered that notices of the finding of discrimination be placed in "conspicuous places," including "all places where notices to employees are customarily posted." Id. Def. Fitilis only placed one notice over the copy machine in the SMD office, which could not be read by a person standing in front of the copier.

## Def. Fitzgerald's Recruitment of Plaintiff
### (Overt Acts in Furtherance of the Conspiracy)

109. Plaintiff asserts that in furtherance of the conspiracy against Title VII's implementation at NIH CC and the conspiracy to have a policy and practice of promoting discrimination that Def. Fitzgerald searched the United States for a chaplain to become a member of the "family" and "in the loop."

110. Def. Fitzgerald did not advertise and/or announce the position within DHHS or the public.

111. In the summer of 2005 Def. Fitzgerald finds Plaintiff's electronic mail ("email") address by scavenging through Rev. Morrow's abandoned, defunct files.

112. Def. Fitzgerald emails Plaintiff and states that he is interest in Plaintiff becoming a student in the clinical pastoral educational program at NIH CC, approved and certified by The Association for Clinical Pastoral Education, Inc. (ACPE).

103. In the summer of 2005 Plaintiff emails Def. Fitzgerald in response stating she has been accepted into another Clinical Pastoral Education ("CPE") program.

104. In August of 2005 Def. Fitzgerald invited Plaintiff out to dinner at a restaurant, The American Grill, in The Bethesda Marriot Hotel near NIH CC allegedly to interview her for employment at NIH CC to work a week or two in August of 2005. See, electronic mail from Def. Fitzgerald to Plaintiff dated August 12th, 2005 [Dkt. #64-10]. Def. Fitzgerald states that the Plaintiff's services will be "processed through Human Resources." Id.

105. In an act in furtherance of the conspiracy Def. Fitzgerald represents the position to be federal employment and never mentions an independent contractual relationship. Def. Fitzgerald and Plaintiff met and had dinner, wherein:

a.) Fitzgerald offered her a job performing substitute work at NIH CC;

b.) Plaintiff accepted said offer;

30

c.) No written contract was written or executed;

d.) An oral contract was established; and

e.) Stated that Plaintiff's employment would be processed through Human Resources.

106. In furtherance of the conspiracy Def. Fitzgerald has the meeting with Plaintiff at a restaurant and thereby prevents Plaintiff from meeting and/or communicating with other NIH CC chaplains.

107. On or about August 16 to 19, 2005 Plaintiff works at NIH CC.

108. During this time Def. Fitzgerald makes remarks about his unlawfully disciplining and terminating Heffernan. Def. Fitzgerald additionally makes anti-Semitic remarks about Dr. Brenner and discloses adverse employment action Def. Fitzgerald has taken against Dr. Brenner because he is a Jew.

109. During this time period Plaintiff and DHHS do not execute a written contract for Plaintiff's services and/or work. No written contract exists for this time period of work performed by the Plaintiff.

110. Plaintiff submits a time sheet to Dana C. Kelley ("Kelley"), who is the Program Administrator, SMD.

111. Plaintiff is paid $480.00 by check directly from NIH. [Dkt. #51-2, at p. 2 of 20]. Def. Ftizgerald makes arrangements for Plaintiff to return to work over Thanksgiving week, 2005.

112. Plaintiff was a material witness to the Agency's and management officials' violations of Title VII protected rights against Rev. Henry Heffernan and Dr. Reeve Brenner.

**Admissions by Def. Fitzgerald to Plaintiff**
**(Overt Acts in Furtherance of the Conspiracy)**

113. During August through December of 2005 Def. Fitzgerald made admissions to Plaintiff regarding Def. Fitzgerald's and NIH CC's reasons for suspending and ultimately terminating Rev. Heffernan and discriminatory remarks about Rev. Heffernan's being Roman catholic, and other statements evidencing a motive and intent to violate Rev. Heffernan's Title VII protection. EEOC AJ Decision, FOFCL, ¶20-22 [Dkt. #51-5, at p. 12-13 of 27].

114. Plaintiff never met or spoke directly with Rev. Heffernan prior to December 23, 2005.

115. Plaintiff's first contact with Rev. Heffernan was a telephone message for Rev. Heffernan by and through Dr. Brenner on or before December 21, 2005. See, Affidavit of Father Henry Heffernan [Dkt. #64-4]

## Def. Fitzgerald's Preoccupation with Eastern Religions

116. Def. Fitzgerald exhibited an exceptional interest in Byzantine and Eastern Orthodox Christian religions and could be described as a "groupie" regarding said religions.

117. Def. Fitzgerald attends the Antiochian Orthodox Church Study Program and obtains a certificate.

118. Def. Fitzgerald utilizes the services of a Greek Orthodox priest in Los Angeles, California and calls said priest his "spiritual father."

119. Def. Fitzgerald attends the Antiochian Orthodox Church Study Program and obtains a certificate.

120. Def. Fitzgerald takes classes at the University of Balamaand, Lebanon (an Orthodox graduate school) and if he completes the requirements Fitzgerald can obtain a Masters of Art degree. EEOC AJ Decision, FOFCL, ¶23, n. 4 (citing to Rogler Testimony, 1348) [Dkt. #51-5, pg. 14]

32

### Dream Team Scheme
### (Overt Acts in Furtherance of the Conspiracy)

122. Def. Fitzgerald stated to Plaintiff that he was going to have his "Byzantine dream team" with Def. Ashkar and the Plaintiff being hired in the SMD and never hiring another Roman Catholic priest. Additionally as a part of the dream team scheme, there is to be no rabbi/chaplain employed at NIH CC. See, EEOC AJ Decision, FOFCL, note 4 [Dkt. #51-5, at pg 14 of 27].

123. Def. Fitzgerald admitted to the Plaintiff that previously Def. Fitzgerald had a meeting of the minds with Def. Fitzgerald's chain of command to eliminate the position of rabbi/chaplain at NIH CC, however Patient Representative Marvin Cohn objected so strongly that NIH CC was forced to hire "that Jew" [referring to Dr. Brenner].

124. To be able to hire Def. Ashkar, Def. Fitzgerald in conspiracy with Defendants had to bring about the termination of Rev. Heffernan's permanent civil service employment. The plan involved with this illegal process to remove Rev. Heffernan from his permanent civil service position and replace him with Def. Ashkar, to eliminate the rabbi/chaplain position, and to have no more hirings of Roman Catholic priests has been coined "the dream team scheme."

### So-called Generic Chaplaincy
### (Overt Acts in Furtherance of the Conspiracy)

125. Defs. Fitzgerald and Jones are and were at all pertinent times proponents and supporters of multi-faith chaplaincy. EEOC AJ Decision, FOFCL, ¶5 [Dkt. #51-5, at 8 of 27]; Def. Fitzgerald's interpretation of multi-faith chaplaincy is liberal Protestant chaplaincy.

126. Def. Fitzgerald's interpretation of multi-faith chaplaincy requires the chaplain to ignore his/her own religious affiliations, traditions, liturgical expressions and replace them by acting and dressing in a manner that is consistent with liberal Protestantism.

33

127.  Def. Fitzgerald's interpretation and implementation of multi-faith chaplaincy was comprised of policies and practices to discriminate against patients and chaplains who were Roman Catholic, Jewish, and other minority religions.

128.  Rev. Heffernan opposed multi-faith chaplaincy as implemented at NIH CC and raised these issues and objections frequently with his supervisors, Fitzgerald and Jones.  EEOC AJ Decision, FOFCL, ¶6 [Dkt. #51-5, at –8-9 of 27]; and incorporation by reference the testimony cited herein.

129.  Rev. Heffernan's opposition to multi-faith chaplaincy is a sincere bona fide religious belief based on Rev. Heffernan's interpretation of the foundations of his Roman Catholic faith.  EEOC AJ Decision, FOFCL, ¶7-8 [Dkt. #51-5, at 9 of 27].

### Brookline, Massachusetts
### (Overt Acts in Furtherance of the Conspiracy)

130.  In the fall of 2005 Def. Fitzgerald insisted that Plaintiff had to meet him in Boston, Massachusetts for an interview for said job.

140.  On or about October 28 to 29, 2005 Plaintiff met Def. Fitzgerald in Boston and attended an Orthodox Christian Association of Medicine, Psychology, and Religion (OCAMPR) conference, but now Def. Fitzgerald stated to Plaintiff that no interview was necessary because Plaintiff already had the position.  Def. Fitzgerald never mentions that Plaintiff would be considered to be an independent contractor.

141.  Def. Fitzgerald's determining the place of the meeting to be in Brookline, Massachusetts prevents the Plaintiff from meeting and/or talking with the other NIH CC chaplains.

### November to December, 2005

142. From August of 2005 to December 23, 2005 and/or January of 2006 Plaintiff worked as an associate chaplain for NIH CC.

144. On or about November 16, 2005 Plaintiff returns to work at NIH CC working part-time as an associate chaplain for at least twenty (20) hours per week.

145. NIH CC and Plaintiff do not execute a contract and no written contract exists.

146. Plaintiff was not in the business of providing chaplain services and was not a sole proprietor of a business.

147. Plaintiff was not employed by a temporary service.

148. Plaintiff was directly hired as an individual and terminated as an individual by NIH CC, DHHS, by and through Defs. Fitzgerald and/or Jones.

149. Def. Fitzgerald telephones Plaintiff repeatedly when she is off duty. NIH CC controls all aspects of the Plaintiff's method of service and orders her to perform her services in the style of its defined generic chaplaincy, as opposed to any other acceptable style of chaplaincy.

150. Def. Fitzgerald gives Plaintiff her work assignments, assigning her tasks on a day by day basis. See, Memo from Ms. Kelley to Plaintiff dated December 20, 2005 [Dkt. #51-2, at pg. 14 of 20]; Department of Spiritual Ministry, On-Call List for December 2005 [Dkt. #51-2, at pg. 12 of 20];

151. Def. Fitzgerald believed that Plaintiff as an associate chaplain was not at the educational and experience level to function independently without his direct supervision, management, and/or control. Fitzgerald's Tr., *Heffernan* EEOC Adm. Hr'g., 16:24-10b to 11a and 16:25-20 to 21 [Dkt. #43-2, pg. 22 of 42].

