**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EDAR ROGLER,** | ) |
| | ) |
| **Plaintiff** *pro se*, | ) |
| | ) |
| **v.** | )  **Civil Action No.: 07-2308 (RMC)** |
| | ) |
| **WILLIAM BIGLOW,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**FEDERAL DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT AND**
**TO VACATE COURT'S ORDER MOOTING DEFENDANTS' MOTION**
**TO DISMISS, OR ALTERNATIVELY, MOTION FOR AN**
**ENLARGEMENT OF TIME TO RESPOND TO FIRST AMENDED COMPLAINT**

Federal Defendants,[1] by and through undersigned counsel, hereby move this Court, pursuant to Fed. R. Civ. P. 8(a), 10 and 21, to dismiss Plaintiff's First Amended Complaint ("amended complaint"), to vacate the Court's Order of August 12, 2008, mooting Defendants' motion to dismiss filed on April 14, 2008, and to require Plaintiff to file a response to Defendants' motion to dismiss within eleven days.  Alternatively, in the event that the Court denies this motion, all Federal Defendants move for an enlargement of time of 60 business days after the Court's ruling to respond to Plaintiff's amended complaint.[2]

---

[1] According to Plaintiff's initial complaint, the Federal Defendants, sued in their personal capacity, were as follows: William Biglow, Julie Lu, John I. Gallin, M.D., Maureen Gormley, R.N., Walter L. Jones, Hillary Fitilis, Rev. Owen Ray Fitzgerald, Rev. Dominick Ashkar, Ann M. Berger, MSN, MD., Nyna Konishi, Deborah Britton, Lawrence Self, Michael Chew, and Does 1 to 25.  In her First Amended Complaint, Plaintiff has added additional Federal Defendants for which representation authority will have to be obtained. According to the record herein, these additional Federal Defendants have not yet been served with process.

[2] Federal Defendants reserve all defenses and the right to make any additional motions to strike the amended complaint, or parts thereof, for immaterial, impertinent, or scandalous matter

In support of this motion, the Court is respectfully referred to the accompanying

Memorandum of Points and Authorities in Support.  A proposed Order granting Federal

Defendants the relief requested is also attached.

Respectfully submitted,


  /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

----

(*See* Complaint ¶¶ 79, 179, 182, 203, 204, 287-290, 297-98), or motions to dismiss the amended complaint on various grounds including, but not limited to, failure to state a claim upon which relief can be granted, improper venue, statute of limitations, lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process, insufficient service of process, failure to join a party under Rule 19, lack of standing, *res judicata*, collateral estoppel, and sovereign immunity.

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **EDAR ROGLER,** | ) | |
| | ) | |
| *Plaintiff pro se*, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 07-2308 (RMC)** |
| | ) | |
| **WILLIAM BIGLOW, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO VACATE COURT'S ORDER MOOTING DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, MOTION FOR AN ENLARGEMENT OF TIME TO RESPOND TO FIRST AMENDED COMPLAINT

### Preliminary Statement

Plaintiff filed her initial complaint herein on December 21, 2007, against thirteen (13) named individuals and twenty-five Doe Defendants. Plaintiff asserted claims pursuant to 42 U.S.C. § 1985, and alleged violations of the First, Fourth, and Fifth Amendments to the U.S. Constitution. Defendants moved to dismiss Plaintiff's complaint on April 14, 2008, on various grounds, including improper venue, lack of personal jurisdiction, qualified immunity, and failure to state a claim upon which relief can be granted. The court initially ordered Plaintiff to respond to Defendants' motion to dismiss by no later than May 16, 2008.

Instead, from April 16, 2008 through July 29, 2008, Plaintiff filed numerous motions, exhibits, and memorandums, including motions for extension of time to effectuate service [Dk.

Nos. 22, 26], motion to transfer her case to the U.S. District Court of Maryland and to shorten

Defendants' time to oppose her motion [Dk. No. 27], amended motion to transfer her case to the

U.S. District Court for the District of Maryland [Dk. No. 31], an emergency motion to declare

Plaintiff's representation abandoned or order law firm to enter its appearance [Dk. No. 32], a

motion for extension of time until June 9, 2008, to respond to Defendants' motion to dismiss

[Dk. No. 40], a second motion for extension to time to respond to Defendants' motion to dismiss

[Dk. No. 41], a motion for judicial notice in support of Plaintiff's motion to transfer and all other

motions (Part One) [Dk. No. 43], a motion for judicial notice in support of Plaintiff's motion to

transfer and all other motions (Part Three) [Dk. No. 44], a motion for jurisdictional discovery

[Dk. No. 45], a motion for judicial notice in support of Plaintiff's motion to transfer and all other

motions (Part Two) [Dk. No. 47], a motion to strike parts of Defendants' motion to dismiss [Dk.