35

152. Plaintiff was given keys to the Spiritual Ministry Department ("SMD"), which was located in Room 14S231, on the 14th floor of the Warren Grant Magnuson Clinical Center. Plaintiff's work requires her to be on-site at NIH CC for her performance of services as an associate chaplain.

153. NIH CC supplies the Plaintiff with all principal tools and equipment for performance of her services at the premises.

154. Plaintiff's services as an associate chaplain are an integral part of the mission and function of the Spiritual Ministry Department and the mission and function of NIH CC as a federal research hospital serving patients.

155. Plaintiff's services were exactly the same type of services performed by the Civil Service chaplains. See, Affidavit of Father Henry Heffernan, ¶¶4-5 [Dkt. #64-3, at pgs. 3-5]; Affidavit of Father Henry Heffernan [Dkt. #64-5]; Affidavit of Rabbi Reeve Robert Brenner, ¶¶1, 10 [Dkt. #64-7].

156. Def. Fitzgerald made and approved of the Plaintiff's work schedule. See, Department of Spiritual Ministry, On-Call List for December 2005 [Dkt. #51-2, at pg. 12 of 20]; Memo from Ms. Kelley to Plaintiff dated December 5, 2005 [Dkt. #51-2, at pg. 12 of 20].

157. On November 7, 2005 Ms. Kelley sends Yasim Coates ("Coates"), Coordinator, Hospitality Services, NIH CC describing Plaintiff as "the employee." [Dkt. # 51-2, at p. 6]

158. On November 17, 2005 Ms. Coates sends Dana Kelley an electronic mail message scheduling Plaintiff to attend NIH CC's "New Employee Orientation." [Dkt. # 51-2, at p. 5].

159. NIH CC has Plaintiff attend its "New Employee Orientation" on November 28-29, 2008.

160.  Ms. Kelley completes the "SPIRITUAL MINISTRY DEPARTMENT ORIENTATION CHECKLIST," stating "Preparation for Employment:" and labeling Plaintiff as "employee." [Dkt. # 51-2, at p. 7 of 20].

161.  Def. Fitzgerald controls details of Plaintiff's work, such as having her carry the 162. pager and assigned her to be responsible for all chaplain services available to all of NIH CC. See memorandum from Ms. Kelley to Plaintiff [Dkt. # 51-2, at p. 9 of 20]; and Ms. Kelley's memo to Plaintiff dated December 20, 2005 [Dkt. #51-2, at pg. 14 of 20].

162.  NIH CC pays the Plaintiff based on time worked and not on accomplished results.

163.  Plaintiff completes and submits a time sheet for her work performed in November of 2005.  See timesheet entitled November 2005 [Dkt. # 51-2, at p. 11 of 20].

164.  NIH CC deposited Plaintiff's paycheck for her work for the month of November of 2005 into her personal checking account by direct-deposit.

165.  Ms. Coates send Ms. Kelley an electronic mail message noting Plaintiff is an "employee" and schedules Plaintiff to attend NIH CC's Patient Safety and emergency Procedures training.  [Dkt. #51-2, at pg. 10 of 20].

166.  According to NIH standards and policies Plaintiff's services are personal in nature and could result in an employer-employee relationship.  See, CERTIFICATION FOR PROFESSIONAL SERVICES ACQUISITIONS (NIH FORM 2544 (Rev'd 11/85)) [Dkt. #51-3]].

167.  Plaintiff was not assigned to perform chaplaincy services for the Pain and Palliative Care Clinic ("PPCC").  See, Affidavit of Father Henry Heffernan, ¶¶ 2-3[Dkt. #64-3, at pgs. 3-5]; and Affidavit of Dr. Reeve Robert Brenner, ¶¶3-4 [Dkt. #74-7].

37

### Forced Chaplaincy Services on Terminally Ill Jehovah Witness Patient
### (Overt Act in Furtherance of the Conspiracy)

168. On or about November 19th, 2005 Def. Fitzgerald instructs Plaintiff that he will be unable to come to work on time on or about November 21st, 2005 and that he is scheduled to be in the PPCC. The day is Plaintiff's scheduled day off.

169. Def. Fitzgerald instructs Plaintiff to cover for Def. Fitzgerald briefly in the PPCC until he arrives.

170. The PPCC instructs Plaintiff to provide chaplaincy services for a terminally Jehovah Witness patient, who has not requested such services. The patient declines services from the Plaintiff.

### Concealment in Video Storage Closet and Infringement on Speech, Travel & Association
### (Overt Act in Furtherance of the Conspiracy)

171. From November to December 20th, 2005 Def. Fitzgerald assigned Plaintiff to video storage closet, Room 7-254, at all pertinent times was then called "Copier Room" on the seventh floor Mark O. Hatfield Clinical Research Center, instead of in the SMD in Room 14S231 in the South Tower, called by Warren Grant Magnuson Clinical Center.

    a.) Room 7-254 did not have a desk, chairs, or a computer in it.

    b.) It had a large video storage unit stored in it, which took up most of the room.

    c.) The ceiling panels were hanging down with electrical wires hanging down from the exposed area.

    d.) The room has been changed since Plaintiff's termination.

172. Def. Fitzgerald assigned Plaintiff to Room 7-254 and ordered her to avoid any 173. contact with "the Jew", meaning Dr. Brenner. Based upon various comments of Def. Fitzgerald, Plaintiff formulated the opinion and belief that Def. Fitzgerald assigned Plaintiff to Room 7-254

to segregate her and conceal her from Rev. Heffernan and his attorneys, and from Dr. Brenner and the other chaplains.

173. On information and belief Def. Fitzgerald was concealing a material witness from Rev. Heffernan and his attorneys.

## Termination of Rev. Snyder
### (Overt Acts in Furtherance of the Conspiracy)

174. Rev. Kathryn Snyder ("Snyder") was a contract chaplain at NIH CC assigned to the SMD until on or about December 1, 2005.

175. The Defendants had renewed Snyder's contract for another year of services from December 1, 2005 to November 30, 2006.

176. The Defendants revoked Snyder's contract for the second year of service from December 1, 2005 to November 30, 2006.

177. Plaintiff alleges that the Agency's revocation of Snyder's contract for services from December 1, 2005 to November 30, 2006 violated Title VII and Snyder's constitutionally protected rights.

178. Def. Fitzgerald admitted to Plaintiff that Def. Fitzgerald requested Snyder's contract be terminated, because Def. Ashkar was moving Snyder's Protestant Bible in the Chapel and not returning it, and Def. Ashkar objected to Defendant Fitzgerald when Snyder left a note in her Bible that to whom ever was moving her Bible to please put it back when they were done and that Defs.Fitzgerald and Ashkar in a derogatory manner confronted Snyder about said note which is alleged herein to violate Title VII and the U.S. Constitution.

179. On information and belief Def. Ashkar wanted his religion's Bible to be the only Bible in the Chapel at NIH CC.

180. Defs. Leavitt, Zerhouni, and Gallin are aware that there is a policy and practice of discrimination and reprisal in violation of Title VII at NIH and NIH CC and have failed to reasonably supervise subordinates and remedy the deficiencies.

181. Defs. Gallin, Gormley, Fitilis, and Jones having had the knowledge of the conspiracy to violate the Rev. Synder's Title VII, civil rights and constitutional rights and of the violations committed, and having had the power to prevent these wrongs, neglected and/or refused to do so.

### Def. Ashkar AWOL While Covering for Def. Fitzgerald and Patient's Suicide

182  On information and belief Defs. Gallin, Gormley, and Jones authorized, approved, and supervised the architectural design and construction of the Mark O. Hatfield Clinical Research Center ("CRC"), in particular the seven story atrium with open, unimpeded spaces off of each floor which created a seven floor opening.  The Mark O. Hatfield CRC has an atrium in the lobby that reaches to the ceiling of the building and comprises an opening rising seven floors.

183. On information and belief Defs. Gallin, Gormley, and Jones authorized and instructed that the psychiatric units of NIH CC be located on the seventh floor of the CRC with the psychiatric patients walking by the open atrium to a seven floor space without proper safeguards to a patient jumping off the seventh floor.

184. On information and belief Defs. Gallin, Gormley, and Jones ordered that the psychiatric units be placed on the seventh floor over the objections of many of the psychiatrists and psychiatric staff.

185. On information and belief Defs. Gallin, Gormley, and Jones believed that the ascetics and looks of the physical premises were more important than risk mangagement of psychiatric patients.

186. On information and belief from on or about December 06, 2005 to December 12, 2005 Def. Fitzgerald is on leave and for some of the time is attending a conference in California. Def. Fitzgerald instructs Def. Ashkar to be in charge of the SMD during Defendant Fitzgerald's absence and for Def. Ashkar to carry the Protestant pager.

187. On or about December 9, 2005 Def. Ashkar is in charge of the SMD, NIH CC, DHHS due to the absence of Def. Fitzgerald and Fitzgerald's appointment of Def. Askhar as being in charge of the SMD.

188. On or about December 9, 2005 Def. Ashkar came to work late, left work early, and worked less than three hours.

189. On or about December 9, 2005 Def. Ashkar left work early to perform a Mass Ceremony at a church in Virginia, while he was designated to be on call for emergencies at NIH CC.

190. A patient committed suicide by climbing over the retaining wall and jumping off seventh floor and falling through the Atrium of the CRC in Building 10 at NIH CC on or about December 9, 2005.

191. On or about December 9, 2005 the Plaintiff telephoned Def. Ashkar that his presence was urgently needed at NIH CC due to the death of a patient, and other patients and staff being upset.

    a.) Plaintiff stated to Def. Ashkar that all Heads of Departments were being called to the seventh floor beside the Atrium of the CRC.

    b.) Def. Ashkar refused to return to NIH CC stating that he was in Virginia and going to perform a mass.