No. 48], a motion for extension of time until August 8, 2008, to respond to Defendants' motion

to dismiss [Dk. No. 49], a motion to consolidate [Dk. No. 50],  a motion for judicial notice (Part

IV) [Dk. No. 51], a motion for judicial notice (Part V) [Dk. No. 57], memorandums and

supplemental memorandums [Dk. Nos. 52, 54, 56], a motion an amended motion for

reconsideration of the Court's order granting Defendants a protective order [Dk. Nos. 59, 62, 63],

a motion for judicial notice (Part VI) [Dk. No. 64], a motion for clarification of the Court's

Minute Order of June 23, 2008 [Dk. No. 65], and a supplemental memorandum to motion for

clarification of the Court's Minute Order of June 23, 2008 [Dk. No. 71].[1]

On August 8, 2008, Plaintiff filed an amended complaint, naming sixteen additional

---

[1] The Court granted Defendants' motion for a protective order and ordered that
Defendants' need not file responses to Plaintiff's motions until the Court resolved Defendants'
motion to dismiss.  *See* Court's Minute Order dated May 12, 2008.

parties, dropping some parties, and adding numerous causes of action. [Dk. No. 72]. Her

amended complaint is eighty (80) pages in length and contains 395 allegations of bizarre

conspiracies[2] devoid of factual support. Indeed, Plaintiff has named as Defendants two

government agencies[3], one corporation, seventeen (17) individuals, in their personal and official

capacities, and ten unknown individuals.[4] She asserts jurisdiction under the Administrative

Procedure Act ("APA"), 5 U.S.C. § 500 et seq.,[5] the Declaratory Judgment Act, 28 U.S.C.

§ 2201, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, 42

U.S.C. §§ 2000e-2 *et seq.*, 42 U.S.C. §§ 1981, 1985, 1986 and 1988, the Racketeer Influenced

and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), 18 U.S.C. S. § 1512, and the

First, Fourth, and Fifth Amendments to the U.S. Constitution. *See* Amended Complaint, at 5.

She also asserts claims "at state law of the States of Ohio, Massachusetts, Virginia, Maryland and

---

[2] In one instance, Plaintiff has alleged an utterly fantastic conspiracy against 13 individuals starting in October 2005, and occurring in four states and the District of Columbia. See Compl. ¶ 8. *See Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (The Court of Appeals has concluded that dismissal is appropriate, even *sua sponte*, where a plaintiff's claims are "patently insubstantial," where a plaintiff espouses a bizarre conspiracy theory or where a plaintiff cannot possibly win relief).

[3] Plaintiff has named the U.S. Equal Employment Opportunity Commission and the U.S. Department of Health and Human Services.

[4] Plaintiff refers to these as "DHHS Unknown Officials Nos. 1-10."

[5] Title 5 U.S.C. § 500 applies to administrative practice before agencies. In Count Eleven of Plaintiff's amended complaint, she references 5 U.S.C. §§ 555, 702, and 704, and states that she is seeking declaratory relief under the APA, 5 U.S.C. § 706. However, she then asserts that "she will suffer loss and injury in an unascertained but substantial amount and will be required to subject to proof." In addition, she requests that the Court "remand her Title VII case to the EEOC for an administrative hearing." Defendants assume that Plaintiff is referring to the Title VII case she has pending in the District of Maryland, as discussed *infra*.

the District of Columbia." *Id*.[6]

## ARGUMENT

### I.  Plaintiff's First Amended Complaint Should Be
### Dismissed for Failure to Comply with Fed. R. Civ. P. 8(a) and 10(b)

Rule 8(a), Fed. R. Civ. P., states that a claim:

> [S]hall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

*Id*.  "The purpose of [Rule 8(a)] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citing 2A Moore, Federal Practice ¶ 8.13; 5 Wright & Miller, Federal Practice and Procedure, § 1217).  "Beyond this, the rule serves to sharpen the issues to be litigated . . . ." *Brown*, 75 F.R.D. at 498 (dismissing *pro se* plaintiff's complaint because it failed to reasonably inform the adverse party of the cause of action).  Similarly, Rule 10(b), Fed. R. Civ. P., requires that:

> All averments of claim or defense shall be made in numbered paragraphs, the *contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances*; and a paragraph may be referred to by number in all succeeding pleadings.  Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters

---

[6] Although not referenced in the jurisdictional section, Plaintiff also alleges violations of the Privacy Act against DHHS in Count 13, ¶¶ 386-393 of the amended complaint.  These allegations are similar to those claims included in Plaintiff's complaint in Civil Action No. 08-0570 (RMC). Additionally, Plaintiff is alleging Title VII claims that are similar to those pending in her case in the District of Maryland, Civil Action No. 07-0726.  *See* Defendants' Exhibit P.

set forth.

*Id*.  (emphasis added).

However, Plaintiff's amended complaint cites to other motions and exhibits which she previously filed in this case and which have been ruled moot by the Court's Order of August 12, 2008.[7]  *See* amended complaint ¶¶ 45, 46, 47, 52, 54, 56, 58, 59, 63, 67, 69, 75, 81, 82, 89, 91, 92, 93, 96, 97, 98, 99, 100, 101, 103, 104, 105, 106, 107, 108, 104,[8]111, 113, 115, 120, 122, 125, 128, 129, 150, 151, 155, 156, 157, 158, 160, 161, 163, 165, 166, 167, 215, 229, 230, 231, 232, 267, 268, 269, 270, 272, 273, 274, 277, 278, 279, 284, 289, 290, 295, and 303.[9]  Additionally, Plaintiff asserts allegations on behalf of other individuals that are not parties to this suit.  *See* amended complaint ¶¶ 71, 74, 76, 79, 85, 86, 87, 88, 91, 94, 105, 106, 107, 108, 174-177, 181, 266, 273, 275, 276, 277, 285, 286, 288, 289, 290, 292, 293, 294, 295, 296, 299, 300, 302, 305, 307, 358, and 359.  What is more, in many instances, Plaintiff makes allegations against "Defendants" without specifying which Defendants purportedly committed an act.  *See* amended complaint ¶¶ 332- 334, 336, 339, 340, 342, 343, 347, 348, 350, 351, 353, and 358.