192.  On December 9, 2005 after the patient committed suicide and Def. Ashkar refused to return to NIH CC, Plaintiff Rogler telephoned Def. Fitzgerald who was at a conference in California. In response D. Fitzgerald stated that he had to attend the conference and hung up on her.

193.  Plaintiff was a witness to the aftermath of a patient suicide at NIH CC on or about December 9, 2005, to the alleged improper handling of the incident by Defs. Fitzgerald and Ashkar, and Def. Ashkar's appearance of working two different jobs concurrently.

194.  On information and belief Def. Ashkar was working concurrently at NIH CC and a Maronite Church in Virginia during the time period that he had a written contract to work as a chaplain for NIH CC.

195.  On information and belief Def. Ashkar would submit monthly time sheets alleging to have worked at NIH CC, when in fact Def. Ashkar was not on the NIH CC premises. On or about December 12, 2005 Plaintiff met with Laura Chisholm ("Chisholm"), Service Chief, NIH CC. Chisholm helps Plaintiff prepare a memorandum for Def. Fitzgerald.

196.  Plaintiff objected to alleged discrimination to Laura Chisholm (Chisholm), Service Chief, Defs. Gormley, and Jones.

197.  Def. Ashkar is not disciplined for being AWOL and refusing to handle a crisis when he is on call on December 9th, 2005.

### Operation Clean Sweep
### (Overt Acts in Furtherance of the Conspiracy)

198.  In December of 2005 Def. Fitzgerald states to Plaintiff that there is a plan called "clean sweep" that had been approved by all his chain of command "all the way up" past Def.

Gallin to retaliate against all witnesses in the *Heffernan* matter who cooperated with the complainant.

    a.  The plan was to terminate Ms. Kelley and Dr. Brenner one at a time.

    b.  Chaplain Johnston was going to be pressured into retiring in February of 2006.

    199.  On or about December 20, 2005 Dana Kelley gives Plaintiff an office with a computer in the SMD in the South Tower.

    200.  On or about December 21, 2005 Plaintiff meets with Brenner and discusses that she is a witness to statements made by Def. Fitzgerald that are relevant to the *Heffernan* EEOC hearing. On December 21, 2005 Dr. Brenner (while Plaintiff was present) leaves a telephone message for Rev. Heffernan on his answering machine that the Plaintiff has come forward as a witness.

    201.  On December 23, 2005 Dr. Brenner has a telephone conversation with Rev. Heffernan in Plaintiff's presence.

### Def. Ashkar's Overt Acts of Anti-Semitism
### (Overt Acts in Furtherance of the Conspiracy)

    202.  In December of 2006 Def. Ashkar delivered a monologue to Plaintiff that the rabbi's position at NIH CC should be eliminated and other anti-Semitic statements.

    203.  On information and belief Def. Ashkar openly prays during public services for the conversion of the Jews to his religion.

    204.  Def. Ashkar forms hands in the shape of a gun with his index finger extended and the other fingers in the shape of a fist. He points his finger at Dana Kelley and acts like he is pulling the  trigger of a gun. Def. Ashkar then states first you are fired [to Dana Kelley]. Then

Def. Ashkar points his index finger out again like a gun and points it at the Plaintiff and acts like he is pulling a trigger. Then Def. Ashkar states then you are fired [to Plaintiff.].

### December 22, 2005 Meeting Between Def. Jones and Plaintiff

205. On information and belief on December 22, 2005 Def. Jones asks Kelley to have Plaintiff telephone Defendant Jones.

206. On December 22, 2005 Kelley instruct Plaintiff to telephone Def. Jones to schedule a meeting between Plaintiff and Def. Jones.

207. On December 22, 2005 Def. Jones and Plaintiff meet.

    a.   Def. Jones encourages Plaintiff to discuss her concerns with Def. Jones during said meeting.

    b.   Plaintiff discusses Fitzgerald's communications to Plaintiff that the EEOC found to violated Title VII, her concerns about Def. Ashkar working to jobs at the same time, her own problems with Fitzgerald's discrimination against plaintiff, Fitzgerald's discrimination against Dr. Brenner that she would testify for Heffernan, and other concerns. Plaintiff's speech was constitutionally protected speech.

    c.   Def. Jones states to Plaintiff that Def. Fitzgerald's conduct is "wrong" and states that Def. Jones will schedule a meeting with Def.Fitzgerald the next day (December 23, 2005) and that Plaintiff is not to talk with Def. Fitzgerald until after Def. Jones meets with Def. Fitzgerald.

208. On or about December 22, 2007 Plaintiff informed Def. Jones that she opposed discrimination against Rev. Heffernan, Dr. Brenner, and herself and that she was going to contact

the attorneys in the Heffernan matter to testify in said matter. Further objected to Def. Ashkar's

being AWOL and unfortunate suicide event.

### December 23, 2005 Meeting Between Defs. Jones & Fitzgerald and Plaintiff
### (Overt Acts in Furtherance of the Conspiracy)

209. On information and belief on December 23, 2005 Defs. Jones and Fitzgerald meet

to discuss Plaintiff's concerns.

210. On December 23, 2005 Def. Jones has Def. Fitzgerald and Plaintiff meet with

Defendant Jones.

    a. Def. Jones states to Plaintiff that Def. Jones "has good news and bad news" for

       Plaintiff. Def. Jones states to Plaintiff that NIH is a big family and they have

       worked with each other for years and that he will not take the time to sort out the

       confusion.

    b. Def. Jones states to Plaintiff that Def. Jones is terminating Plaintiff's alleged

       "contract without cause."

    c. Def. Jones states to Plaintiff that Plaintiff has no legal rights and that Def. Jones

       can do "whatever he wants" to Plaintiff.

    d. Def. Jones states to Plaintiff that NIH and Def. Jones personally will give Plaintiff

       a "good reference" if Plaintiff "lets by-gones be by-gones" and "not tell anyone

       what [Plaintiff] has seen and heard at NIH."

    e. Plaintiff considered this to be a threat and an attempt to intimidate her as a

       witness to discrimination and retaliation.

    f. Plaintiff stated to Defs. Jones and Fitzgerald that she is still going to contact

       Heffernan's attorneys.

45

211. Defs. Leavitt, Zerhouni, and Gallin are aware that there is a policy and practice of discrimination and reprisal in violation of Title VII at NIH and NIH CC and have failed to reasonably supervise subordinates and remedy the deficiencies.

212. Defs. Gallin, Gormley, and Jones having had the knowledge of the conspiracy to violate the Plaintiff's Title VII, civil rights and constitutional rights and of the violations committed, and having had the power to prevent these wrongs, neglected and/or refused to do so.

**Defs.' Interference with Functioning and Investigation of a Federal Officer, AO Kinney, in Performance of Her Duties, Unlawful Removal of AO Kinney, and Unlawful Replacement with Def. Konishi (Overt Acts in Furtherance of the Conspiracy)**

213. Defendants entered into an expressed and/or implied agreement to deprive the Plaintiff of her constitutional and statutory rights, privileges and immunities by interfering with the investigation of Defs. Fitzgerald and Jones' termination of Plaintiff on December 23, 2005 by the Administrative Officer ("AO") for the Spiritual Ministry Department ("SMD").

214. Kinney is a federal officer as defined by 42 U.S.C.A. §1985.

215. It was exclusively Kinney's duty and responsibility to investigate and make a final conclusion on whether or not to support the termination of the Plaintiff on December 23, 2005, because Kinney was the one and only Administrative Officer for the SMD on December 23, 2005. Affidavit of Angela Wright-Kinney [Dkt. # 64-2, p. 5 of 13].

216. On December 28, 2005 Plaintiff telephoned Ms. Kinney, AO for SMD and explains that Def. Jones had stated to her that she was terminated. AO Kinney states that she had not been informed of Plaintiff's termination by anyone.

46

217. On December 28, 2005 AO Kinney further stated to Plaintiff that Def. Jones did not have the power or authority to terminate Plaintiff's services independently and without Ms. Kinney conducting an investigation and agreeing with the termination.

218. On December 28, 2005 AO Kinney promised Plaintiff that she was going to conduct an investigation of said matter and to call back later and come to her office.

219. Defendants participated in a conspiracy to deprive the Plaintiff of property interest in her job, good reputation and constitutional and statutory rights by preventing Plaintiff's Administrative Officer Kinney from investigating Defs. Jones' and Fitzgerald's actions, omissions, and wrongdoings.

220. Later on December 28, 2005 Plaintiff telephoned Ms. Kinney, wherein Ms. Kinney stated to Plaintiff that Defs. Gallin and Jones had removed her from investigating said matter and had replaced Ms. Kinney with Gallin's Administrative Officer, Def. Nyna Konishi and for Plaintiff to come to Ms. Kinney's office to meet with Def. Konishi.

221. Defendants participated in a conspiracy to what is commonly known as rubber-stamping the decisions of Defs. Jones' and Fitzgerald.

222. Later on December 28, 2005 before 4:16 p.m. Plaintiff went to AO Kinney's office. AO Kinney was in her office and Def. Konishi came to the outer office to meet with Plaintiff:

    a.   Plaintiff and Def. Konishi met in the outer office.

    b.   Def. Konishi stated to Plaintiff that there would be no investigation of her termination and that Def. Konishi was going to just sign off on it.

    c.   Def. Konishi stated to Plaintiff that Plaintiff was terminated for the convenience of the government without cause and would get a neutral reference.