The Federal Rules of Civil Procedure simply do not provide for the type of pleading that

---

[7] Plaintiff, a licensed attorney, should be aware that Fed. R. Civ. P. 10 allows "a statement in a *pleading"* to be "adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c) (emphasis added)).  However, the Rule does not allow for adoption of motions or exhibits into a pleading, such as an amended complaint.

[8] At page 30 of Plaintiff's amended complaint, the numbers of the paragraphs begin to be numbered out of sequence.  She has paragraphs 103 and 104 on page 28, and also on page 30, has paragraphs 105 on pages 29 and 30, and has paragraphs 106-108 on pages 29 and 31.

[9] Defendants assume that Plaintiff will not attempt to argue that the Court's Minute Order of August 5, 2008, allowing her to refer to previous filings "in her *Opposition to Defendants' Motion To Dismiss* without filing them" granted her the right to incorporate these motions and exhibits into her amended complaint.  (emphasis added).

5

Plaintiff has filed, and it is unreasonable to expect Defendants to respond or comply with Fed. R.

Civ. P. 8(b)(1)[10] or 10(b), given the contents of Plaintiff's amended complaint. *See Baer v.*

*Johnson*, 2008 WL 839808 (D.D.C. 2008) (recognizing that the Rule 8 standard ensures that

defendants receive fair notice of the claim being asserted so that they can prepare a responsive

answer and an adequate defense); *Michaels v. Blair*, 2007 WL 1307905, at 2 (D.D.C. May 3,

2007) (stating that dismissal is appropriate when a complaint contains "vague and conclusory

accusations and no specific facts regarding alleged wrongdoing [and] does not allow a defendant

to frame a defense.") Accordingly, Plaintiff's amended complaint should be dismissed.

## II.  Plaintiff's First Amended Complaint Should Be Dismissed for Failure to Obtain Leave of Court Under Fed. R. Civ. P. 21

Although Fed. R. Civ. P. 15(a) permits a plaintiff to amendment a complaint without

leave of Court prior to any responsive pleading being filed, Plaintiff has run afoul of Fed. R. Civ.

P. 21,[11] by filing her amended complaint and adding and dropping parties, without first seeking

leave of Court.[12]  *See Age of Majority Educational Corp. v. Preller*, 512 F.2d 1241 (4th Cir. 1975)

---

[10] Fed. R. Civ. P. 8(b)(1) requires that in responding to a pleading, a party "state in short and plain terms its defenses to each claim asserted against it, and admit or deny the allegations asserted against it by an opposing party.  *See* Fed. R. Civ. P. 8(b)(1)(A) and 8(b)(1)(B).

[11] Plaintiff would have also had to confer with opposing counsel on such a motion.  *See* LCvR 7(m).

[12] The rule provides as follows:

> Misjoinder of parties is not ground for dismissal of an action.  Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.  Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

(plaintiff was required to seek leave of court before filing an amended complaint that dropped one plaintiff, added two new plaintiffs and added eight defendants); *Commodity Futures Trading Commission v. American Metal Exchange Corp.*, 693 F.Supp. 168, 189 (D. N.J. 1988) (even though plaintiff complied with Fed. R. Civ. P. 15 in amending to add new causes of action, a proposed amended complaint that adds parties not named in the original complaint can be amended only with leave of court); *Madery v. International Sound Technicians*, 79 F.R.D. 154 (D. C. Cal. 1978) (notwithstanding written consent of defendants, plaintiff was required to secure leave of court to add parties not named in the original complaint); *International Brotherhood of Teamsters v. AFL-CIO*, 32 F.R.D. 441, 442 (E.D. Mich. 1963) (an amendment to complaint to add or drop a party requires an order of court and limits Rule 15(a)).

In this case, Plaintiff added seven named parties and ten unnamed parties, and dropped twenty-five DOE Defendants from her suit, without seeking leave of Court. Accordingly, her amended complaint should be dismissed.

## Conclusion

For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed, the Court's Order of August 12, 2008 vacated, and Plaintiff should be ordered to respond to Defendants' motion to dismiss within eleven days.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

7

　/s/
_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250
Judith.A.Kidwell@usdoj.gov

8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **EDAR ROGLER,** | ) | |
| | ) | |
| **Plaintiff *pro se*,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 07-2308 (RMC)** |
| | ) | |
| **WILLIAM BIGLOW**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

UPON CONSIDERATION OF Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint, to vacate the Court's Order of August 12, 2008, mooting Defendants' motion to

dismiss filed on April 14, 2008, and to require Plaintiff to file a response to Defendants' motion

to dismiss within eleven days, or alternatively, Defendants' motion for an enlargement of time to

respond to Plaintiff's First Amended Complaint, any opposition thereto, and the entire record, is

this _____ day of August, 2008,

 **ORDERED,** that Defendants' motion is **GRANTED**; and it is

 **FURTHER ORDERED**, that Plaintiff's First Amended Complaint is dismissed; and it is

 **FURTHER ORDERED**, that the Court's Order of August 12, 2008, mooting

Defendants' motion to dismiss is vacated; and it is

 **FURTHER ORDERED**, that Plaintiff shall file a response to Defendants' motion to

dismiss, filed on April 14, 2008, within eleven days of the entry of this order.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Defendants' Counsel by ECF

Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that copies of the foregoing Federal Defendants' Motion to

Dismiss Plaintiff's First Amended Complaint and to Vacate Order Mooting Defendants' Motion

to Dismiss, or Alternatively, Motion for An Enlargement of Time to Respond To First Amended

Complaint, Memorandum of Points and Authorities in Support and proposed Order were mailed,

postage pre-paid, to Plaintiff *pro se*, on this 14th day of August 2008, to the following address:

Edar Rogler
915 Boucher Avenue
Annapolis, Maryland 21403


_____/s/_____
JUDITH A. KIDWELL
Assistant U.S. Attorney

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**EDAR Y. ROGLER,**
**Plaintiff,** *pro se*

      v.

**MIKE LEAVITT,**
**SECRETARY**
**UNITED STATES**
**DEPARTMENT OF HEALTH**
**AND HUMAN SERVICES (DHHS),**
**(NATIONAL INSTITUTES OF HEALTH),**
**AGENCY**
**In his official capacity;**

**Defendant.**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

        \* Civil No. WMN 07 CV 2726

## COMPLAINT

1. This action is brought pursuant to *Title VII of the Civil Rights Act of 1964,* as amended, (Title VII) for employment discrimination. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff resides at 915 Boucher Avenue, Annapolis, Maryland 21403, email address is "Edar Rogler" edar_rogler@yahoo.com, and telephone number is (443) 852-6553.

3. Defendant Mike Leavitt, Secretary, United States Department of Health and Human Services (US DHHS) business address is: Office of Secretary, US DHHS, 200 Independence Avenue, S.W., Washington, D.C. 20201. Defendant Leavitt's email address is "Secretary Mike Leavitt" Mike.Leavitt.GO6@hhs.gov and telephone number (202) 619-0257.

4. The discrimination and reprisal occurred in connection with plaintiff's employment at or application to be employed at, defendant's National Institute of Health (NIH) Warren Grant Magnuson Clinical Center (CC), place of business located at Building 10-CRC-Hatfield Research Center, Room 6-2551, 10 Center Drive, Bethesda, Maryland.

5. The alleged discriminatory acts occurred starting in the late spring and summer of 2005 and are continuing to present to the date of this instant filing of complaint.

1

6. Plaintiff filed charges with the United States Equal Employment Opportunity Commission (US EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036, regarding defendant's alleged discriminatory conduct from the spring of 2005 to January, 2006. Plaintiff's charge was entitled, "Edar Y. Rogler v. Mike Leavitt, Secretary, Department of Health and Human Services, (National Institutes of Health), Agency. Request No. 0520070128, Appeal No. 01A63657, Agency No. NIHCC-06-0008)."

7. Plaintiff has exhausted all of her administrative remedies. A decision on the merits of plaintiff's complaint has never been made. Plaintiff received her "Right to File a Civil Action" letter dated December 20, 2006. The original letter is attached to this complaint.

8. The alleged discriminatory acts, in this suit, concern failure to employ plaintiff, termination of plaintiff's employment, allegedly unilaterally converting plaintiff's employment status from common law employee to contractor and then terminating said contract, and reprisal for EEO protected activity and other acts.

9. Defendant's conduct is discriminatory with respect to the following:

    A. Plaintiff's sex (female);

    B. Plaintiff's religion (Greek Orthodox); and

    C. Reprisal for EEO activity:
        1. Plaintiff objected to the discrimination and reprisal of Heffernan and was a witness in *Heffernan v. Leavitt*, EEOC and MSPB complaints.
        2. Plaintiff objected to the discrimination and reprisal of Brenner and has been notified that she will be called to testify in *Brenner v. Leavitt*, EEOC and MSPB complaints.
        3. Plaintiff's own objections to discrimination and reprisal under Title VII and filing of an EEOC complaint.

**A brief statement of the alleged facts of plaintiff's claim:**

10. The employer/agency is the United States Department of Health and Human Services (US DHHS) with a work site at National Institutes of Health Clinical Center (NIH CC).

11. John I. Gallin, M.D. (Gallin) at all pertinent times was and is the Director of NIH CC.

12. Maureen Gormley, R.N. (Gormley) at all pertinent times was and is the Chief Operating Officer at NIH CC.

2

13. Walter L. Jones (Jones) was and is at all pertinent times the Deputy Director for NIH CC's Management and Diversity for the Office of the Deputy Director for Management & Diversity (CC ODDMD). During all pertinent times Gallin directly supervised Jones.

14. Rev. O. Ray Fitzgerald, Ph.D. (Fitzgerald) at all pertinent times was and is the Chief of the Department of Spiritual Ministry (CC OODMD SMD) at NIH CC. Fitzgerald is under the direct supervision of Walter Jones (Jones), Deputy Director for Management and Diversity. Jones is under the direct supervision of Dr. John I. Gallin (Gallin), Director, Clinical Center. Fitzgerald is also an Association of Clinical Pastoral Education (ACPE) Clinical Pastoral Education (CPE) Supervisor.

15. Nyna Konishi (Konishi) at all pertinent times was and is the Administrative Officer for Gallin's and Gormley's activities. Konishi was not the Administrative Officer for the Spiritual Ministry Department.