47

    d.  Def.Konishi provided Plaintiff with a copy of the "Order For Supplies Or Services" ("PO") and Konishi underlined "52.249-1 Termination for Convenience of the Government (Fixed Price) (Short Form) (Apri 1984).

    e.  Plaintiff never executed said contract.

    f.  Def. Konishi states to Plaintiff that Plaintiff has no legal rights. Plaintiff states to Def. Konishi that Plaintiff has already contacted Heffernan.

    g.  Def. Konishi instructs Plaintiff to give to Konishi the badge and keys that were assigned to Plaintiff and in her possession.

    h.  Plaintiff turns over her badge and keys to Def. Konishi.

223.  On December 28, 2005 at 4:16 p.m. Def. Konishi emailed Def. Jones that "Ms. Rogler visited Angela and I just a moment ago and I was able to pull the terms and conditions of her Purchase Order that states under FAR 52.249-2 that the Government can Terminate for the Convenience of the Government (dated Apr 1984)." This is the clause of the contract, which does not require a reason to terminate a contractor.

224.  Defendants acting in an expressed and/or implied agreement to interfere with the functioning of a federal officer, AO Kinney, to prevent her from performing her duties and to create a false document which was executed by Def. Konishi to deprive Plaintiff of her constitutional and statutory rights and resulted in the actual deprivation of constitutional and statutory rights of the Plaintiff.

### Def. Konishi Failure to Investigate
### (Overt Acts in Furtherance of the Conspiracy)

225.  Based upon admissions by the Defendant, Def. Konishi failed to conduct an adequate investigation into the grounds for the Plaintiff's termination, participated in a

conspiracy to deprive the Plaintiff of her position, and signed Plaintiff's termination papers to retaliate against plaintiff in violation of the Federal Constitution, pertinent statutes and federal regulations.

226.  Defs. Gallin, Jones, Fitzgerald, and Gormley acted in furtherance of the conspiracy by ordering in December of 2005 that Administrative Officer Angela Wright Kinney who was the Administrative Officer for the Spiritual Ministry Department could not conduct an investigation into the requested termination of the Plaintiff and replacing AOKinney with Def. Gallin's Administrative Officer Nyna Konishi and instructing Konishi to execute termination papers on the Plaintiff without any investigation.

227.  Def. Konishi acted in furtherance of the conspiracy by not conducting an investigation into the termination of the Plaintiff and by participating in the termination and executing termination documents.

228.  Def. Konishi knew that her involvement created false and misleading documents.

### Rev. Heffernan Informs Defs. that Plaintiff is Named Witness on January 4th,2006 Defendants immediately Retaliate against Plaintiff on January 5th, 2006 (Overt Acts in Furtherance of the Conspiracy)

229.  Plaintiff was named and called as a witness in *Rev. Henry Heffernan v. Mike Leavitt, DHHS (NIH CC),* EEOC Case No. 120-2005-00226X ("*Heffernan*"). On January 4th, 2006 Rev. Heffernan's counsel, Attorney Cathy A. Harris ("Harris"), contacted by telephone the Agency's counsel, Def. Lu, and informed Def. Lu that Ms. Harris on behalf of Rev. Heffernan was filing his "Complainant's Motion to Call Edar Rogler as a Witness" and "to ascertain her position on this motion."  See, Rev. Heffernan's COMPLAINANT'S MOTION TO CALL EDAR ROGLER AS A WITNESS, at footnote 1 [Dkt. #51-2, at pg. 15 of 20].

230. On January 4th, 2006 Ms. Harris served Def. Lu with Rev. Heffernan's

COMPLAINANT'S MOTION TO CALL EDAR ROGLER AS A WITNESS by facsimile. See,

Certificate of Service for said motion [Dkt. #51-2, at pg. 18 of 20].

231. Rev. Heffernan, by and through his attorneys, filed said motion moving to call

Rogler as a potential impeachment witness to the expected testimony of Def. Fitzgerald. [Dkt.

#51-2, at pg. 15-18 of 20].

232. On January 5th, 2006 Def. Lu responds by submitting a letter to EEOC AJ Norken

by facsimile with the "Agency's Opposition to Complainant's Motion to call Edar Rogler as a

Witness." [Dkt. #51-2, at pg. 20 of 20].

233. The Defendants had an expressed and/or implied agreement to deprive Plaintiff of

her constitutional rights by falsely creating a letter of termination written by Def. Britton dated

January 5th, 2006 and willfully and intentionally disclose said letter by submitted it EEOC AJ

Norken by facsimile as an exhibit attached to said motion. Said facsimile was transmitted by

telephonic wires from Def. Lu's office in Washington, D.C. to the EEOC Baltimore Field Office.

234. Def. Britton failed to conduct a neutral, good faith, independent investigation of the

termination of the Plaintiff as required by federal contract regulations to determine if Plaintiff

was a contractor and if so, if Plaintiff's contract was lawfully terminated.

Said termination letter dated January 5th, 2006 was published in the *Heffernan* matter without

cause and without notice to the Plaintiff, who had not even received said letter at the time of the

facsimile submission to the EEOC from the Defendants.

235. Publication of said letter violated the Plaintiff's rights to privacy and rights under

The Privacy Act of 1974, 5 U.S.C.A. §552a(b).

236. The EEOC ruled that the termination letter of January 5th, 2006 was irrelevant and inadmissible in the *Heffernan* matter.

237. Said unlawful termination letter with false allegations that were never investigated in compliance with the law was made public by the Defendants in acts in furtherance of their conspiracy to publicly embarrass and intimidate and retaliate against the Plaintiff for being named as a witness in the *Heffernan* matter and to hinder Plaintiff from filing her own EEO pre-complaint.

238. Def. Lu acted in furtherance of the conspiracy by aiding and abetting the creation of false evidence on or about January 5, 2006 by aiding and abetting the creation of a false termination letter regarding the Plaintiff that was never investigated and was transmitting by Def. Lu by use of the telephone wires from Washington, DC by facsimile to EEOC Administrative Judge David Norken in Baltimore, Maryland on January 5, 2008 and to Rev. Heffernan, by and through his attorneys (all of whom were located within the District of Columbia) before it was ever provided to the Plaintiff. The EEOC ruled that said letter was irrelevant and inadmissible. However the Defendants actions made the letter public before the Plaintiff had an opportunity to read the letter and/or object to its publication.

239. The creation of the January 5, 2006 letter was in direct response to Heffernan's motion to include Plaintiff as a witness that was transmitted by facsimile from Washington, DC to Def. Lu in Washington, DC on January 4, 2006.

240. Def. Lu knew that her involvement created false and misleading evidence (that was not even admissible evidence) with the intent to intimidate, retaliate against, and embarrass a witness to a federal administrative proceeding, the Plaintiff.

### Defs.' Retaliation on January 5th, 2006

**(Overt Acts in Furtherance of the Conspiracy)**

241.  In violation of Plaintiff's constitutional rights and privacy rights, the defendants in conspiracy falsely created a letter to Plaintiff from Def. Britton regarding alleged "Purchase Order 269-MM-602634 entitled 'Pastoral Care/Consulting Counseling Services to Patients and Families'" dated January 5, 2005.

242.  Said letter falsely stated that the Plaintiff's alleged "contract" was terminated, because "concerns were raised by Pain and Palliative Care Leadership based on the performance by the contractor in the services being provided to their patients.

243.  Plaintiff asserts that said letter is false.  The factual basis for this allegation is as follows:

    a.)    The timing of letter of termination in relationship to Plaintiff's email to Def. Gormley, communications with Defs. Jones and Fitzgerald, and Heffernan's Motion submitted to the EEOC naming Plaintiff as a witness;

    b.)    Plaintiff was not assigned to perform services in the Pain and Palliative Care Clinic (PPCC);

    c.)    Plaintiff had been to the PPCC twice briefly in mid-November to temporarily substitute until Def. Fitzgerald arrived late;

    d.)    for six weeks there was no mention of concern regarding Plaintiff extremely brief substitute service in PPCC;

    e.)    no one wrote a written complaint or completed a point of contact form with a patient complaint alleging inadequate services;

    f.)    said letter is the first mention of concerns regarding Plaintiff's brief, temporary visit to PPCC;

g.)    the Plaintiff has never met the PPCC leadership;

h.)    A.O. Kinney was prohibited from investigating Def. Jones' request to terminate Plaintiff;

i.)    Def. Konishi failed to perform any investigation into the Plaintiff's termination before Def. Konishi approved it;

j.)    Def. Britton failed to perform any investigation into the Plaintiff's termination before Def. Britton approve it;

k.)    Def. Fitilis removed the Plaintiff's records from Def. Britton's office and instructed Def. Britton not to conduct an investigation into the Plaintiff's termination;

l.)    Defendants had a planned called "Operation Clean Sweep" to retaliate against witnesses to Rev. Heffernan's allegations of discrimination and reprisal by wrongfully terminating the witnesses or pressuring them into retiring and

m.)    other reasons that will be investigated during discovery.

244.    Plaintiff's testimony in the *Heffernan* matter was constitutionally and federally protected speech.

245.    Plaintiff is a witness in two matters pending in *Rabbi Reeve Brenner v. Mike Leavitt, DHHS (NIH CC)*, MSPB, case no. DC-0752-07-0414-1-1 and EEO formal complaint entitled *Reeve Brenner v. Mike Leavitt*, case no.  NIH CC-06-0009 ("*Brenner*").  Plaintiff's testimony in the *Brenner* matter is constitutionally and federally protected speech.

246.    Plaintiff alleges that said letter of January 5, 2005 was falsely created to be unlawfully presented in the EEOC matter of *Heffernan* (Case No. 120-2005-002226X) to

53

adversely influencing the decision of Administrative Judge David Norken ("AJ Norken") in his decision on whether to accept the addition of the Plaintiff as a witness.

247. Plaintiff alleges said letter was created with malicious intent to intimidate Plaintiff from being a witness and to unlawfully retaliate against the Plaintiff by publicly humiliating her for coming forward as a witness in said matter.

248. Plaintiff alleges said letter was created without an adequate investigation and was written with the intent to deprive the Plaintiff of future employment opportunities.