16. Angela Kinney (Kinney) was the Administrative Officer over the Spiritual Ministry Department, Fitzgerald, Brenner, and the plaintiff.

17. Rev. Henry Heffernan (Heffernan), a Jesuit Roman Catholic priest, was and is employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Dr. Rev. O. Ray Fitzgerald (Fitzgerald), as Chief of the Department. Heffernan was and is represented at all pertinent times by Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, P.L.L.C.

18. Rabbi Reeve Brenner (Brenner), a Jewish Rabbi, was employed by NIH CC as a permanent chaplain in the Spiritual Ministry Department (SMD) under the direct supervision of Fitzgerald. Attorneys Irving Kator and Cathy A. Harris of Kator, Parks & Weiser, P.L.L.C represent Brenner.. Brenner by and through his attorneys has filed petitions with the MSPB and the EEOC.

19. Rev. Gary Johnston (Johnston) at the pertinent time was a chaplain at NIH CC assigned to SMD, but was on military leave being deployed to the Pentagon until February 2007. Johnston retired in February of 2007.

20. Rev. Kathryn Snyder (Snyder) was a contract chaplain at NIH CC assigned to the SMD until on or about December 1, 2005. Snyder had another one-year contract to commence December 1, 2005, but Fitzgerald had NIH CC revoke Snyder's contract for the second year of service.

21. Rev. Dominic Ashkar (Ashkar) is a Lebanese Maronite priest, who was a contract chaplain at NIH CC and then was given the permanent chaplain position that was made available when NIH CC wrongfully terminated Heffernan. Ashkar's present status is unknown, but on information and belief he is still employed at NIH CC in the same capacity.

3

22. From August of 2005 to January of 2006 plaintiff alleges that she was employed as a common law employee by NIH CC as a part-time associate chaplain in the SMD under the direct supervision of Fitzgerald.

23. Heffernan filed two federal complaints. One was with the Merit System Protection Board (MSPB), MSPB No. DC-0752-04-0756-I-1 and the other one was with the Equal Employment Opportunity Commission (EEOC), EEOC Case No. 120-2005-00226X. Both federal panels found that the Agency unlawfully discriminated and retaliated against Heffernan and ordered his reinstatement to NIH CC.

24. During August through December of 2005 Fitzgerald made statements to Plaintiff regarding Heffernan and Fitzgerald's and NIH CC's reasons for suspending and ultimately terminating Heffernan.

25. The plaintiff at all pertinent times was a witness and had relevant and material testimony for two federal petitions filed by Rev. Henry Heffernan. Heffernan by and through his attorneys filed petitions with the MSPB and EEOC.

26. Plaintiff never met or spoke directly to Heffernan prior to December 23, 2005.

27. Heffernan has been reinstated to NIH CC in his previous federal civil service position.

28. Brenner was called to testify at the Heffernan matter.

29. At the time Brenner testified he had a clean personnel record and satisfactory work performance.

34. After Brenner testified he was suspended and terminated from employment at NIH CC.

35. Plaintiff alleges that Brenner's suspension and termination violated Title VII. The plaintiff at all pertinent times was a witness and had relevant and material testimony for two federal petitions filed by Rabbi Reeve Brenner.

36. During July of 2005 Heffernan had lost his MSPB complaint and dispositive motions were being heard at the EEOC or its dismissal was being considered.

37. On information and belief in the summer of 2005 Fitzgerald finds Plaintiff's ACPE CPE application in Morrow's stale files and finds Plaintiff's email address. Fitzgerald emails Plaintiff and states that he is interest in her application (which is defunct by the rules and regulations of ACPE).

38. Plaintiff emails Fitzgerald in response stating she has been accepted into another CPE program.

4

39. In August of 2005 Fitzgerald invited Plaintiff out to dinner at a restaurant in a hotel near NIH CC allegedly to interview her for employment at NIH CC to work a week or two in August of 2005. Fitzgerald and Plaintiff met and had dinner. Fitzgerald offered her a job performing substitute work at NIH CC and Plaintiff accepted. No contract was written or executed.

40. On or about August 16th to 19th, 2005 Plaintiff works at NIH CC:
   a.    During this time Fitzgerald makes remarks about his unlawfully disciplining and terminating Heffernan.
   b.    Fitzgerald additionally makes anti-Semitic remarks about Brenner and discloses adverse employment action Fitzgerald has taken against Brenner because he is a Jew.
   c.    Fitzgerald made remarks to plaintiff about how he wore a clerical collar to the *Heffernan* MSPB hearing to affect the outcome of the case.
   d.    Fitzgerald notes to plaintiff that Heffernan always wears a clerical collar. The plaintiff never witnesses Fitzgerald wearing a clerical collar.
   e.    During this work period Plaintiff's services were personal in nature and resulted in an employer-employee relationship.
   f.    Plaintiff did not negotiate or execute a contract to be an independent contractor, but had an oral agreement to be employed as a substitute chaplain.
   g.    On or about August 18, 2005 Fitzgerald refers to Brenner as "the Jew" and "that Jew" in a derogatory manner and states that he refuses to assign Brenner to be on call for the Protestant patients at NIH CC and carry the Protestant pager, because "the pager rarely goes off" and Fitzgerald did not want "the Jew to be sitting at home enjoying himself and get the money."