249. Plaintiff alleges said letter was created without an adequate investigation and was written with the intent to deprive the Plaintiff of future employment opportunities in furtherance of Operation Clean Sweep.

250. The Defendants, by and through Def. Lu, filed said letter with the EEOC, Baltimore District Office before Plaintiff had received said letter, thereby, denying her the opportunity to object to the unlawful disclosure of the falsely created document.

251. Said letter was then mailed by overnight express to the Plaintiff.

252. On January 5, 2006 the Agency filed its *Opposition to Complainant's Motion to Call Edar Rogler as a Witness*. Said opposition stated, "[t]he Agency offered Ms. Rogler two weeks severance pay and a neutral reference."

253. On January 6, 2006 the Agency wrote to Heffernan's counsel a letter dated January 6, 2006 proposing that the Agency's termination letter dated January 5, 2005 to Rogler would be used as evidence in the Heffernan hearing and attached a copy of the Plaintiff's termination letter. The Agency's letter of termination of Plaintiff's services was falsely created and delivered to the EEOC before it was delivered to the Plaintiff. Plaintiff was not given an opportunity to object to said letter's publication and release to the EEOC.

254. The EEOC ruled that said letter was irrelevant, immaterial and inadmissible in the EEOC matter. This disclosure of said letter violated Plaintiff's right to privacy pursuant to the Privacy Act, 5 U.S.C. § 552a *et seq.*.

### Defs.' Interference with Federal Officer, Def. Britton's Proposed Investigation (Overt Acts in Furtherance of the Conspiracy)

255. Def. Britton stated to Plaintiff that she was going to conduct a thorough investigation into the termination of Plaintiff's alleged "contract."

256. On information and belief Def.Fitilis obstructed the investigation that Def. Britton was going to conduct by asserting that she was staff attorney for NIH CC and to turn all of Plaintiff's records in the custody of Def. Britton over to Def. Fitilis and the NIH "Legal Department."

257. Def. Britton stated to Plaintiff that the NIH CC "legal department" had instructed her to turn over all of her records on Plaintiff and not to conduct an independent investigation into the termination of Plaintiff's services.

258. On or about Plaintiff emailed Def. Britton and asked Def. to give Plaintiff the name of the relevant "TOC" and "auditor."

259. On or about Def. Britton emailed Def. Fitilis to get instructions on whether or not Def.Britton should give Plaintiff the name of the relevant "TOC" and "auditor."

### Defs. Fitilis, Biglow, Britton, Canino & Chew "in the loop" (Overt Acts in Furtherance of the Conspiracy)

260. On information and belief Defs. Fitilis and Biglow obstructed and intervened by instructing Def. Britton not to provide the Plaintiff with the requested information.

261. On or about Def. Britton emailed the Plaintiff writing for Plaintiff to contact Def. Biglow.

262. On information and belief Def. Gallin ordered Def. Fitilis to settle the discrimination informal complaints filed by Plaintiff and Rabbi Brenner with the OEO DM.

263. On or about June 5, 2006 Rabbi Brenner filed his formal complaint alleging discrimination and retaliation under Title VII with the OEO DM.

264. On or about June 6, 2006 Defs. Biglow and Fitilis were in an agreement, a so-called "in the loop" to conspire against Rabbi Brenner's and the Plaintiff's constitutionally protected rights.

265. On or about June 6, 2006 Def. Fitilis emailed Def. Biglow to keep him in "the loop" on Plaintiff's activities. See, electronic mail from Def. Fitilis to Def. Biglow dated June 7th, 2006.

266. On information and belief all of the defendants are in the loop to conspire against Rev. Heffernan, Rabbi Brenner, and the Plaintiff to deprive them of their constitutionally and statutorily protected rights.

### Defs.' Discrimination and Reprisal Against Dr. Brenner
### (Overt Acts in Furtherance of the Conspiracy)

267. The Administration of NIH CC and SMD "did not preplan or make any efforts to find appropriate space for the Jewish prayer group [in the new building]." Affidavit of Angela Wright-Kinney [Dkt. # 64-2, at p. 9 of 13].

268. Def. Fitzgerald excluded Dr. Brenner from being assigned to carry the SMD pager. Affidavit of Angela Wright-Kinney [Dkt. # 64-2, p. 10 of 13]; and Department of Spiritual Ministry, On-Call List for December 2005 [Dkt. #51-2, at pg. 12 of 20].

56

269. Dr. Brenner objected to Def. Ashkar conducting prayers in the NIH CC Chapel for the conversion of the Jews to become Christians. Management failed to respond. Affidavit of Dr. Reeve Robert Brenner, ¶25 [Dkt. #64-8, at p. 7 of 21].

270. Defs. Fitzgerald and Jones paid Def. Ashkar for attending CPE mandated by NIH CC, but failed to pay Dr. Brenner for his participation in CPE as mandated by NIH CC. Dr. Brenner filed an EEO complaint and had to wait almost a year to be paid for 267 hours of CPE work. See, electronic mail from Def. Jones to AO Kinney dated 09/06/06 [Dkt. # 44-3, at p. 2 of 32]; and Affidavit of Dr. Reeve Robert Brenner, ¶20 [Dkt. 64-8, at p. 6 of 21].

271. Def. Ashkar and Plaintiff received pay for being on-call.

272. Dr. Brenner did not receive pay for being on-call. See, Affidavit of Dr. Reeve Robert Brenner, ¶20 [Dkt. 64-8, at p. 6 of 21].

273. Dr. Brenner believed that he was discriminated and retaliated against in violation of Title VII. See, Affidavit of Rabbi Reeve Robert Brenner [Dkt. #64-6, 64-8 and 64-9]. Dr. Brenner states that Def. Fitzgerald instructed Dr. Brenner to testify falsely at the *Heffernan* EEOC Administrative Hearing and to testify that Dr. Brenner could not recall answers to questions posed to him by Rev. Heffernan's attorney(s). See, Affidavit Affidavit of Rabbi Reeve Robert Brenner, ¶4 [Dkt. #64-6, p. 3 of 6].

274. In January of 2006 Dr. Brenner was called to testify at the *Heffernan* matter and was held to be a more credible witness than Def. Fitzgerald. EEOC AJ Decision, FOFCL, ¶29 [Dkt. 51-5].

275. Brenner's testimony was constitutionally protected speech and protected by Title VII.

276.  At the time Brenner testified in the *Heffernan* matter, he had a clean personnel record and satisfactory work performance.

277.  After Brenner testified in the *Heffernan* matter, he was discriminated against, allegedly unlawfully suspended and wrongfully terminated from employment at NIH CC.  See, Affidavit of Dr. Reeve Robert Brenner, in its entirety and in particular ¶43 [Dkt. #64-8 in *passim* and p. 12 of 21 and [Dkt. #64-6].

278.  AO Kinney has observed treatment of Dr. Brenner by Defs. Fitzgerald and Jones that lead her to believe Defs. Fitzgerald and Jones retaliated against Dr. Brenner for his protected EEO activity.  Affidavit of Angela Wright-Kinney [Dkt. # 64-2, p. 11 of 13].

279.  AO Kinney believed that Dr. Brenner was treated differently by Def. Fitzgerald because of Dr. Brenner's Jewish faith.  Affidavit of Angela Wright-Kinney [Dkt. # 64-2, at p. 12 of 13].

280.  Additionally Brenner is a witness to discrimination and retaliation and constitutional violations committed by the Defendants against the Plaintiff.

281.  Dr. Brenner was represented by Attorney Irving Kator ("Kator") of the Law Offices of Irving Kator and Attorney Cathy A. Harris ("Harris") of Kator, Parks & Weiser PLLC.

282.  During the week of June 6, 2006 Def.s Biglow and Fitilis were in communication with Defendant Victor Canino ("Canino"), Complaints Officer, OEO DM who was managing the informal complaints of Plaintiff and Rabbi Brenner.

283.  Defs. Biglow and Fitilis were schedule to meet with Canino on or about June 7, 2006.

284.  Defs. Biglow and Fitilis violated the NIH Policy Statement of Reprisal, by Acting Director Ruth L. Kirschstein, M.D. (January 4th, 2000) [Dkt. # 57-2, at pg. 2 of 2].

285. On or about June 7, 2006 on information and belief Def. Fitilis asked Canino to find out "how low" Rabbi Brenner "will go" to settle his complaint and resign from his position at NIH CC.

286. On information and belief Rabbi Brenner's counsel, Attorney Kator telephoned Def. Biglow and stated that it would take a lot of money to settle Rabbi Brenner's complaint and that Rabbi Brenner was unwilling to resign.

287. Yom Kippur is a Jewish High Holy Day, and the holiest day of the year for the Jewish religion.

288. Yom Kippur was on October 1st, 2006. Dr. Brenner was scheduled to prepare for services on October 1st, 2006 for Yom Kippur, the Day of Atonement.

289. Defs. Fitilis, Jones and Gormley knew that Dr. Brenner was scheduled to be on duty on October 1st, 2006 and would be performing Yom Kippur sevices. See, letters from Def. Gormley to Dr. Brenner dated 9/15/06 and 9/28/06 [Dkt. #44-3, at p. 4 of 32 and pgs. 6-9 of 32]

290. On Yom Kippur about October 1st, of 2006, Defs. Fitilis, Jones and Gormley had a meeting of the minds and an agreement for Def. Fitilis to stalk Dr. Brenner, to provoke Dr. Brenner into an argument and to fabricate false charges against Dr. Brenner. See, electronic mail communications between Defs. Fitilis, Jones and Gormley dated 10/01/06 [Dkt. #13 to 22 of 32].

291. Most chaplains do not visit patient before their High Holy Day services, because they have to prepare for the service.

292. Dr. Brenner did visit patients on October 1, 2006.

293. On October 1, 2006 according to the preconceived plan Def. Fitilis turned her identification badge around so her name could not be seen and confronted Rabbi Brenner in the

Chapel of the CRC on the 7th Floor in Building 10 and falsely alleged that she was a Jew as defined by the Jewish religion and seeking spiritual communication with the rabbi.