41. From August to December of 2005 Fitzgerald called Brenner "the Jew", "that Jew", "the butthead Jew", "the crass Jew", and all such references made herein meant refer to Rabbi Reeve Brenner as called by Rev. Dr. O. Ray Fitzgerald. Fitzgerald's use of these terms were discriminatory and derogatory and are alleged to be in violation of Title VII, because Fitzgerald's context, inflection, tone of voice, along with the local custom and usage of the term in said manner evidences animosity towards the Jewish race and religion. Fitzgerald's usage of the term "Jew" was not benevolent or neutral. Furthermore Fitzgerald did not refer to anyone else by his/her race or religion. Fitzgerald's terminology is alleged to be epithets in violation of the purposes of Title VII to discriminate and retaliate against Brenner.

42. From late August of 2005 to January of 2006 Plaintiff was a federal employee at the Dayton Veteran's Administration Medical Center (VAMC). Fitzgerald made arrangements for Plaintiff to substitute at NIH CC on her Christmas vacation from work at the VAMC. Fitzgerald then recruited Plaintiff to resign from her job at VAMC and take a job with NIH CC as a part-time associate chaplain.

43. Fitzgerald instructs plaintiff to write him a letter applying for the job and informs her what to write. By letter dated October 17, 2005 plaintiff wrote a letter to Fitzgerald stating, "Please accept this letter as application for the position of part-time associate chaplain and for the position in your CPE program." Said letter does not ask for a contractual position with a contract.

44. Fitzgerald insisted that plaintiff had to meet him in Boston, Massachusetts for an interview for said job. On or about October 28th through 29th, 2005 Plaintiff met Fitzgerald in Boston and attended an Orthodox Christian Association of Medicine, Psychology, and Religion (OCAMPR) conference, but Fitzgerald then stated that no interview was necessary that she already had the job.

45. There was no Purchase Order (PO) regarding the plaintiff during the month of November 2005.

46. On November 07, 2005 at 9:05 a.m. Kelley emails Yasmin Coates (Coates) referring to the plaintiff as "a new employee" to be scheduled for the "New Employee Orientation."

47. On November 08, 2005 Yasmin Coates of NIH CC emails Dana Kelley of the SMD referring to plaintiff as an "employee."

48. On or about November 16, 2005 plaintiff returns to work at NIH CC working part-time as an associate chaplain for at least twenty (20) hours per week.
   a. No contract was written or executed by the parties.
   b. An employer-employee relationship continued.
   c. NIH CC direct deposited plaintiff's paycheck into her personal checking account.
   d. Plaintiff was a common law employee of US DHHS NIH CC assigned to SMD as a part-time associate chaplain.
   e. Plaintiff's service to NIH CC is personal in nature.
   f. Plaintiff is required to be at NIH CC to perform her services with NIH CC.
   g. NIH CC supplies plaintiff with all principal tools and equipment required for plaintiff's services, including but not limited to telephones, copy machines, computers, fax machines, devotional literature, paper, desks, office, and any other item required.
   h. Fitzgerald and only Fitzgerald determined plaintiff's schedule and what she is to do throughout her day of work.
   i. Plaintiff's services are exactly the same as the permanent federal chaplains employed at NIH CC.
   j. NIH CC provided plaintiff with parking space.
   k. NIH CC provided plaintiff with the services of the Employee Assistance Program (EAP).
   l. NIH CC did not disclose the payments made in the year 2005 by NIH CC to the plaintiff for her work performed at NIH CC to the Internal Revenue Service (I.R.S.) and/or the State of Maryland.

6

49. On or about November 16, 2005 Kelley gave plaintiff the keys to the SMD.

50. On November the 17, 2005 at 10:53 a.m. Coates emails Kelley referring to the plaintiff as an "employee" and schedules plaintiff to participate in the NIH CC orientation program for new employees called "New Employee Orientation" to be held November 28 to 29, 2005.

51. On November 17th, 2005 at 10:53 a.m. Coates emails Kelley again referring to plaintiff as an "employee" and schedules her for orientation from November 28th to 29th, 2005. This is the same orientation for all new employees.

52. On November 18, 2005 Kelley completes the "Spiritual Ministry Department Orientation Checklist" for plaintiff. Said checklist refers to plaintiff as an "employee" and mentions "employment."

53. On or about November 21, 2005 Fitzgerald assigned Plaintiff to the Video Storage closet in the CRC instead of instead of assigning her to an office in SMD.
   a.   All permanent, civil service, federal chaplains and contractual chaplains (except for plaintiff) had offices in another building.
   b.   The video storage unit had a big video cabinet in it and did not have a desk, chair or NIH CC computer in it.
   c.   On information and belief Fitzgerald deliberately and intentionally in violation of Title VII ordered plaintiff to stay in the Video Storage closet to conceal a witness to active MSPB and EEOC complaints filed by Heffernan and potential complaints to be filed by Brenner and others.
   d.   Fitzgerald told plaintiff that she would be assigned an office in the SMD with the other chaplains when Snyder's contract expired on or about November 30, 2005.
   e.   Fitzgerald also ordered the plaintiff to stay away from "the crass Jew" (meaning Brenner).
   f.   Fitzgerald never introduces the plaintiff to Brenner.
   g.   There are no SMD departmental meetings, services, and/or celebrations typical of chaplain departments in hospitals.

54. During the week of November 21, 2005 Fitzgerald stated to the plaintiff that Fitzgerald "stands in the shoes of God" as head of the Spiritual Ministry Department, which was "a concept that Heffernan could not grasp."