294. Plaintiff alleges that the conversation that ensued between Def. Fitilis and Rabbi Brenner that was protected speech under the Federal Constitution and Title VII.

295. On or about October 4th, 2006 Def. Jones placed Rabbi Brenner on administrative leave for approximately five (5) months. See Affidavit of Dr. Reeve Robert Brenner, ¶39 [Dkt. #64-8, at p. 11 of 24].

296. One major charge against Rabbi Brenner concerned the conversation between Def. Fitilis and Rabbi Brenner in the Chapel on Yom Kippur when Def. Fitilis alleged that she was a Jew as defined by the Jewish religion.

297. On information and belief Def. Fitilis is not a Jew as defined by the Jewish religion and rabbinical law.

298. Additionally Def. Fitilis was working in a secular job on Yom Kippur in violation of the tenets of the Jewish religion.

299. Plaintiff alleges that Def. Fitilis deliberately and/or incompetently confront Rabbi Brenner on or about Yom Kippur in the NIH CC's chapel to provoke an argument to support false disciplinary charges against Rabbi Brenner to procure the rabbi's wrongful termination in violation of Title VII.

300. Plaintiff alleges that Def. Fitilis was acting in concert with the other defendants to bring to completion Operation Clean Sweep in regards to Rabbi Brenner's employment at NIH CC in violation of Title VII.

301. In January/February of 2007 the EEOC issued its decision and order in the *Heffernan* matter ordering that the Agency had discriminated and retaliated against Rev. Heffernan and ordered the Agency to reinstated Rev. Heffernan.

302. Brenner by and through his attorneys has filed petitions with the MSPB, entitled Reeve Brenner v. Mike Leavitt, case no. DC-0752-07-0414-I-1, and the EEO formal complaint, entitled Reeve Brenner v. Mike Leavitt, case no. NIH CC-06-0009.

303. Dr. Brenner was and is a material witness to Plaintiff's causes of action herein. Defendants and in particular Def. Jones unlawfully removed AO Kinney from the decision whether or not to terminate Dr. Brenner and Def. Jones' proposal to remove Dr. Brenner. Affidavit of Angela Wright-Kinney [Dkt. # 64-2, at p. 12 of 13].

304. Def. Jones' interference with AO Kinney's authority as the Administrative Officer of the SMD in her function in investigating proposed removals violated 42 U.S.C. §1985.

305. Prior to Dr. Brenner's removal from federal employment, Dr. Brenner had written Def. Zerhouni several letters of concern about the discrimination and reprisal he was experiencing.

306. Defs. Leavitt, Zerhouni, and Gallin are aware that there is a policy and practice of discrimination and reprisal in violation of Title VII at NIH and NIH CC and have failed to reasonably supervise subordinates and remedy the deficiencies.

307. Defs. Zerhouni, Gallin, Gormley, and Jones having had the knowledge of the conspiracy to violate the Dr. Brenner Title VII, civil rights and constitutional rights and of the violations committed, and having had the power to prevent these wrongs, neglected and/or refused to do so.

**Defs.' Unlawful Interference with Plaintiff's EEO Process**

**(Overt Acts in Furtherance of the Conspiracy)**
**Official EEO Informal Counselor and EEO Informal Counselor's Report**

308. On or about January 31, 2006 the Office of Equal Opportunity and Diversity Management ("OEODM") finally acknowledged Plaintiff's contact with OEODM.

309. Plaintiff's informal counselor was Elizabeth Leader who prepared a legally valid EEO Informal Counselor's Report. Ms. Leader's EEO Informal Counselor's Report was legally created and prepared, and legally issued.

310. On or about March 7, 2006 the U.S. Department of Health and Human Services, Public Health Service, NIH, by and through Victor M. Canino, EEO Specialist, NIH, OEODM took the official act of appointing Elizabeth A. Leader, EEO Counselor, DSZ to officially be the EEO Counselor in *Rogler v. Leavitt, Secretary, DHHS*, Agency File No. CC-06-0008 and for Ms. Leader to "assigned to conduct an inquiry into the allegations of employment discrimination raised by Ms. Edar Rogler, who has alleged discrimination against the NIH Clinical Center Department of Spiritual Ministry" in accordance with 29 C.F.R. §1614.105.

311. Ms. Leader received the authorization and relevant forms on or about March 8, 2006 and accepted the assignment.

312. On or about March 20, 2006 Ms. Leader personally conducted the initial interviewed with the Plaintiff. See 29 C.F.R. §1614.105(b)(1).

313. According to 29 C.F.R. §1614.105(c) Ms. Leader was to "conduct counseling activities in accordance with instructions contained in Commission Management Directives." On or about April 12, 2006 Ms. Leader conducted the final interview of the Plaintiff. See 29 C.F.R. §1614.105(d).

314. On or about April 25, 2006Ms. Leader EEO Counseling Report submitted to EEO Case Manager Def. Canino. Said EEO Counseling Report is the official EEO Counseling Report authorized by 29 C.F.R. §1614.105. A copy of the pertinent pages of Ms. Leader's EEO Counselor's Report is attached, designated as Exh. , and made a part of this first amended complaint.

315. On or about April 13, 2006 Ms. Leader sent Plaintiff her "Notice of Right to File a Discrimination Complaint" ("NRTF") by certified mail, return receipt numbered 7004 2510 0002 3135 5925.

316. According to 29 C.F.R. §1614.106 Plaintiff prepared and submitted a formal Individual Complaint to the Agency.

### Illegal Second Alleged EEO Informal Counselor and her Illegal Report
### (Overt Acts in Furtherance of the Conspiracy)

317. Def. Sylvia D.Drummond at all pertinent times was a Senior Case Manager employed by DSZ.

318. Def. Drummond never communicated and/or met with and/or interviewed the plaintiff and has no personal knowledge of the plaintiff.

319. Def. Drummond was never lawfully assigned by the Agency to be the Plaintiff's EEO Counselor.

320. Knowing that Plaintiff received her NRTF letter and had submitted her formal complaint, Def. Drummond took it upon herself to continue investigating the Plaintiff's pre-complaint in violation of 29 C.F.R. §1614.105-106, the constitutional rights of Plaintiff and her Privacy Act rights to privacy and confidentiality. Said actions by Def. Drummond were willful and deliberate.

63

321. Def. Drummond prepared a false, illegal second EEO Informal Counselor's Report ("illegal Informal Counselor's Report) dated May 16, 2006 in the matter of *Rogler v. Leavitt* in violation of the afore-mentioned laws and regulations of the DHHS, EEO and EEOC. Said illegal Informal Counselor's Report violated plaintiff's rights under The Privacy Act of 1974 [5 U.S.C.A. §552a] by including and disclosing documents that were protected by the First Amendment from being gathered, maintained and disclosed. Said illegal Informal Counselor's Report was illegally created and prepared and illegally issued, maintained, and distributed. Defendant had the specific intention to embarrass the Plaintiff.

322. Defs. Chew, Canino, and Self authorized and arranged the maintenance and distribution of the illegal renegade report.

323. Defs. Biglow, Lu, Gallin, Gormley, Jones, Fitilis, and Fitzgerald were covertly and/or overtly involved with the planning and preparation of the illegal report.

### Unconstitutional and Unlawful Failure to Investigate
### (Overt Acts in Furtherance of the Conspiracy)

324. The Agency failed to conduct an investigation of Plaintiff's formal complaint as mandated by 29 C.F.R. §1614.106(e)(2). The legal question of whether the Plaintiff's work is covered by Title VII is not jurisdictional, but goes to the merits of her claim. The material elements of the merits of her claim are disputed facts.

### Unconstitutional and Unlawful Dismissal of Plaintiff's Formal Complaint
### (Overt Acts in Furtherance of the Conspiracy)

325. In violation of 29 C.F.R. §1614.105-107, the Agency unlawfully failed to investigate the Plaintiff's formal Complaint and relied upon the illegal discrimination by Def. Jones, the second EEO Counselor's Report of Def. Drummond, the unlawful determinations of

64

Def. Konishi (who was not the AO for the SMD), unlawful determinations of Def. Britton (who failed to conduct a good faith investigation) and dismissed the Plaintiff's Formal Complaint.

## Unconstitutional and Unlawful Failure to Transmit Plaintiff's Complaint to the OFO (Overt Acts in Furtherance of the Conspiracy)

326. Plaintiff filed her own EEO complaint entitled *Edar Rogler v. Mike Leavitt, DHHS (NIH CC)*, Request No. 0520070128, Appeal No. 01A63657, Agency No. NIHCC-06-0008 ("*Rogler*").

327. Def. Chew, Canino, and Self in furtherance of the conspiracy failed to transmit to the OFO, US EEOC, Plaintiff's formal complaint.

328. EEOC OFO AGENCY CHECKLIST stated that the agency failed to submit the Plaintiff's Formal Complaint to the EEOC OFO.

329. EEOC OFO Decision in Edar Y. Rogler v. Mike Leavitt, Secretary, DHHS, Appeal no. 01A63657 (October 11, 2006) footnote 1, "The Commission notes that the record does not contain a copy of complainant's formal complaint."

330. Def.s Chew, Canino, and Self caused the illegal Informal Counselor's Report to be transmitted to the Office of Federal Operations ("OFO"), US EEOC to adversely effect the decisions of the OFO in violation of the Plaintiff's constitutional rights and 29 C.F.R. §1614.105.

331. Plaintiff enjoy the rights of freedom of speech, expression, association, religion and to petition the government for grievances as guaranteed by the First Amendment to the United States Constitution.

332. Def.s. acting under color of federal authority, violated Plaintiff's First Amendment rights by retaliating against Plaintiff for expressing and speaking on issues protected by the First Amendment on or about December 22, 2005 and by attempting to prevent Plaintiff from

continuing to exercise his First Amendment rights and/or from testifying as a witness for Rev. Heffernan, Dr. Brenner, and Ms. Kelley. Defendants retaliated against Plaintiff and attempted to prevent her from exercising his First Amendment rights by unlawfully terminating Plaintiff twice: once on December 23, 2005 and again on January 5, 2006.