55. During the week of November 21, 2005 Fitzgerald stated to the plaintiff that Fitzgerald, Jones and Gallin tried to eliminate the position of the rabbi at NIH CC, but that the Patient Advocate named Martin Kohn objected so much that they could not eliminate the position and had to hire "the butthead Jew" instead.

56. Plaintiff attended orientation on November 28 and 29, 2005 and meets Laura Chisholm (Chisholm), Service Chief.

7

    a.   Plaintiff asks Chisholm for her telephone number and email address because Fitzgerald will be absence from the NIH CC premises and will be placing the plaintiff in charge of the Spiritual Ministry Department.

    b.   Plaintiff receives an "Orientation Agenda" referring to "employees" and not "contractors."

57.  The EEOC Administrative Judge (AJ) David Norken (Norken) grants Heffernan's motion for reconsideration and schedules a hearing for the *Heffernan* matter for December of 2005.

58.  In November and December of 2005 Fitzgerald asks the plaintiff not to repeat anything Fitzgerald has stated to the plaintiff.  Fitzgerald states that because the plaintiff is not clergy everything that Fitzgerald has stated to the plaintiff is not confidential.

59.  On or about December 8th, 2005 Coates emails Kelley referring to the plaintiff as an "employee" and schedules the plaintiff for the Patient Safety and Emergency Procedure Training.

60.  On December 12, 2005 the plaintiff met with Chisholm.

    a.   Chisholm helps the plaintiff prepare a memorandum to Fitzgerald.

    b.   Chisholm authorized the counseling services provided by EAP to the plaintiff.

    c.   Chisholm emails Gormley about the plaintiff's statement to Chisholm.

    d.   Craig Kalman, an EAP counselor, counseled the plaintiff that day and a couple of more times.

61.  Fitzgerald tells the plaintiff that Fitzgerald, Jones, and Gallin have a plan called "Clean Sweep" wherein Kelley and Brenner will be terminated for cooperating in the *Heffernan* matter and that Johnston will be given an offer he can't refuse to persuade Johnston to retire in February of 2006, because Johnston cooperated in the *Heffernan* matter.

62.  On information and belief Fitzgerald instructed Brenner to testify that he "did not recall" when in fact Brenner did clearly recall the information requested.  Fitzgerald forced the plaintiff to hide in a video storage closet in another building and instructed not to tell anyone what Fitzgerald had told the plaintiff.

63.  On December 18, 2005 a Sunday morning at approximately 8:30 a.m. Fitzgerald calls the plaintiff on her day off and wakes her up and leaves her a message to call him and come in to work the next day.

64.  On December 18, 2005 at 11:13 a.m. Fitzgerald and the plaintiff have a conversation for approximately twenty-six (26) minutes, wherein:

    a.   Fitzgerald threatens to fire the plaintiff if she does not take his current CPE class (which is over half way through completion).

    b.      Plaintiff believes that Fitzgerald is threatening her to get her to be in a more vulnerable position to intimidate her from coming forward about the discrimination against Heffernan and alleged discrimination against Kelley, Brenner, and Johnston.

    c.      Plaintiff emails Gormley regarding the alleged discriminatory and retaliatory conduct.

65. On December 19, 2005 at 7:54 a.m. Gormley emails Jones with a copy to Gallin, stating "Walter, See below. Follow up needed here. Maureen" and forwards to Jones the plaintiff's email to Gormley dated December 18, 2005 at 2:57 p.m..

66. On December 20, 2005 Fitzgerald instructs Kelley to give the plaintiff an office in the SMD in the Tower so the plaintiff can get out of the video storage closet. Kelley gives the plaintiff an office. Kelley gives the plaintiff a printed note.

67. On December 22, 2005 at 11:22 a.m. Jones emails the plaintiff at the wrong email address. Jones' email states, "Hello, Deborah, I am have received a copy of your email to Maureen Gormley. Please contact me at your to schedule a time to discuss your concerns. My number is 301-496-327. Thanks. Walter Jones"

68. On December 22, 2005 on information and belief Jones asks Kelley to have plaintiff telephone him. In response to Jones' request the plaintiff telephones Jones.

69. Jones has the plaintiff meet with Jones:
    a.    Jones discussed the email the plaintiff sent to Gormley and has a copy.
    b.    Jones encourages the plaintiff to discuss everything with Jones.
    c.    The plaintiff discusses all of the alleged discriminatory and retaliatory conduct and her concerns.
    d.    Plaintiff informs Jones that she has a telephone message into Heffernan's attorney to talk with her about what she knows and has talked with Brenner about what she knows.
    e.    Jones states to the plaintiff that Jones agrees that Fitzgerald's conduct is wrong and that Jones will talk to Fitzgerald about Fitzgerald's needing to change his conduct. Jones instructs the plaintiff to return on December 23, 2005 at 1:00 p.m. and not to talk with Fitzgerald before said meeting.