333. On January 4, 2005 when Defendants learned that Plaintiff had contacted Heffernan' attorneys, who submitted a motion to add Plaintiff's name to Heffernan's witness list, Defendants retaliated against Plaintiff and attempted to prevent him from exercising her First Amendment rights by unlawfully terminating Plaintiff a second time again on January 5, 2006. Defendants unlawfully prepared a termination letter with false allegations and submitted it to the EEOC on January 5, 2006 without legally grounds and prior to delivering said letter to the Plaintiff. Defendants, conducting an unlawful search of Plaintiff' constitutionally protected ACPE records, and unlawfully seizing Plaintiff's constitutionally protected ACPE files, in violation of The Privacy Act of 1974 [5 U.S.C.A. §552a], the rules and regulations of ACPE, and clergy/layperson privilege and confidentiality.

334. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of her constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

335. As a direct and proximate result of the violation of her constitutional rights, Plaintiff suffered substantial damages.

### SECOND COUNT
#### Violation of the Fourth Amendment to the U.S. Constitution–
#### (Unlawful Search and Seizure)

336. Plaintiff complains against Defendants and for a second claim for relief alleges:

I.

66

337. Plaintiff incorporates Paragraphs 1 to 335 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

II.

338. Plaintiff enjoys the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

339. Defendants, acting under color of federal authority, violated Plaintiff's Fourth Amendment rights by seizing Plaintiff by searching Plaintiff's ACPE records, and by seizing Plaintiffs' ACPE records without probable cause, a valid search warrant, the voluntary, uncoerced consent of Plaintiffs, and/or other legal justification.

340. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of her constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

341. As a direct and proximate result of the violation of Plaintiffs' constitutional rights, Plaintiffs suffered substantial damages.

### THIRD COUNT
### Violation of the Fifth Amendment to the U.S. Constitution
### (Denial of Due Process)

342. Plaintiff complains against Defendants and for a third claim for relief alleges:

I.

343. Plaintiff incorporates Paragraphs 1 to 341 of plaintiff's first and second counts against Defendants and makes such paragraphs a part hereof.

II

344. Defendants each owe a legal duty to uphold the guarantee of due process of law and all other rights protected by the U.S. Constitution (as amended), in particular the Fifth Amendment, and all other federal law.

345. It is clearly established Supreme Court law that the Fifth Amendment to the U.S. Constitution encompasses "the right of the individual to contract [and]…to engage in any of the common occupations of life." *Board of Regents of States Colleges v. Roth,* 408 U.S. 564, 572 (1972). Thus, "where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to [her], notice and an opportunity to be heard are essential." Id. At 573 (internal quotation marks omitted). "To be deprived not only of present employment but of future opportunity for it certainly is no small injury when government employment so dominates the field of opportunity." *Paul v. Davis*, 424 U.S. 693, 704 (1976)(internal quotation marks omitted).

346. Plaintiff's legally-protected liberty and property interests include, but are not limited to:

(a) her freedom to practice the Eastern Orthodox Christian religion;

(b) her freedom to voice objections to the treatment of members of other religions;

(c) her freedom to associate with others of her faith, different faiths, and Jewish people;

(d) her freedom to speak and express herself;

(e) her right to be free from unlawful searches and seizures by federal officials;

(f) her right to her professional and personal standing;

(g) her reputation;

(h) her right to future employment;

(i) her right to serve as a chaplain without improper threats of or actual malice from federal officials;

68

(j)  her right not to be confined to a video storage closet;

(k) her livelihood;

(l)  career progression;

(m)continued federal employment absent a showing of good cause for dismissal; and

(n) merited assignments and promotions without improper or unlawful interference by federal officials.

347.  Defendants' reckless or intentional conduct as described above negatively altered Plaintiff's employment status and stigmatized and impugned her reputation so as to: (a) seriously damage her standing and associations in the community, and (b) foreclose her freedom to take advantage of other employment opportunities.

348.  Defendants further deprived Plaintiff of her liberty and property interests when they set in motion a discriminatory termination of the Plaintiff without the good faith investigations required by law.

349.  Said false investigation and wrongful termination of Plaintiff was anti-Semantic, anti-Roman Catholic, and anti-Eastern Orthodox Christian, mean spirited, and rigged to produce a predetermined result.

350.  Defendants also obstructed Plaintiff's efforts for administrative review through the EEO complaint process under 29 C.F.R. Part1614 and/or any good faith investigation by a fair and neutral contracting officer in accordance to F.A.R.

351.  Defendants deprived Plaintiff of her liberty and property interests without according her due process of law when, again acting in their official capacities, they convened an investigation of Plaintiff on or about December 22nd to 23rd, 2005 in which investigative, prosecutorial and

69

adjudicative functions were commingled, and they acted intentionally and unlawfully as alleged above in this First Amended Complaint.

352. As specific evidence of Defendants' intent, Plaintiff contends that Def. Jones created a false pretext to terminate Plaintiff.

### III.

353. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive Plaintiff of her constitutional rights, and/or with deliberate indifference to Plaintiff's constitutional rights.

354. As a direct and proximate result of the violation of Plaintiffs' constitutional rights, Plaintiffs suffered substantial damages.

### FOURTH COUNT
### Violation of the Fifth Amendment to the U.S. Constitution
### (Equal Protection)

355. Plaintiff complains against Defendants and for a fourth claim for relief alleges:

### I.

356. Plaintiff incorporates Paragraphs 1 to 354 of plaintiff's first through third counts against Defendants and makes such paragraphs a part hereof.

### II.

357. Defendants each owe a legal duty to uphold the guarantee of due process of law and all other rights protected by the U.S. Constitution (as amended), in particular the Fifth Amendment, and all other federal law.

### III.

358. By the foregoing actions, Defendants have recklessly or intentionally, systematically and unlawfully deprived Rogler and other chaplains (Roman Catholics, Jews and Eastern

Orthodox Christians and anyone speaking out in support of the chaplains and/or voicing

concerns about discrimination and retaliation against them) of equal protection of the laws by

holding them to separate, distinct and far more onerous services, requirements, and standards and

by subjecting them to constitutionally repugnant terms of employment and working conditions

and investigations, unlawful searches and seizures based upon their religious status and/or their

being witnesses and/or voicing their concerns.

359. In addition Defendants deprived the Plaintiff and other chaplains of their property

rights to their jobs, good reputations, and career opportunities by subjecting them to, *inter alia*,

discriminatory and otherwise unlawful investigation, discipline, and termination based upon

knowingly false accusations because of the Plaintiff's and chaplains' religious beliefs, practices

and ethnic associations.  To wit, Defendants in conspiracy:

a.) fraudulently induced the Plaintiff to give up gainful employment in Ohio and travel

   interstate to Brookline, Massachusetts and Maryland for a job that Defendants alleged did

   not exist;

b.) employed her without a written contract;

c.) concealed her in a video storage closet;

d.) ordered her not to talk with "the Jew", "that Jew", "the butthead Jew" and "the crass Jew"

   [meaning Rabbi Brenner];

e.) entered into a conspiracy to deprive Plaintiff of her equal protection under the Fifth

   Amendment to the U.S. Constitution by terminating her on December 23rd, 2005 within

   twenty-four hours of her coming forward as a witness, removing AO Kinney from

   performing an investigation, terminating her a second time on January 5th, 2005 twenty-

   four hours after receiving notice from Attorney Harris that Plaintiff was going to be a

witness in the Heffernan matter; creating a false letter of termination on January 5th, 2005 and unlawfully publishing it to EEOC AJ Norken and others before serving it on the Plaintiff; unlawfully preparing a second EEO Informal Counselor's Report, failing to investigate plaintiff's formal EEO complaint, transmitting Plaintiff's records to the OFO EEOC with the unlawful second EEO Informal Counselor's Report and failing to transmit Plaintiff's formal complaint, threatening Plaintiff with falsely reporting her to the State Bar; falsely claiming to serve Plaintiff with several notices of her deposition in the *Brenner* matter and unlawfully removing her records from Def. Britton's custody to prevent Def. Britton from conducting an investigation required by federal regulations.

360. Plaintiff complains against Defendants and for a first claim for relief alleges that the Defendants acted in civil and/or criminal conspiracy and in a private conspiracy to violate the Plaintiff's rights protected by the Fifth Amendment to the U.S. Constitution by denying her procedural due process to bring her complaint of discrimination and constitutional violations.

**WHEREFORE**, Plaintiff demands:

On Plaintiff's first claim through fourth claims of relief, judgment be entered against Defendants or such of them as the court may determine to be liable to the Plaintiff in the premises jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs, declaratory relief and injunctive relief, and such other relief as the Court deems just and proper.

Plaintiff demands trial by jury on all issues so triable.

## FIFTH COUNT
### Declaratory Judgment Act, 28 U.S.C. §2201-§2202
### (Declaratory Relief)

361. Plaintiff complains against Defendants and for her fifth claim for relief alleges:

## I.

362. Plaintiff incorporates Paragraphs 1 to 360 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

## II.

363. Plaintiff sues all Defendants named above.

WHEREFORE, Plaintff prays for a declaratory judgment declaring her to be a common law employee and/or a *de facto* employee protected by Title VII, and/or a federal employee as defined by 5 U.S.C. §2105, declare that the above stated polices and practices of NIH CC are illegal in violation of the Constitution, civil rights statutes, and Title VII, and for any other declaratory relief deemed just and fair.

## SEVENTH COUNT
## 42 U.S.C.A §1985(1)

364. Plaintiff complains against Defendants and for her seventh claim for relief alleges:

## I.

365. Plaintiff incorporates Paragraphs 1 to 360 of plaintiff's first through third counts against Defendants and makes such paragraphs a part hereof.