70. On December 23, 2005 Jones and Fitzgerald verbally inform the plaintiff that she is terminated.
    a.      Fitzgerald and Jones inform the plaintiff that they have changed her status to contractor without telling her and without her executing a contract.
    b.      On information and belief Jones and Fitzgerald have not informed the Administrative Officer Angela Kinney or received her permission to terminate the plaintiff.

    c.        On information and belief Jones and Fitzgerald have not informed
                Deborah Britton or received her permission to terminate plaintiff's
                alleged contract.

    d.        Jones and Fitzgerald state that the plaintiff is being terminated without
                cause for the convenience of the government and that plaintiff will
                receive a good reference if she lets by-gones be by-gones and not tell
                anyone anything that the plaintiff has seen or heard at NIH.

    e.        Jones states to the plaintiff that HIN is a "big family and have worked
                together for years" and that Jones "will not take the time to sort out the
                confusion."

    f.         Jones states to the plaintiff that she has no legal rights and that Jones
                can do whatever he pleases to her.

    g.        Plaintiff asked Jones for the Agency's attorney's name and telephone
                number in the *Heffernan* matter.

    h.       Jones refuses to give it to the plaintiff.

    i.        Plaintiff tells Jones and Fitzgerald that she is still contacting
                Heffernan's attorney.

71. On December 28, 2005 the plaintiff telephone's her Administrative Officer (AO)
Angela Kinney. Kinney states to the plaintiff that the plaintiff has not been terminated
and cannot be terminated unless Kinney as plaintiff's AO agrees. Kinney states that she
is going to conduct a good faith investigation of the matter and will not just rubber stamp
Jones and Fitzgerald's attempted termination of the plaintiff. Kinney told plaintiff to call
her back that day in a couple of hours and then to come into NIH CC to talk with Kinney.

72. When the plaintiff telephone Kinney back on December 28, 2005, Kinney stated to
plaintiff that Gallin had removed her as the AO to sign off on plaintiff's attempted
termination and Gallin has replaced Kinney with his own AO, the Administrative Officer
Nyna Konishi (Konishi). Kinney stated to plaintiff she was to come into her office to
give Konishi her keys and ID badge.

73. On December 28, 2005 after the above-stated telephone office plaintiff came to
Kinney's office and was greeted by Konishi. Konishi stated to the plaintiff that Kinney
was not allowed to conduct an investigation, that Konishi would not conduct an
investigation and would sign that the plaintiff was terminated without cause for the
convenience of the government and plaintiff would get a neutral reference. Konishi
stated to the plaintiff that plaintiff was a contractor, even though plaintiff never agreed to
a contract and/or executed a contract. Konishi stated that NIH CC had changed her status
by mailing the plaintiff to her home a Purchase Order for Supplies (PO) on or about
November 28, 2005. Konishi obtained a copy of the PO by fax and gave the plaintiff a
copy underlying a clause that permitted termination of the contract without cause for the
convenience of the government.

74. On information and belief the management officials on NIH CC had developed a
plan called "Operation Clean Sweep," wherein every person working for NIH CC SMD
would be brought up on false charges, given a bad reference, discharged from

employment and/or contractual work, and further prevented from gaining future employment by US DHHS merely because they filed an EEOC complaint and/or cooperated with the EEOC investigation and/or testified at an EEOC hearing.

75.  If relief is not granted, plaintiff will be irreparably denied rights secured by Title VII of the 1964 Civil Rights Act, as amended.

76.  Plaintiff has no adequate remedy at law to redress the wrongs described above.

**Therefore, Plaintiff prays as follows:**
   A.  That all fees, cost or security attendant to this litigation be hereby waived.
   B.  That the Court appoints legal counsel.
   C.  That the Court grants such relief as might be appropriate, including injunctive orders, compensatory three hundred thousand dollars ($300,000.00) and punitive damages of five million dollars ($5,000,000.00), cost and attorney's fees.
   D.  For plaintiff to be made whole.
   E.  For any remedy deemed just and fair.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:

_____
Signature of Plaintiff

11

3                                    0520070128

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Edar Y. Rogler
915 Boucher Ave
Annapolis, MD 21403

Bonita V. White, Assistant Secretary
Management/Budget/EEO
Department of Health and Human Services
200 Independence Ave., SW #514-G
Washington, DC 20201


DEC 2 0 2006
_____
Date


_____
Equal Opportunity Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036


Edar Y. Rogler,
Complainant,

v.

Mike Leavitt,
Secretary,
Department of Health and Human Services,
(National Institutes of Health),
Agency.

Request No. 0520070128

Appeal No. 01A63657

Agency No. NIHCC-06-0008

DENIAL

Complainant timely requested reconsideration of the decision in *Edar Y. Rogler v. Department of Health and Human Services*, EEOC Appeal No. 01A63657 (October 11, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A63657 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.


COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate

2                                                      0520070128

United States District Court **within ninety (90) calendar days** from the date that you receive
this decision.  If you file a civil action, you must name as the defendant in the complaint the
person who is the official agency head or department head, identifying that person by his or
her full name and official title.  Failure to do so may result in the dismissal of your case in
court.  "Agency" or "department" means the national organization, and not the local office,
facility or department in which you work.


### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an
attorney, you may request that the Court appoint an attorney to represent you and that the
Court permit you to file the action without payment of fees, costs, or other security.  *See* Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; the Rehabilitation
Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  **The grant or denial of the request is
within the sole discretion of the Court.**  Filing a request for an attorney does not extend your
time in which to file a civil action.  Both the request and the civil action must be filed within
the time limits as stated in the paragraph above ("Right to File a Civil Action").
FOR THE COMMISSION:


_Carlton M. Hadden_
Carlton M. Hadden, Director
Office of Federal Operations


DEC 2 0 2006
Date