## II.

365. Jurisdiction is provided by statute 42 U.S.C.A. §1985.

## III.

366. In violation of 42 U.S.C. §1985(1), Defendants, acting under color of law, custom and usage, and in unlawful conspiracy, impeded the Plaintiff's performance of her official duties as an associate chaplain and witness by subjecting her to, *inter alia*, legally unjustified and discriminatory false "investigation" to fabricate a pretext for her unlawful termination two times,

verbal abuse and harassment, and illegal searches of private, constitutionally protected documents.

367. Defendants' actions were motivated by racial and/or class based animus and increased in frequency following, and in retaliation for, Plaintiff's objections on or about December 22nd, 2005 about disparate, discriminatory and unlawful treatment of herself and others who are in equally protected classes, and being named as a witness on January 4th, 2006.

368. Defendants knowingly and intentionally interfered with Plaintiff's carry out her ongoing obligations as a federal officer, which includes testifying in federal administrative hearings held by federal agencies. Part of her duties as a federal officer was to object to and to testify about and being a witness and implementation of chaplaincy in compliance with First Amendment to the Constitution, civil rights statutes, and Title VII.

## EIGHTH COUNT
### 42 U.S.C.A §1985(2)

367. Plaintiff complains against Defendants and for her eighth claim for relief alleges:

368. Plaintiff incorporates Paragraphs 1 to 368 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

369. Defendants, acting under color of law, custom and usage, and in unlawful conspiracy, impeded, hindered and obstructed the due course of justice with the intent to deny Plaintiff equal protection of the laws and to injure her in her property for lawfully attempting to enforce the right of equal protection of the laws for protected classes and races as well as for herself and to be deprived of the privileges and immunities of the laws and impeded the EEO process for the Plaintiff and other protected classes, and intimidated and retaliated against Plaintiff as a witness.

74

### NINTH COUNT
### 42 U.S.C.A §1985(3)

370. Plaintiff complains against Defendants and for her ninth claim for relief alleges:

368. Plaintiff incorporates Paragraphs 1 to 368 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

369. Defendants were motivated by racial, class-based, invidiously discriminatory animus and acted in conspiracy under color of federal law and/or a private conspiracy to depriving Plaintiff of her rights or privileges, including the right to equal protection of the laws.

### TENTH COUNT
### 42 U.S.C.A §1986

370. Plaintiff complains against Defendants and for her tenth claim for relief alleges: Jurisdiction is provided by statute 42 U.S.C.A. §1985.

371. Plaintiff incorporates Paragraphs 1 to 369 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

372. Plaintiff sues Defs. Zerhouni, Gallin, Gormley, and Jones for neglect and/or refusal to prevent the wrongs specified in §1985.

**WHEREFORE**, Plaintiff demands:

On Plaintiff's seventh claim through tenth claims of relief, judgment be entered against Defendants or such of them as the court may determine to be liable to the Plaintiff in the premises jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs, declaratory relief and injunctive relief, and such other relief as the Court deems just and proper.

## ELEVENTH COUNT
### Administrative Procedures Act, 5 U.S.C. §555, 702, 704

373. This Court has the authority to grant the declaratory relief with respect to the actual controversy stated herein pursuant to the APA, 5 U.S.C. §706.

374. Defendant Michael O. Leavitt is Secretary, DHHS, duly appointed, qualified, and acting as the administrative head of such agency and is responsible for its acts, including:

   a. Interference with investigation of AO Kinney;

   b. Interference with investigation of an independent, neutral contracting officer;

   c. Plaintiff suffering two terminations;

   d. Creation of an illegal EEO Counselor's Report;

   e. Failure to submit to OFO Plaintiff's formal complaint and submission of false records to EEOC OFO;

   f. The afore-described corrupt conspiracy.

375. Plaintiff is aggrieved by DHHS and EEOC decisions that are not discretionary by law.

376. Plaintiff seeks equitable relief.

377. Defendants who are federal officer(s) and their successors in office were personally responsible for compliance.

378. There is no adequate remedy in a court for the final action of the Agency. Plaintiff has been unlawfully and unconstitutionally deprived of her EEO process.

379. The Agency's action is the consummation of the agency's decision-making process and rights and/or obligations have been determined and/or from which legal consequences will flow.

380. To the extent necessary to decision and when presented, the Court should decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The Court court should:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

a. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b. contrary to constitutional right, power, privilege, or immunity;

c. in excess of statutory jurisdiction, authority, of limitations, or short of statutory right;
d. without observance of procedure required by law;
e. unsupported by substantial evidence in a case subject to 5 U.S.C.A. §556 and 5 U.S.C.A. §557 or otherwise reviewed on the record of an agency hearing provided by statute; and/or
f. unwarranted by the facts to the extent that the facts are subject to a trial de novo by the reviewing court.

381. Defendant DHHS acted in excess of its statutory and constitutional authority in proceeding against Plaintiff, and has threatened to and will, unless restrained by this Court, proceed with enforcement of the cease and desist order.

382. Plaintiff will suffer loss and injury in an unascertained but substantial amount and will be required to subject to proof.

383. Defendants, in violation of the Administrative Procedures Act, 5 U.S.C.A. §§701 *et seq.*, are unlawfully interfered with Plaintiff's EEO process and appeal to the EEOC.

WHEREFORE,

Prayer for Equitable Relief on all claims, to remand her Title VII case to the EEOC for an administrative hearing and for such other relief as the Court deems just and proper.

## TWELFTH COUNT
### 18 U.S.C.S. §1512
### (Private Cause of Action)

384.  Plaintiff complains against Defendant Department of Health and Human Services only and for a twelfth claim for relief alleges:

I.

385.  Plaintiff incorporates Paragraphs 1 to 383 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

**WHEREFORE**, Plaintiff demands:

On Plaintiff's twelfth claim of relief, judgment be entered against Defendants or such of them as the court may determine to be liable to the Plaintiff in the premises jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs, declaratory relief and injunctive relief, and such other relief as the Court deems just and proper.

## THIRTEENTH COUNT
### Violations of Privacy Act, 5 U.S.C. §552a(b)

386.  Plaintiff complains against Defendant Department of Health and Human Services only and for a thirteenth claim for relief alleges:

387.  Plaintiff incorporates Paragraphs 1 to 335 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

388.  The jurisdictional basis for the instant count is provided by 5 U.S.C. §552a(g)(1)(B) & (g)(4).

389.  The Privacy Act states, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except

pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains..." 5 U.S.C. ¶552a(b). None of the exceptions to the disclosure prohibition applies here.

390. Def. DHHS intentionally and willfully disclosed the alleged termination letter signed by Def. Britton dated January 5th, 2006 to the EEOC and Rev. Heffernan and his attorneys and to the public on January 5th, 2006 without notifying the Plaintiff. DHHS intentionally and willfully publicly disclosed said alleged termination letter without Plaintiff's prior written consent or approval.

391. Said alleged termination letter was not admissible in the *Heffernan* matter and was irrelevant.

392. DHHS' intentional, willful, and unauthorized disclosures of said termination letter have had an adverse effect on Plaintiff. Among other adverse effects, the unlawful disclosures have eliminated Plaintiff's employment opportunities and ability to earn a living, and have irreparably damaged her personal and professional reputation, and caused Plaintiff public embarrassment.

393. Def. DHHS is sued for actual damages sustained by Plaintiff and costs and attorney fees, as provided for in 5 U.S.C.§552a(g)(4).

## FOURTEENTH COUNT
## RICO

394. Plaintiff incorporates Paragraphs 1 to 393 of plaintiff's first count against Defendants and makes such paragraphs a part hereof.

395. Defendants violated the RICO statute by actions taken above and have proximity caused damage to Plaintiff and her property.

79

**WHEREFORE**, Plaintiff demands:

On Plaintiff's twelfth claim of relief, judgment be entered against Defendants or such of them as the court may determine to be liable to the Plaintiff in the premises jointly and severally, including an award of compensatory damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-judgment interest, costs, declaratory relief and injunctive relief, and such other relief as the Court deems just and proper.

Dated: _____

Edar Rogler, Plaintiff *pro se*

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury under the laws of the United States of America that she is the Plaintiff in the above action, that she has read the First Amended Complaint and that the information contained therein is true and correct and/or is based on affidavits/declarations of witnesses, testimony at federal administrative hearings, and findings of facts by the U.S. EEOC. 28 U.S.C. §1746; 18 U.S.C. §1621

Executed at Annapolis, Maryland on August 8th, 2008.

Edar Rogler

80

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EDAR ROGLER,                    :
        Plaintiff,

versus                          :

WILLIAM A. BIGLOW, et al.     :     C.A. No.: 1:07-cv-02308(RMC)
        Defendants            JURY TRIAL REQUESTED

..oOo..

## FIRST AMENDMENT TO COMPLAINT

Edar Rogler, plaintiff *pro se* amends her <u>COMPLAINT</u> (Dkt. #1) as of course pursuant to the provisions of Rule 15(a) of the Federal Rules of Civil Procedure as follows: <u>FIRST AMENDED COMPLAINT</u>.

Dated:   August 8th, 2008

                               Edar Rogler
                               915 Boucher Avenue
                               Annapolis, Maryland  21403
                               (410) 280-9270

## CERTIFICATE OF SERVICE OF PLEADING

I, Edar Rogler, plaintiff *pro se* certify that I served a copy of the <u>FIRST AMENDMENT TO COMPLAINT</u> on AUSA Judith A. Kidwell, attorney for the Defendants who were federal employees at the pertinent times alleged in the <u>COMPLAINT</u>, by mailing the copy on the 8th day of August, 2008 by United States Postal Service, postage prepaid, to AUSA Judith A. Kidwell, United States Attorney's Office at 555 Fourth Street, N.W., Civil Division, Room E4905, Washington, D.C. 20530 her last-known address.

Dated: 08/08/08

                               Edar Rogler

1